1  JOSEPH C. GRATZ (CA SBN 240676)
   JGratz@mofo.com
2  TIMOTHY CHEN SAULSBURY (CA SBN 281434)
   TSaulsbury@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street,
4  San Francisco, California 94105-2482
   Telephone:    415.268.7000
5  Facsimile:     415.268.7522
6
7  ADITYA V. KAMDAR (CA SBN 324567)
   AKamdar@mofo.com
8  MORRISON & FOERSTER LLP
   2100 L Street, NW, Suite 900
9  Washington, DC 20037
   Telephone:    202.887.1500
10 Facsimile:     202.887.0763
11
   [CAPTION CONTINUED ON NEXT PAGE]
12
   Attorneys for Defendants
13 STABILITY AI LTD., STABILITY AI, INC.,
   AND STABILITY AI US SERVICES
14 CORPORATION
15
16                 UNITED STATES DISTRICT COURT
17                NORTHERN DISTRICT OF CALIFORNIA
18                   SAN FRANCISCO DIVISION
19

| | |
|---|---|
| 20  GETTY IMAGES (US), INC., | Case No. 3:25-cv-06891-TLT |
| 21                    Plaintiff, | **DEFENDANTS STABILITY AI LTD.,** |
| | **STABILITY AI, INC., AND STABILITY** |
| 22           v. | **AI US SERVICES CORPORATION'S** |
| | **NOTICE OF MOTION AND MOTION** |
| 23  STABILITY AI, LTD., STABILITY AI, INC., | **TO DISMISS PLAINTIFF'S** |
|     and STABILITY AI US SERVICES | **COMPLAINT** |
| 24  CORPORATION, | |
| | Judge:      Hon. Trina L. Thompson |
| 25                    Defendants. | Date:        February 10, 2026 |
| | Time:        2:00 p.m. |
| 26 | Courtroom:  9 |
| 27 | |
| 28 | |

CHRISTOPHER R. ADLER (CA SBN 346588)
CAdler@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone:      213.892.5200
Facsimile:      213.892.5454

## NOTICE OF MOTION AND MOTION

**TO PLAINTIFF GETTY IMAGES (US), INC. AND ITS COUNSEL OF RECORD**:

PLEASE TAKE NOTICE that on February 10, 2026, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 9 of this Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Stability AI Ltd., Stability AI, Inc., and Stability AI US Services Corporation (collectively, "Stability AI"), through their undersigned counsel, will, and hereby do, move to dismiss Counts II through VII of Plaintiff Getty Images (US), Inc.'s Complaint, which are brought under the Digital Millennium Copyright Act ("DMCA"), the Lanham Act, California's Unfair Competition Law ("UCL"), and California Business & Professions Code § 14247.

Stability AI seeks an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing Counts II through VII of the Complaint for failure to state a claim upon which relief can be granted.

Dated: October 14, 2025

MORRISON & FOERSTER LLP

By: */s/ Joseph C. Gratz*
Joseph C. Gratz

JOSEPH C. GRATZ
JGratz@mofo.com
TIFFANY CHEUNG
TCheung@mofo.com
TIMOTHY CHEN SAULSBURY
TSaulsbury@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:     415.268.7000
Facsimile:     415.268.7522

ADITYA V. KAMDAR
AKamdar@mofo.com
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
Telephone:        202.887.1500
Facsimile:        202.887.0763

CHRISTOPHER R. ADLER
CAdler@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone:        213.892.5200
Facsimile:        213.892.5454

*Attorneys for Defendants*
STABILITY AI LTD., STABILITY AI,
INC., AND STABILITY AI US
SERVICES CORPORATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## STATEMENT OF ISSUES TO BE DECIDED

2      This motion raises the following issues:

3      1.      **Digital Millennium Copyright Act ("DMCA") (Claim II).** Whether Getty's

4 claim should be dismissed for failing to allege provision of copyright management information

5 ("CMI") that is false with the requisite knowledge and intent.

6      2.      **Section 32 of the Lanham Act, 15 U.S.C. § 1114(1) (Claim III).** Whether

7 Getty's claim should be dismissed for (i) failing to allege Stability AI's use of Getty's marks in

8 commerce or (ii) failing to allege confusion.

9      3.      **Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Claim IV).** Whether

10 Getty's claim should be dismissed for (i) failure to allege Stability AI's use of Getty's marks in

11 commerce, (ii) failure to allege confusion, or (iii) Getty's claim being based on the content of an

12 expressive work and barred under *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S.

13 23 (2003).

14      4.      **Section 43(c) of the Lanham Act, 15 U.S.C. S 1125(c) and California Business**

15 **& Professions Code § 14247 (Claims V and VII).** Whether Getty's claims should be dismissed

16 for failure to allege adequately the fame of its marks.

17      5.      **California Business & Professions Code §§ 17200, *et seq.* (Claim VI).** Whether

18 Getty's claim should be dismissed for (i) lack of standing in the absence of economic injury;

19 (ii) failure to allege inadequate remedies at law; (iii) failure to allege viable predicate violations to

20 support an "unlawful prong" claim; and (iv) failure to allege fraud with particularity, as required

21 by Rule 9(b), to support a "fraudulent prong" claim.

22

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

2                                                                                                        **Page**

3   I.      INTRODUCTION ................................................................................................ 1

4   II.     STATEMENT OF RELEVANT FACTS ............................................................. 2

5           A.      The Parties.............................................................................................. 2

6           B.      The Training Process............................................................................... 3

7           C.      The Allegedly Infringing Outputs .......................................................... 3

8   III.    LEGAL STANDARD ......................................................................................... 4

9   IV.     ARGUMENT ...................................................................................................... 4

10          A.      Getty Fails to State a Claim Under Section 1202(a) of the DMCA (Claim
                    II) Because It Does Not Satisfy the Statute's Double Scienter Requirement ........ 4

11
            1.      Getty fails to allege facts plausibly suggesting that Stability AI
12                  acted "knowingly."................................................................................ 5

13          2.      Getty fails to allege facts plausibly suggesting an "intent to induce,
                    enable, facilitate, or conceal infringement." ......................................... 6

14
            B.      Getty's Lanham Act Claims (Claims III and IV) Fail........................................... 7
15
            1.      Getty does not allege that Getty's watermarks appeared in Stability
16                  AI image outputs in connection with a commercial transaction ................ 8

17          2.      Getty fails to allege a plausible likelihood of confusion........................... 9

18          C.      Independently, Getty's False Designation of Origin Claim (Claim IV) Is
                    Barred by Dastar ................................................................................... 11
19
            D.      Getty's Trademark Dilution Claims (Claims V and VII) Fail Because Getty
20                  Has Not Plausibly Alleged Its Marks Are "Famous" to the General
                    Consuming Public .................................................................................. 13
21
            1.      Getty fails to allege widespread advertising or publicity to the
22                  general public ...................................................................................... 14

23          2.      Getty's customer figures demonstrate niche market penetration, not
                    general fame ........................................................................................ 15
24
            3.      Getty pleads no facts showing actual recognition beyond its niche
25                  commercial market............................................................................... 16

26          E.      Getty's Unfair Competition Law Claim (Claim VI) Fails for Multiple
                    Independent Reasons............................................................................. 17
27

28

1.     Getty lacks standing because it fails to plead economic injury caused by the alleged unfair competition ................................... 17

2.     Getty fails to plead that legal remedies are inadequate ........................... 18

3.     Getty's "unlawful" prong claim is fatally flawed ..................................... 19

4.     Getty's "fraudulent" prong claim fails to meet Rule 9(b)'s heightened pleading standard ................................................. 20

V.     CONCLUSION .......................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. WhenU.Com, Inc.*,
    414 F.3d 400 (2d Cir. 2005)......................................................................................... 9

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,
    No. C 10-05696 CRB, 2011 WL 2690437 (N.D. Cal. July 8, 2011) ..................................... 19

*Arcsoft, Inc. v. Cyberlink Corp.*,
    153 F. Supp. 3d 1057 (N.D. Cal. 2015) .......................................................................... 13, 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................. 4, 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................ 4

*Bosley Med. Inst., Inc. v. Kremer*,
    403 F.3d 672 (9th Cir. 2005)..................................................................................... 8

*Cairns v. Franklin Mint Co.*,
    24 F. Supp. 2d 1013 (C.D. Cal. 1998) ........................................................................ 10

*In re Cal. Gasoline Spot Mkt. Antitrust Litig*,
    No. 20-CV-03131-JSC, 2021 WL 1176645 (N.D. Cal. Mar. 29, 2021) ............................ 18

*Chavez v. Allstate Northbrook Indem. Co.*,
    No. 22-CV-00166-AJB-DEB, 2023 WL 3773939 (S.D. Cal. Apr. 13, 2023) ...................... 18

*Dahon N. Am. Inc. v. Hon*,
    No. 2:11-cv-05835-ODW, 2012 WL 1413681 (C.D. Cal. Apr. 24, 2012) ...................... 13, 16

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003)............................................................................................ 11, 12

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018)................................................................................... 20

*Davis v. HSBC Bank Nevada, N.A.*,
    691 F.3d 1152 (9th Cir. 2012)................................................................................. 21

*Davis v. RiverSource Life Ins. Co.*,
    240 F. Supp. 3d 1011 (N.D. Cal. 2017) ...................................................................... 17

*Dennis v. Nike, Inc.*,
    No. 2:22-CV-04515-SB-PD, 2022 WL 18397390 (C.D. Cal. Nov. 18, 2022)...................... 18

*Doe 1 v. GitHub, Inc.*,
   672 F. Supp. 3d 837 (N.D. Cal. 2023) ................................................................. 18

*Emerson v. Northern Trust Corp.*,
   No. 23-CV-00241-TLT, 2023 WL 11884593 (N.D. Cal. Nov. 15, 2023)............................ 18

*Entrepreneur Media, Inc. v. Smith*,
   279 F.3d 1135 (9th Cir. 2002)........................................................................ 10

*Epic Games, Inc. v. Mendes*,
   No. 17-cv-06223-LB, 2018 WL 2926086 (N.D. Cal. June 12, 2018) ..................................... 8

*Evox Prods. v. Verizon Media*,
   No. CV 20-2852-CBM-(JEMx), 2020 WL 5894564 (C.D. Cal. Aug. 19, 2020) .................. 12

*Fruit of the Loom, Inc., v. Girouard*,
   994 F.2d 1359 (9th Cir. 1993)........................................................................ 16

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008)......................................................................... 4

*Hancock Park Homeowners Ass'n Est. 1948 v. Hancock Park Home Owners Ass'n*,
   No. CV 06-4584 SVW, 2006 WL 4532986 (C.D. Cal. Sep. 20, 2006) ................................... 9

*Hildawn Design LLC v. Dad Gang Co. LLC*,
   No. 3:25-CV-05277-DGE, 2025 WL 2306580 (W.D. Wash. Aug. 11, 2025) ...................... 10

*Himelsein v. LS1, LLC*,
   No. CV 18-3940-GW(JCx), 2019 WL 13037049 (C.D. Cal. Feb. 21, 2019) ......................... 5

*Hodge v. Superior Ct.*,
   145 Cal. App. 4th 278 (2006)........................................................................ 18

*Jada Toys, Inc. v. Mattel, Inc.*,
   518 F.3d 628 (9th Cir. 2008)......................................................................... 13

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)........................................................................ 20

*Krechmer v. Tantaros*,
   747 F. App'x 6 (2d Cir. 2018)..................................................................... 4, 5

*LIVN Worldwide Ltd. v. Vubiquity Inc.*,
   No. 2:21-cv-09589-AB-KS, 2022 WL 18278580 (C.D. Cal. July 22, 2022) ................... 6, 12

*Logan v. Meta Platforms, Inc.*,
   636 F. Supp. 3d 1052 (N.D. Cal. 2022) .......................................................... 11

*Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*,
   841 F. Supp. 2d 753 (S.D.N.Y. 2012)............................................................. 16

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) ..................................................................................... 4

*MGA Entm't, Inc. v. Dynacraft BSC, Inc.*,
    No. 2:17-CV-08222-ODW-KS, 2018 WL 2448123 (C.D. Cal. May 30, 2018) .................... 14

*Michael Grecco Prods, Inc. v. Function(X) Inc.*,
    No. 18 Civ. 386 (NRB), 2019 WL 1368731 (S.D.N.Y. Mar. 11, 2019) ................................ 6

*Mintz v. Subaru of Am., Inc.*,
    716 F. App'x 618 (9th Cir. 2017) ..................................................................................... 7

*Morgan v. Associated Press*,
    No. 15-03341-CBM-JEM, 2016 WL 6953433 (C.D. Cal. Mar. 16, 2016) ........................ 5, 6

*Murray v. Cable Nat'l Broad. Co.*,
    86 F.3d 858 (9th Cir. 1996) ............................................................................................ 9

*Naranjo v. Sandoval*,
    No. CV 16-8476 PSG, 2018 WL 11350617 (C.D. Cal. Feb. 28, 2018) ............................ 16

*Official Airline Guides, Inc. v. Goss*,
    6 F.3d 1385 (9th Cir. 1993) .......................................................................................... 10

*Parts.com, LLC v. Yahoo! Inc.*,
    996 F. Supp. 2d 933 (S.D. Cal. 2013) ........................................................................... 14

*Pegasus Holdings v. Veterinary Ctrs. of Am., Inc.*,
    38 F. Supp. 2d 1158 (C.D. Cal. 1998) ........................................................................... 20

*Peter T. Erdelyi & Assocs. v. Optimum Seismic, Inc.*,
    No. 2:20-cv-11066-JVS-GJSx, 2021 WL 4775635 (C.D. Cal. July 21, 2021) ...................... 5

*Pinterest, Inc. v. Pintrips, Inc.*,
    140 F. Supp. 3d 997 (N.D. Cal. 2015) ...................................................................... 15, 16

*Rice v. Santa Fe Elevator Corp.*,
    331 U.S. 218 (1947) ..................................................................................................... 19

*Rogozinski v. Reddit, Inc.*,
    No. 23-cv-00686-MMC, 2023 WL 4475581 (N.D. Cal. July 11, 2023) ............................ 15

*Slep-Tone Entertainment Corp. v. Wired for Sound Karaoke & DJ Services, LLC*,
    845 F.3d 1246 (9th Cir. 2017) .................................................................................. 11, 12

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ......................................................................................... 18

*Splunk Inc. v. Cribl, Inc.*,
    662 F. Supp. 3d 1029 (N.D. Cal. 2023) ........................................................................... 6

*Steinmetz v. Shutterstock, Inc.*,
  629 F. Supp. 3d 74 (S.D.N.Y. 2022) .................................................................. 7

*Stevens v. Vodka & Milk, LLC*,
  No. 17-CV-8603 (JSR), 2018 WL 11222927 (S.D.N.Y. Mar. 15, 2018) .............. 19

*Stokes v. CitiMortgage, Inc.*,
  No. CV 14-00278 BRO, 2014 WL 4359193 (C.D. Cal. Sep. 3, 2014) .................. 20

*Thane Int'l, Inc. v. Trek Bicycle Corp.*,
  305 F.3d 894 (9th Cir. 2002), *superseded by statute on other grounds* ................ 16

*Troyk v. Farmers Grp., Inc.*,
  171 Cal. App. 4th 1305 (2009) ............................................................................ 17

*Board of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin v. KST Elec.,
  Ltd.*,
  550 F. Supp. 2d 657 (W.D. Tex. 2008) ................................................................ 16

*Zuma Press, Inc. v. Getty Images (US), Inc.*,
  349 F. Supp. 3d 369 (S.D.N.Y. 2018) ................................................................... 7

**Statutes & Other Authorities**

15 U.S.C. § 1125(a) ................................................................................................. 7, 8

15 U.S.C. § 1125(c)(2)(A) ....................................................................................... 13

15 U.S.C. § 1125(c)(2)(A)(i)–(iv) ............................................................................ 14

17 U.S.C. § 1202(a) ......................................................................................... *passim*

17 U.S.C. § 1202(c) ............................................................................................ 4, 19

17 U.S.C. § 1203 ..................................................................................................... 19

Cal. Bus. & Prof. Code § 14247(a) .................................................................... 13, 14

Cal. Bus. & Prof. Code § 17204 ............................................................................. 17

Digital Millennium Copyright Act of 1998 ("DMCA") .................................... *passim*

Lanham Act, 15 U.S.C. §§ 1051 *et seq.* ........................................................... *passim*

UCL, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ............................................... *passim*

Federal Rule of Civil Procedure 9(b) ...................................................................... 20

Federal Rule of Civil Procedure 12(b)(6) ................................................................. 4

Mark P. McKenna & Lucas S. Osborn, Trademarks and Digital Goods, 92 Notre
     Dame L. Rev. 1425, 1450 (2017) ........................................................................................ 12

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3      This is a copyright case, raising important questions about the ways that new

4  technological tools to aid human creativity can build on what has come before.  This motion does

5  not seek dismissal of Getty Images' core copyright claim but instead seeks to clear the underbrush

6  that will impede the efficient litigation of that claim.

7      Instead of focusing on its central copyright claim, Getty appends six additional causes of

8  action (Claims II to VII) that attempt to stretch trademark, unfair competition, and the DMCA

9  beyond their intended bounds.  Each of these ancillary claims is based on a fundamental

10  mischaracterization of the facts and the law.  They are predicated not on a deliberate business

11  practice by Stability AI, but on what amount to limited one-off instances of unusable output

12  images.

13      Getty's theory rests entirely on the allegation that Stability AI's image model, Stable

14  Diffusion, as an unintentional byproduct of its complex training process, produces outputs that

15  include something that vaguely resembles a Getty Images watermark.  Getty's own Complaint

16  makes clear that these outputs are not premium commercial products but rather distorted,

17  low-quality images it describes as "bizarre," "grotesque," and "well below Getty Images' quality

18  standards."  From this automated anomaly, Getty constructs a series of legally untenable claims,

19  each of which fails:

20      The DMCA claim (Claim II) fails because it requires a showing of "double scienter"—

21  both knowledge *and* a specific intent to aid or conceal infringement—that cannot be plausibly

22  inferred from Getty's allegations.

23      The trademark infringement and false designation of origin claims (Claims III and IV) fail

24  because the alleged "use" manifests itself in limited one-off instances never used to market or sell

25  a product or service, and Getty's own allegations support the argument that any consumer

26  confusion is implausible.  Additionally, the false-designation claim is barred by Supreme Court

27  precedent that prohibits bringing this cause of action in a way that encroaches on copyright law.

28      The trademark dilution claims (Claims V and VII) fail because Getty Images is not a

1  household name and, at most, has achieved the kind of "niche" fame that is insufficient under the

2  law.

3      The UCL claim (Claim VI) is procedurally and substantively barred for a host of reasons,

4  including lack of standing, several independent pleading failures, and federal preemption.

5      This is Getty's second attempt to pursue non-copyright claims in federal court after

6  voluntarily dismissing a prior action in Delaware filed in February 2023.  *See Getty Images (US),*

7  *Inc. v. Stability AI Ltd.*, C.A. No. 23-135 (JLH) (D. Del.), ECF No. 69 (Notice of Voluntary

8  Dismissal without Prejudice).  Despite years of litigating these issues, Getty still cannot plead a

9  viable legal theory for these ancillary claims for a simple reason:  unintentional, unpredictable,

10  and limited one-off instances of garbled images cannot legally amount to cognizable trademark

11  use, a fraudulent scheme, or a knowing violation of the DMCA.  The Court should dismiss these

12  claims and allow the case to proceed on the copyright issues that are its proper subject.

13  **II.      STATEMENT OF RELEVANT FACTS**

14      **A.      The Parties**

15      Plaintiff Getty Images (US), Inc. ("Getty") is a stock photography company that licenses

16  "premium quality visual assets" to a commercial customer base of "media outlets, advertising

17  agencies, and corporations."  Compl. ¶¶ 3, 53.  Getty claims to have served more than

18  708,000 customers last year "from almost every country in the world" (*id.* ¶ 53) but does not

19  allege what portion of those customers are within the United States or California, or whether it

20  markets its services to members of the general consuming public or to a market niche in the

21  media industry.

22      Defendants (collectively, "Stability AI") develop generative artificial intelligence tools,

23  including a series of image generation models known as Stable Diffusion.  *Id.* ¶ 9.  Stable

24  Diffusion "uses artificial intelligence to deliver computer-synthesized images in response to text

25  prompts" from users.  *Id.*  Stability AI offers Stable Diffusion as open-source software, allowing

26  third parties to access, use, and further develop the models without Stability AI's control.  *Id.*

27  ¶¶ 89, 91.  The Complaint alleges that Stability AI offers paid subscription services—

28  DreamStudio and Stable Assistant—that provide access to the models.  *Id.* ¶ 91.

### B.     The Training Process

Getty alleges that Stability AI's models were trained on data from LAION ("Large-scale Artificial Intelligence Open Network"), a non-party German nonprofit organization that created an open dataset of more than five billion hyperlink-text pairs scraped from the public internet. *Id.* ¶¶ 62–63. Getty claims that over 12 million (less than one-quarter of one percent) of these links pointed to images on its publicly accessible websites. *Id.* ¶¶ 1, 76. The training process itself is described as entirely computational, wherein the models analyze images from vast datasets to learn statistical patterns between text and images. *Id.* ¶ 60. The Complaint does not allege that Stability AI targeted Getty's images, but rather that Stability AI merely "followed links included in LAION's dataset." *Id.* ¶ 64.

### C.     The Allegedly Infringing Outputs

Getty's non-copyright infringement claims are based on the allegation that, as an accidental byproduct of this complex, automated process, some images generated by Stable Diffusion occasionally contain a distorted, modified version of a Getty Images watermark. *Id.* ¶ 84. Getty attributes this to a phenomenon known as "overfitting," where a model that "is trained too long on the same training data" may lead to "memorization of certain individual training images." *Id.* ¶ 83.

Crucially, Getty itself describes the outputs bearing these "ersatz" watermarks as "bizarre," "grotesque," "severely distorted," and "well below Getty Images' quality standards." *Id.* ¶¶ 15, 98, 100–101. It is from these limited one-off outputs that Getty attempts to construct its DMCA, trademark, and unfair competition claims.

The few examples Getty provides underscore that these are one-off, private generations for individual users. And importantly, the Complaint pleads no facts showing that anyone was actually confused. For example, Getty cites a Reddit post where a user prompted for an image of "two girls hugging" and the resulting output included a distorted watermark. *Id.* ¶ 86. The user, far from being confused about the image's source, expressed surprise at the technical anomaly, stating, "I didn't ask for that." *Id.* Similarly, other examples point to posts on a social media site and a technical forum where users on a social media site, a technical forum, and a personal

1  website identified the outputs as being generated by Stable Diffusion models and noted the

2  watermarks as an unexpected result, not as a source identifier.  *Id.* ¶¶ 85, 87, 99–101.  Getty fails

3  to allege a single instance where these distorted watermarks appeared in connection with any

4  marketing, advertising, or commercial transaction by Stability AI, or where any user was misled

5  into believing the "bizarre" and "grotesque" outputs originated with or were sponsored by Getty.

6  ## III.    LEGAL STANDARD

7          To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual

8  matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*,

9  556 U.S. 662, 678 (2009) (cleaned up).  Dismissal is appropriate "where the complaint lacks a

10 cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v.*

11 *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted).  Moreover,

12 "[f]actual allegations must be enough to raise a right to relief above the speculative level" and "a

13 formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*,

14 550 U.S. 544, 555 (2007).  The Court is not required to accept as true "allegations that are merely

15 conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec.*

16 *Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

17 ## IV.    ARGUMENT

18     ### A.    Getty Fails to State a Claim Under Section 1202(a) of the DMCA (Claim II)
              Because It Does Not Satisfy the Statute's Double Scienter Requirement.
19

20          Section 1202(a) of the DMCA functions separately from traditional copyright law.  It does

21 not prohibit copying or distributing without permission.  Instead, it bars the separate, secondary

22 act of knowingly providing false "copyright management information"—a creature of federal law

23 defined as, among other things, the title, author, or copyright notice on a work (17 U.S.C.

24 § 1202(c))—with the specific intent to promote or conceal an infringement.  Section 1202(a) thus

25 contains a "double scienter" requirement:  Getty must plead both that Stability AI (i) "knowingly"

26 provided false CMI *and* (ii) that it did so "with the intent to induce, enable, facilitate, or conceal

27 infringement."  17 U.S.C. § 1202(a); *Krechmer v. Tantaros*, 747 F. App'x 6, 9 (2d Cir. 2018)

28 (explaining pleading requirement for § 1202(a) claims).  Getty's claim, which arises from what it

describes as the automated "memorization" of training data (Compl. ¶ 83), fails because it pleads no facts to support this high standard of knowledge and deliberative intent.

### 1.    Getty fails to allege facts plausibly suggesting that Stability AI acted "knowingly."

Getty fails to allege any facts that would permit a plausible inference that Stability AI knew its models were generating distorted watermarks.  Getty's sole allegation on this point is the conclusory assertion, made "[u]pon information and belief," that "Stability AI is well aware" that its models sometimes produce images bearing a version of the Getty Images watermark.  Compl. ¶ 102.  This threadbare "information and belief" allegation is not enough to meet Section 1202(a)'s scienter requirement.  *See Morgan v. Associated Press*, No. 15-03341-CBM-JEM, 2016 WL 6953433, at *3 (C.D. Cal. Mar. 16, 2016) (dismissing plaintiff's DMCA § 1202(a) claims "because a formulaic recitation of the elements of a cause of action, including allegations regarding a defendant's state of mind, are not sufficient to satisfy Rule 8"); *see also Peter T. Erdelyi & Assocs. v. Optimum Seismic, Inc.*, No. 2:20-cv-11066-JVS-GJSx, 2021 WL 4775635, at *6 (C.D. Cal. July 21, 2021) (granting motion to dismiss § 1202(a) claim where plaintiff relied on conclusory "information and belief" allegations); *Himelsein v. LS1, LLC*, No. CV 18-3940-GW(JCx), 2019 WL 13037049, at *5 (C.D. Cal. Feb. 21, 2019) (dismissing § 1202(a) claim as "merely provid[ing] conclusory allegations about [defendant's] mental state" where plaintiff alleged the following:  "Knowing that it had no legal right to exploit Markle Photos, by providing and distributing false copyright management information [defendant] violated and infringed § 1202(a) of the Copyright Act . . ."); *Krechmer*, 747 F. App'x at 9–10 (affirming dismissal of Section 1202(a) claim where plaintiff merely alleged that defendant was falsely listed as author but did not plausibly allege that "defendants knew that such copyright information was false").

Critically, Getty fails to allege any facts that would plausibly demonstrate Stability AI's knowledge, such as affirmative misrepresentations about the images' authorship or origin.  Courts have found the knowledge requirement met only when plaintiffs allege specific, deliberate acts, such as when a defendant falsely identifies itself as the author and copyright owner of the work in question.  *See, e.g.*, *Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029, 1054 (N.D. Cal. 2023)

1    (denying motion to dismiss § 1202(a) claim where plaintiff alleged defendant falsely identified

2    himself as author and owner of copyright and added licensing terms "to obscure his own unlawful

3    copying" the source code at issue).  Getty pleads no such facts.  Without them, Getty's allegations

4    that Stability AI acted knowingly is nothing but a "[t]hreadbare recital[] of the elements of a

5    cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, which cannot

6    survive a motion to dismiss.

### 2.    Getty fails to allege facts plausibly suggesting an "intent to induce, enable, facilitate, or conceal infringement."

9        Even if Getty could plausibly allege knowledge, its claim would still fail because the

10    Complaint does not contain factual allegations suggesting Stability AI acted with the requisite

11    intent "to induce, enable, facilitate, or conceal infringement."  17 U.S.C. § 1202(a).  The alleged

12    appearance of such watermarks is not enough to satisfy the intent requirement.  *See LIVN*

13    *Worldwide Ltd. v. Vubiquity Inc*., No. 2:21-cv-09589-AB-KS, 2022 WL 18278580, at *6 (C.D.

14    Cal. July 22, 2022) (dismissing Section 1202(a) claim where plaintiff merely relied on

15    distribution of allegedly false copyright ownership information to establish intent to induce

16    infringement); *Morgan*, 2016 WL 6953433, at *3 (dismissing § 1202(a) claims under Rule 8(a)

17    where allegations of incorrect photograph credits were not supported by allegations of intent);

18    *Michael Grecco Prods, Inc. v. Function(X) Inc.*, No. 18 Civ. 386 (NRB), 2019 WL 1368731, at

19    *2 (S.D.N.Y. Mar. 11, 2019) ("Grecco's allegation that 'Defendant's falsification . . . of . . .

20    copyright management information was done . . . intentionally[ ] [and] knowingly . . .' does not

21    suffice." (citing *Iqbal*, 556 U.S. at 678)).

22        No allegations support an intent to "induce," "enable," or "facilitate" infringement:

23    nowhere in Getty's complaint is there a mention of Stability AI, for instance, urging users to

24    create outputs with Getty Images watermarks.  And if Stability AI's aim had been to "conceal"

25    infringement, relying on an unpredictable, automated process to append a distorted version of

26    Getty's watermark to an image would be an especially clumsy vehicle to "conceal" infringement

27    of Getty's own works.  The only plausible explanation—based on the face of Getty's complaint—

28    is that the ersatz watermarks are not a deliberate act but an accidental byproduct of a

1    computerized process. *See, e.g.*, Compl. ¶ 86 (citing a Reddit user stating: "I didn't ask for

2    that").

3         Getty is well aware of the required mental state for a Section 1202(a) claim: Getty—and

4    its current legal counsel—successfully argued in *Zuma Press, Inc. v. Getty Images (US), Inc.* in

5    the Southern District of New York in 2018 that Getty lacked the necessary intent under similar

6    facts. 349 F. Supp. 3d 369 (S.D.N.Y. 2018). In *Zuma Press*, Getty (there a defendant) had

7    applied watermarks and "double bylines" in its captions during a migration of some seven million

8    images to Getty's website. 349 F. Supp. 3d at 375; Getty's Mem. of Law ISO Mot. for Summ. J.

9    at 25, *Zuma Press, Inc. v. Getty Images (US), Inc.*, No. 1:16-cv-06110-AKH (S.D.N.Y. June 6,

10   2018), Dkt. No. 81. The *Zuma Press* court found that Getty lacked the requisite mental state

11   under § 1202(a) where the process "was largely automated." 349 F. Supp. 3d at 374. Here, Getty

12   alleges that Stable Diffusion models were trained on *billions*, not millions, of images (Compl.

13   ¶ 60(a)) and that the ersatz Getty watermarks have appeared in outputs of the artificial

14   intelligence model (*id.* ¶ 98)—*i.e.*, as part of an automated process. Getty was right seven years

15   ago when it argued against a finding of scienter under § 1202(a) under these circumstances; it's

16   wrong now. Because "Plaintiff cannot establish that Defendant had any scienter, let alone double

17   scienter," *Steinmetz v. Shutterstock, Inc.*, 629 F. Supp. 3d 74, 85 (S.D.N.Y. 2022), Count II must

18   be dismissed.

19        **B.    Getty's Lanham Act Claims (Claims III and IV) Fail.**

20        Getty's claims for trademark infringement (Lanham Act § 32) and false designation of

21   origin (Lanham Act § 43(a)) fail for two independent reasons. First, the claims fail because Getty

22   does not allege Stability AI used its marks in connection with goods or services. Second, even if

23   there were a trademark use, the claims would fail because Getty's own allegations negate any

24   likelihood of confusion. Because the elements for these two claims are identical, they are

25   analyzed together. *See Mintz v. Subaru of Am., Inc.*, 716 F. App'x 618, 622 (9th Cir. 2017) ("the

26   elements needed to establish federal unfair competition under 15 U.S.C. § 1125(a) are identical to

27   the elements needed to establish trademark infringement under 15 U.S.C. § 1114").

28

1

2

**1.      Getty does not allege that Getty's watermarks appeared in Stability AI image outputs in connection with a commercial transaction.**

3

Getty's claims fail at the outset because Getty does not allege that Stability AI used its

4

mark in connection with goods or services.  "The Supreme Court has made it clear that trademark

5

infringement law prevents only unauthorized uses of a trademark in connection with a

6

commercial transaction in which the trademark is being used to confuse potential consumers."

7

*Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005) (citing *Prestonettes, Inc. v.*

8

*Coty*, 264 U.S. 259, 268 (1924)).  "[T]rademark infringement protects only against mistaken

9

*purchasing decisions* and not against confusion generally."  *Id.* at 677 (alterations in original)

10

(citation omitted).  "But merely alleging that a defendant used a trademark 'in commerce' does

11

not plead a trademark-infringement claim[.]"  *Epic Games, Inc. v. Mendes*, No. 17-cv-06223-LB,

12

2018 WL 2926086, at *10 (N.D. Cal. June 12, 2018).  And "just like a trademark-infringement

13

claim under 15 U.S.C. § 1114, a false-designation-of-origin claim under 15 U.S.C. § 1125(a) only

14

applies in circumstances involving a commercial transaction in which the trademark is being used

15

to confuse potential consumers."  *Id.* (cleaned up).

16

Getty's allegations do not meet this standard.  Getty does not allege that Stability AI

17

places Getty Images marks on it services, displays them in advertisements, or otherwise uses it to

18

indicate the origin of its models.  There is no suggestion that the marks are used to sell or market

19

any product.  Instead, a distorted version of Getty's marks occasionally and unpredictably appears

20

within the content of a synthesized image generated for a single user.  How, where, and when

21

these distorted marks appear is not alleged at all—and there is certainly not the necessary

22

allegation that those distorted elements were used in a way that could confuse consumers about

23

the source of a good or service they were buying.

24

Indeed, Getty does not sufficiently allege that ***any*** of the examples of ersatz watermarks

25

were even generated through Stability AI's commercial services.[1]  Instead, Getty acknowledges

26

---

[1] Getty states that "[u]sers of . . . DreamStudio have reported generating output bearing a

27

modified version of Getty Images watermark with a variety of prompts" (Compl. ¶ 85), but none of the examples it cites refer to DreamStudio at all.  *See id.* ¶ 85 n.20 (citing

28

https://mastodon.social/@eliocamp/109593159332068058); *id.* ¶ 86 n.21 (citing

that Stability AI releases Stable Diffusion as open-source software that any third party can "access, use, and further develop" without Stability AI's control.  Compl. ¶ 89.  And Getty does not allege that Stability AI uses these "bizarre" and "grotesque" outputs for marketing purposes or advertising any sort of affiliation with Getty.  *See 1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 408 (2d Cir. 2005) ("WhenU does not 'use' 1-800's trademark in the manner ordinarily at issue in an infringement claim:  it does not 'place' 1-800 trademarks on any goods or services in order to pass them off as emanating from or authorized by 1-800.").

Nor does Getty allege that the distorted marks were used to influence any purchasing decisions—a fatal omission given how the technology is alleged to work.  *See Hancock Park Homeowners Ass'n Est. 1948 v. Hancock Park Home Owners Ass'n*, No. CV 06-4584 SVW (SSx), 2006 WL 4532986, at *5 (C.D. Cal. Sep. 20, 2006) ("[U]nless Plaintiff or Defendant has used Plaintiff's trademark in a manner that impacts some type of purchasing decisions, this Court would lack jurisdiction over the action.").  Unlike Getty's pre-produced content, which customers can view before deciding to license it (Compl. ¶ 42), Stability AI's outputs do not exist until a user enters a prompt and commits to the generation (Compl. ¶ 9).  A commercial user has no idea what an output will look like, let alone whether it will contain an anomalous, distorted watermark, ***before*** they spend any money.  The appearance of a distorted mark therefore could not possibly influence a consumer.  There is, in short, no relationship between the alleged marks and the point of sale.

### 2.    Getty fails to allege a plausible likelihood of confusion.

Even if Stability AI's conduct could be construed as a use of a mark in connection with a commercial transaction, the Lanham Act claims would still fail because Getty has not plausibly alleged a likelihood of confusion.  A district court may find no likelihood of confusion as a matter of law on a motion to dismiss.  *See Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 860–61 (9th Cir. 1996).  "[W]hile issues of confusion . . . are factual questions, a complaint must nevertheless contain sufficient facts to plausibly allege a probability of confusion between plaintiff's product

https://www.reddit.com/r/weirddalle/comments/11pki84/i_asked_for_a_photo_of_two_girls_hugging_and_the/); *id.* ¶ 87 n.22 (citing https://huggingface.co/stabilityai/stable-diffusion-2-1/discussions/17).

1    or services and those of the alleged infringer." *Hildawn Design LLC v. Dad Gang Co. LLC*, No.

2    3:25-CV-05277-DGE, 2025 WL 2306580, at *3 (W.D. Wash. Aug. 11, 2025) (cleaned up).  In

3    *Hildawn Design*, the district court dismissed the plaintiff's trademark claim where, "other than

4    conclusory allegations that confusion is likely to occur, Plaintiff set[] forth no factual allegations

5    underneath" any of the likelihood of confusion factors—including whether any consumer

6    "perceived the [uses] at issue as source-identifying." *Id.*

7         Here, Getty's own characterizations of the outputs makes such confusion implausible.

8    Getty repeatedly alleges its own brand is associated with "premium quality visual assets."

9    Compl. ¶ 3.  Yet it emphatically describes the Stable Diffusion outputs bearing the watermarks as

10   "bizarre," "grotesque," and "severely distorted," and alleges that the images are "well below

11   Getty Images' quality standards." *Id.* ¶¶ 15, 98, 100–102.  It is implausible that a reasonable

12   consumer would mistake what Getty describes as "bizarre" and "grotesque" images as a

13   deliberate act of sponsorship by a "premium quality" brand.

14        Furthermore, Getty fails to plead facts suggesting confusion among an "*appreciable*

15   *number of people*." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002)

16   (emphasis in original) (citation omitted).  The Complaint points only to a handful of outputs, each

17   generated for an individual user.  Such isolated instances cannot establish widespread confusion.

18   *See Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1393 (9th Cir. 1993) (affirming the district

19   court's finding of no evidence of actual confusion where seven of 80,000 people received a

20   mailer at issue); *see also Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1042 (C.D. Cal.

21   1998) ("Just as one tree does not constitute a forest, an isolated instance of confusion does not

22   prove probable confusion.  To the contrary, the law has long demanded a showing that the

23   allegedly infringing conduct carries with it a likelihood of confounding an appreciable number of

24   reasonably prudent purchasers exercising ordinary care." (citation omitted)).  Tellingly, in the

25   website posts Getty does cite, it alleges no facts showing that anyone was actually confused as to

26   the source.  *See* Compl. ¶¶ 85 n.20, 86 n.21, and 87 n.22 (in posts explicitly marked "Stable

27   Diffusion," neither the original posters nor other commenters express confusion as to whether

28   Getty was the source of an output bearing a distorted watermark).  Because Getty's own

1    allegations render confusion implausible, its Lanham Act claims must be dismissed for this

2    alternative reason as well.

3    **C.    Independently, Getty's False Designation of Origin Claim (Claim IV) Is Barred by *Dastar*.**

4

5    Getty's claim for false designation of origin under Section 43(a) of the Lanham Act also

6    fundamentally fails because it is a clear attempt to "repackage[]" a copyright infringement claim

7    in trademark clothing, *Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052, 1060 (N.D. Cal.

8    2022), a practice the Supreme Court squarely foreclosed in *Dastar Corp. v. Twentieth Century

9    Fox Film Corp.*, 539 U.S. 23 (2003).  In *Dastar*, the Court made clear that the phrase "origin of

10   goods" in the Lanham Act "refers to the producer of the tangible goods that are offered for sale,

11   and not to the author of any idea, concept, or communication embodied in those goods."  *Id.* at

12   37.  This crucial distinction prevents the Lanham Act from morphing into a "species of mutant

13   copyright law" that would improperly grant perpetual protection to communicative works.  *Id.* at

14   34.  Getty's claim ignores this mandate.

15   The very foundation of Getty's Section 43(a) claim is its allegation that Stability AI's

16   models copied expressive content.  Getty alleges that the distorted watermarks appear in outputs

17   precisely because the Stable Diffusion models "are prone to 'overfitting,' where the model is

18   trained too long on the same training data or similar training data leading to memorization of

19   certain individual training images."  Compl. ¶ 83.  Getty also alleges that "the output delivered by

20   Stability AI includes a modified version of a Getty Images watermark, underscoring the clear link

21   between the copyrighted images that Stability AI copied without permission and the output its

22   model delivers."  *Id.* ¶ 84.  These allegations tie the supposed Lanham Act violation not to the

23   origin of the digital file itself but inseparably to the communicative content within that file.  This

24   is exactly the sort of claim *Dastar* prohibits.  Getty's complaint is not that consumers are

25   confused about who produced the digital file but that the content of the file is confusingly similar

26   to its own copyrighted content—a matter exclusively for copyright law.

27   The Ninth Circuit has faithfully applied this principle.  In *Slep-Tone Entertainment Corp.

28   v. Wired for Sound Karaoke & DJ Services, LLC*, 845 F.3d 1246 (9th Cir. 2017), the court held

1  that a defendant who copied the plaintiff's karaoke tracks onto a new hard drive did not create a

2  new "good" for Lanham Act purposes.  *Id.* at 1250.  The court reasoned that the claim was "more

3  accurately conceived of as attacking unauthorized copying," and under *Dastar*, it could not be

4  shoehorned into the Lanham Act.  *Id.*  The same logic applies here.  Stability AI is alleged to be

5  the origin of the digital files its models create, just as the defendant in *Slep-Tone* was the origin of

6  the hard drive containing the copied music.  Any confusion arises from the alleged copying of

7  content, not the source of the good.

8        Courts in this Circuit have consistently applied this reasoning to digital media like the

9  images at issue here.  *See, e.g.*, *LIVN Worldwide Ltd.*, 2022 WL 18278580, at *3 (dismissing

10  Lanham Act claim where the "origin" of illegally distributed video episodes was the defendant

11  that made them available, not the plaintiff who created the content); *Evox Prods. v. Verizon*

12  *Media*, No. CV 20-2852-CBM-(JEMx), 2020 WL 5894564, at *2 (C.D. Cal. Aug. 19, 2020)

13  (dismissing Lanham Act claim based on the "unauthorized use of the *content* of Plaintiff's digital

14  files of the photographs, which *Dastar* precludes as a trademark claim" (emphasis in original)

15  (citation omitted)).

16        Here, too, Getty does not allege confusion about the origin of the various distorted images

17  bearing ersatz Getty watermarks in its Complaint.  It's not unclear, in other words, how those

18  images became available:  it was through a Stable Diffusion output.  Because Getty's claim is

19  fundamentally about the alleged similarity in *expression* between its images and certain Stable

20  Diffusion outputs, it is not cognizable under Section 43(a) of the Lanham Act.  *See, e.g.*, Mark P.

21  McKenna & Lucas S. Osborn, Trademarks and Digital Goods, 92 Notre Dame L. Rev. 1425,

22  1450 (2017):

23        To be cognizable, a claim must assert likely confusion attributable to a designation
        external to the file itself.

24                          ***

25        If it were otherwise, creative plaintiffs could always avoid *Dastar* simply by
        embedding their marks within a creative work.  Disney could prevent others from

26        selling copies of Steamboat Willie even after its copyright expired by arguing that,
        because Mickey Mouse is in the movie and is Disney's trademark, consumers will

27        be confused about the source of physical copies of the movie.  Absent a rule
        prohibiting arguments based on the content of a work, that claim would survive

28        *Dastar* because it is nominally focused on the source of physical goods, even though

1
2

in reality it amounts to an assertion that consumers will think Disney authorized the reproduction of the content.   This would create precisely the sort of "mutant copyright law" the Supreme Court rejected.

3

Getty's Section 43(a) claim must be dismissed.

4
5

### D.   Getty's Trademark Dilution Claims (Claims V and VII) Fail Because Getty Has Not Plausibly Alleged Its Marks Are "Famous" to the General Consuming Public.

6

Trademark *dilution*, as opposed to a claim for trademark *infringement*, is an extraordinary

7

protection reserved only for iconic marks that have become household names.  Getty's claim for

8

trademark dilution under federal and California law must be dismissed for the simple and

9

dispositive reason that its marks are not "famous" as that term is defined by statute.[2]  "A mark is

10

famous if it is widely recognized by the general consuming public of the United States as a

11

designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2)(A).

12

Similarly, "a mark is famous" under Cal. Bus. & Prof. Code § 14247 "if it is widely recognized

13

by the general consuming public of this state, or by a geographic area of this state, as a

14

designation of source of the goods or services of the mark's owner."  Cal. Bus. & Prof. Code

15

§ 14247(a).

16

This is an intentionally rigorous and demanding standard.  "[T]he Ninth Circuit has

17

concluded that trademark dilution 'is a cause of action reserved for a select class of marks—those

18

marks with such powerful consumer associations that even noncompeting uses can impinge on

19

their value.'"  *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1065 (N.D. Cal. 2015)

20

(quoting *Nissan Motor Corp. v. Nissan Computer Corp.*, 378 F.3d 1002, 1011 (9th Cir. 2004)).

21

Courts emphasize the "high burden that a plaintiff faces in establishing that its mark is

22

sufficiently famous to support a dilution claim"—so famous that it becomes a household name.

23

*Id.* at 1067; *see also Dahon N. Am. Inc. v. Hon*, No. 2:11-cv-05835-ODW (JCGx), 2012 WL

24

25
26
27

[2] Federal and California state trademark dilution causes of action have the same elements:  (i) the mark must be famous and distinctive; (ii) the defendant must use the mark in commerce; (3) the defendant's use must begin after the mark is famous; and (iv) defendant's use must be likely to cause dilution, such as by (a) blurring or (b) tarnishment.  *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008) ("The analysis under [federal and California state law] is the same.").

28

Getty's trademark dilution claims also fail to satisfy the second "connection with goods or services" element for the reasons articulated above in Section IV.B.1.

1413681, at *9 (C.D. Cal. Apr. 24, 2012) ("trademark dilution claims are restricted to truly

famous marks, such as Budweiser beer, Camel cigarettes, and Barbie dolls").  Congress

deliberately amended federal law to foreclose dilution claims based on "niche" fame—fame

within a specialized market—which is the only type of fame Getty's allegations possibly support.

*See MGA Entm't, Inc. v. Dynacraft BSC, Inc.*, No. 2:17-CV-08222-ODW-KS, 2018 WL 2448123,

at *6 (C.D. Cal. May 30, 2018) ("[T]he Trademark Dilution Revision Act of 2006 restricted the

statute from protecting marks that are famous only in 'niche' markets.").

In determining whether a mark possesses the requisite degree of widespread public

recognition, courts may consider the following non-exclusive factors:  "(i) [t]he duration, extent,

and geographic reach of advertising and publicity of the mark, whether advertised or publicized

by the owner or third parties[;] (ii) [t]he amount, volume, and geographic extent of sales of goods

or services offered under the mark[;] (iii) [t]he extent of actual recognition of the mark[; and]

(iv) [w]hether the mark was registered under the Act of March 3, 1881, or the Act of February 20,

1905, or on the principal register."  15 U.S.C. § 1125(c)(2)(A)(i)–(iv); *see also* Cal. Bus. & Prof.

Code § 14247(a) (same factors, except the relevant geographic unit is the state of California).

While Getty alleges its marks are registered, the rest of the statutory factors weigh against a

finding that the requisite level of recognition was sufficiently pled.

### 1.    Getty fails to allege widespread advertising or publicity to the general public.

Getty pleads no specific facts regarding the duration, extent, or reach of its advertising to

the general consuming public.  Instead it offers only the conclusory allegation that it "has

expended substantial time, money, and resources" on promotion.  Compl. ¶ 124.  Such vague

allegations, without details regarding advertising expenditures or specific campaigns targeting the

general public, are insufficient under this factor.  *See Parts.com, LLC v. Yahoo! Inc.*, 996 F. Supp.

2d 933, 940 (S.D. Cal. 2013) (finding similarly conclusory allegations of a "significant amount of

resources" spent insufficient); *see also MGA Entm't v. Dynacraft BSC, Inc.*, No. 2:17-cv-08222-

ODW-KS, 2018 WL 2448123, at *6 (C.D. Cal. May 30, 2018) (dismissing plaintiff's dilution

claims under state and federal law, despite plaintiff alleging that it had "spent millions of dollar to

develop, build, and promote the Cozy Coupe[,]" where "the fame of the Cozy Coupe Mark is incomparable to that of other household names, such as Budweiser beer").

Nor does Getty's allegation that its images are used by *its customers* in "newspapers, magazines, advertising campaigns, films, television programs, books and websites" (Compl. ¶ 5.) establish fame for the "Getty Images" mark itself, as Getty fails to plead how its own mark is featured or promoted in those third-party uses. *See Arcsoft*, 153 F. Supp. 3d at 1066 (finding first factor weighed against plaintiff where allegation that "'many of the most famous and widely-circulated publications in the United States' have featured, recognized, and/or mentioned [plaintiff's] app" lacked "details regarding [plaintiff's] advertising or promoting of the [plaintiff's] [m]ark, or the particular contexts in which the [plaintiff's] [m]ark appeared in the various publications."). The first factor weighs in Stability AI's favor.

### 2. Getty's customer figures demonstrate niche market penetration, not general fame.

Getty's allegation that it "served more than 708,000 customers last year, with customers from almost every country in the world, ranging from media outlets, advertising agencies, and corporations of all sizes to individual creators" (Compl. ¶ 53) is legally meaningless for establishing fame among the general U.S. or California consuming public. Not only does the figure represent a tiny percentage of either population, but also courts have dismissed dilution claims from brands with far greater reach. *See, e.g., Arcsoft*, 153 F. Supp. 3d at 1066–67 (granting motion to dismiss and rejecting "proposition that 20 million downloads of an app [by U.S. consumers] is a material indicator of 'household name' status"); *Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997, 1034 (N.D. Cal. 2015) (finding Pinterest not famous for dilution purposes despite 25 million monthly active U.S. users); *see also Rogozinski v. Reddit, Inc.*, No. 23-cv-00686-MMC, 2023 WL 4475581, at *6 (N.D. Cal. July 11, 2023) (granting motion to dismiss where allegations that r/WallStreetBets subreddit reached one million subscribers fell short of level of fame required). These figures starkly illustrate that Getty's customer volume falls far short of what is required to plausibly allege fame.

1

### 3. Getty pleads no facts showing actual recognition beyond its niche commercial market.

Getty fails to establish the extent of the actual recognition of its marks. Instead, Getty's own pleadings confirm that any plausible fame is confined to a commercial niche of "media outlets, advertising agencies, and corporations of all sizes to individual creators." Compl. ¶ 53. This is a textbook example of "niche" fame that the law was revised to foreclose. *See Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*, 841 F. Supp. 2d 753, 757-58 (S.D.N.Y. 2012) ("[A]s courts have noted, the inclusion . . . of the phrase 'widely recognized by the general consuming public of the United States' 'was intended to reject dilution claims based on niche fame, *i.e.* fame limited to a particular channel of trade, segment of industry or service, or geographic region.'" (citation omitted)); *see also Naranjo v. Sandoval*, No. CV 16-8476 PSG (AGRx), 2018 WL 11350617, at *6 (C.D. Cal. Feb. 28, 2018) (dismissing California trademark dilution claim where plaintiff's allegations "create[d] a plausible inference that [his trademark] ha[d] achieved a degree of notoriety amongst fans of regional Mexican music" and thus the kind of niche fame that both federal and California law reject).

Getty fails to allege that its marks are so well known in the United States or California as to become a fixture in the "collective national consciousness" or to join the ranks of "Budweiser beer, Camel cigarettes, and Barbie dolls." *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 911–12 (9th Cir. 2002)*, superseded by statute on other grounds*; *accord Dahon*, 2012 WL 1413681, at *9 (granting dismissal where marks fell "far short of the high standard required for a dilution claim"); *Fruit of the Loom, Inc., v. Girouard*, 994 F.2d 1359, 1362-63 (9th Cir. 1993) (finding that the "FRUIT" mark "is far from being in the class" of "TIFFANY," "POLAROID," "ROLLS ROYCE," "KODAK," "CENTURY 21," or "OSCAR" marks). It thus fails to meet the "extraordinarily high level of public awareness" required to qualify as famous. *Pinterest, Inc.*, 140 F. Supp. 3d at 1035; *see also Board of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008) (holding University of Texas Longhorn logo not famous under TDRA). Lacking fame, Getty's trademark dilution claims must be dismissed.

E.    **Getty's Unfair Competition Law Claim (Claim VI) Fails for Multiple Independent Reasons.**

Getty's claim under California's Unfair Competition Law ("UCL") fails for several independent reasons.  First, Getty lacks standing for failing to allege any economic injury caused by the alleged predicate violations.  Second, the claim is procedurally barred because Getty has not plausibly alleged that its existing legal remedies are inadequate.  Third, the UCL claim is substantively meritless under both the "unlawful" and "fraudulent" prongs that Getty relies on.[3] Compl. ¶ 154.

1.    **Getty lacks standing because it fails to plead economic injury caused by the alleged unfair competition.**

Getty's UCL claim fails because Getty lacks standing.  To plead a UCL claim, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that economic injury was the result of, i.e., *caused by*" the alleged predicate violation.  *Davis v. RiverSource Life Ins. Co.*, 240 F. Supp. 3d 1011, 1017 (N.D. Cal. 2017) (emphases in original); *see also Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1348 n.31 (2009) (UCL's standing requirement "more stringent than" federal "injury in fact" requirements); Cal. Bus. & Prof. Code § 17204 (permitting relief for "a person who has suffered injury in fact *and has lost money or property* as a result of the unfair competition" (emphasis added)).

Getty fails to meet this stringent standard.  The Complaint offers only the conclusory allegation that Getty was "deprived of . . . the profits and benefits of business relationships" as a result of Stability AI's "wrongful acts."  Compl. ¶ 156.  It fails, however, to draw any plausible causal link between this alleged harm and the specific predicate violations—the appearance of distorted watermarks.  Getty fails to allege that a single customer declined to license an image or canceled a subscription as a result of seeing a "bizarre" and "grotesque" output bearing a distorted watermark.  Getty also fails to allege how the appearance of a distorted watermark in a private, single-user image generation—the basis for its DMCA and Lanham Act claims—diminished the value of its intellectual property or caused it to lose money.

---

[3] Getty does not allege a violation under the UCL's "unfair" prong.

Getty has not explained in its complaint "how Defendants' alleged violations of the DMCA [and Lanham Act] have caused or will cause Plaintiffs economic injury." *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 860-61 (N.D. Cal. 2023) (dismissing UCL claims for lack of economic injury in AI case). Any alleged economic harm would at most stem from the underlying copying for training the model—a core copyright claim—not from the rare, post-sale appearance of a distorted watermark. Because Getty has not pled facts showing its alleged economic injury was the "result of" the unfair competition, it lacks standing, and its UCL claim must be dismissed.

### 2.    Getty fails to plead that legal remedies are inadequate.

Getty's UCL claim fails for the independent reason that it is procedurally barred. The UCL provides only equitable remedies like restitution and injunctive relief. *Hodge v. Superior Ct.*, 145 Cal. App. 4th 278, 284 (2006). It is well established in the Ninth Circuit that "[e]quitable relief is not appropriate where an adequate remedy exists at law." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (quoting *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009)); *see also In re Cal. Gasoline Spot Mkt. Antitrust Litig*, No. 20-CV-03131-JSC, 2021 WL 1176645, at *7–8 (N.D. Cal. Mar. 29, 2021) (collecting cases dismissing plaintiffs' claims at the pleading stage and rejecting that plaintiffs may plead in the alternative adequate legal remedies and claims for equitable relief). Getty's request for substantial monetary damages under its DMCA and Lanham Act claims fatally undermines its bid for equitable relief.

The Complaint is devoid of any factual allegations explaining ***why*** it "could not be made whole with monetary damages." *Emerson v. Northern Trust Corp.*, No. 23-CV-00241-TLT, 2023 WL 11884593, at *6 (N.D. Cal. Nov. 15, 2023) (granting motion to dismiss on UCL claims). Instead, Getty merely recites the words "no adequate remedy at law" and "irreparable harm." Compl. ¶ 155. This is not enough. *See, e.g., Dennis v. Nike, Inc.*, No. 2:22-CV-04515-SB-PD, 2022 WL 18397390, at *4 n.4 (C.D. Cal. Nov. 18, 2022) (plaintiff "has not shown why the legal remedies he has sought are inadequate" where he "conclusorily asserts only that [defendant] caused him 'irreparable injury.'"); *Chavez v. Allstate Northbrook Indem. Co.*, No. 22-CV-00166-AJB-DEB, 2023 WL 3773939, at *2 (S.D. Cal. Apr. 13, 2023) (dismissing UCL claim where

1   plaintiff did not plausibly allege lack of adequate remedy at law).  Because Getty fails to explain

2   why its claims for monetary damages do not provide an adequate legal remedy, its UCL claim

3   must be dismissed.

### 3.   Getty's "unlawful" prong claim is fatally flawed.

5   Getty's UCL claim under the "unlawful" prong is substantively meritless.

6   *First*, to the extent the claim is predicated on an alleged violation of DMCA Section

7   1202(a), it is barred by the doctrine of field preemption.  Federal law occupies an entire

8   regulatory field where a congressional scheme is so "pervasive" that it "make[s] reasonable the

9   inference that Congress left no room for the States to supplement it."  *Rice v. Santa Fe Elevator*

10  *Corp.*, 331 U.S. 218, 230 (1947).  That is precisely the case with the DMCA's provisions

11  governing CMI.

12      In 17 U.S.C. §§ 1202 and 1203, Congress created a comprehensive and meticulous

13  statutory regime.  The provisions specifically define CMI (and allow the Register of Copyrights

14  to supplement that definition through federal regulation) (§ 1202(c)), establish federal causes of

15  action for falsifying (§ 1202(a)) or removing (§ 1202(b)) CMI, and provide a detailed remedial

16  scheme that allows for legal or equitable relief (§ 1203).  Many courts, including in this District,

17  have found other provisions of the DMCA to be "creature of a federal statutory regime," and

18  *copyright management information*—another creation unique to the DMCA—is no different.

19  *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. C 10-05696 CRB, 2011 WL 2690437, at

20  *3 (N.D. Cal. July 8, 2011); *see also Stevens v. Vodka & Milk, LLC*, No. 17-CV-8603 (JSR),

21  2018 WL 11222927, at *2–3 (S.D.N.Y. Mar. 15, 2018) (recognizing that federal law's "near total

22  occupation of the field of copyright law" supports inference that remedies under the DMCA

23  "preclude enforcement of state laws on the same subject" (quoting *Rice v. Santa Fe Elevator*

24  *Corp.*, 331 U.S. 218, 230 (2018))).  Congress created an express, self-contained federal remedy

25  for misconduct related to CMI.  Permitting a UCL claim to proceed would allow state law to

26  improperly supplement this federal scheme.

27      *Second*, for the reasons stated above in Sections IV.B., C., and D., Getty has fails to assert

28  a viable claim under either Section 32 or Section 43 of the Lanham Act.  Without a plausible—

1    and non-preempted—predicate violation, Getty's "unlawful" prong claim must fail.  *See, e.g.,*

2    *Stokes v. CitiMortgage, Inc.*, No. CV 14-00278 BRO (SHx), 2014 WL 4359193, at *11 (C.D.

3    Cal. Sep. 3, 2014) (though "[v]irtually any law federal, state or local can serve as a predicate for

4    an action" under the "unlawful" prong of the UCL, if a plaintiff "cannot state a claim under the

5    predicate law" the UCL "claim also fails." (cleaned up)).

### 4.    Getty's "fraudulent" prong claim fails to meet Rule 9(b)'s heightened pleading standard.

8        Getty's UCL claim under the "fraudulent" prong fails for two independent reasons.

9        ***First***, Getty's "pleading . . . as a whole" does not "satisfy the particularity requirement of

10   Rule 9(b)."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009).  All "averments

11   of fraud" must be specifically pled "irrespective of whether the substantive law at issue is state or

12   federal," and even where "fraud is not an essential element of a claim."  *Id.* (citation omitted).

13   "To properly plead fraud with particularity under Rule 9(b), a pleading must identify the who,

14   what, when, where, and how of the misconduct charged . . ."  *Davidson v. Kimberly-Clark Corp.*,

15   889 F.3d 956, 964 (9th Cir. 2018) (cleaned up).  Getty's conclusory allegation that a "substantial

16   portion of the public" were "likely to be misled" (Compl. ¶ 154) fails this standard because it

17   does not specify the fraudulent scheme with particularity.

18       Rule 9(b) requires particularity as to the allegedly fraudulent business practice.  Getty fails

19   to allege who at Stability AI—or even which Stability AI entity[4]—was responsible for any

20   fraudulent conduct, what specific misleading act Stability AI committed, when and where the

21   fraudulent business practice occurred, and how Stability AI supposedly leveraged its models'

22   technical flaws as part of a deceptive scheme.  Pointing to the unpredictable output of an

23   automated system does not satisfy the requirement to plead the particulars of Stability AI's

24   allegedly fraudulent actions.  Attributing limited one-off outputs to a deliberate, fraudulent

25   business practice requires specific factual allegations connecting the outputs to a deceptive

---

26   [4] *See, e.g.*, *Pegasus Holdings v. Veterinary Ctrs. of Am., Inc.*, 38 F. Supp. 2d 1158, 1163–64
27   (C.D. Cal. 1998) (As to multiple fraud defendants, a plaintiff "must provide each and every
     defendant with enough information to enable them 'to know . . . what fraudulent conduct they are
28   charged with.'" (quoting *In re Worlds of Wonder Sec. Litig.*, 694 F. Supp. 1427, 1433 (N.D. Cal.
     1988))).

1   scheme, which are absent here.

2          **Second**, Getty's own allegations fatally undermine the claim that a "reasonable consumer"

3   would be "likely to be deceived." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th

4   Cir. 2012) (citation omitted). Getty repeatedly and emphatically characterizes the outputs bearing

5   the ersatz watermarks as "severely distorted," "bizarre," and "grotesque," admitting they are

6   "well below Getty Images' quality standards." *See* Compl. ¶¶ 98, 100–102, 147; *see also id.* ¶¶ 3

7   & 126 (touting Getty's "premium quality visual assets" and "high-quality visual content"). In

8   doing so, Getty pleads facts that establish the opposite of deception. No reasonable consumer

9   would mistake bizarre and grotesque images for the "premium quality visual assets" Getty claims

10  to protect, nor would they believe that Getty had sponsored or affiliated itself with them. Getty's

11  own characterization of the outputs defeats any plausible inference of deception. Tellingly, while

12  Getty points to a handful of social media posts discussing these images (*id.* ¶¶ 84–87), it alleges

13  no facts showing anyone was actually misled or expressed confusion. Because Getty has failed to

14  plead its fraud-based claim with particularity and has pleaded facts that render any likelihood of

15  deception implausible, the "fraudulent" prong claim must also be dismissed.

16  **V.    CONCLUSION**

17         For the reasons set forth above, Stability AI respectfully requests that the Court dismiss

18  Counts II to VII of the Complaint with prejudice.

1   Dated: October 14, 2025

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORRISON & FOERSTER LLP


By: /s/ Joseph C. Gratz
    Joseph C. Gratz

JOSEPH C. GRATZ
JGratz@mofo.com
TIMOTHY CHEN SAULSBURY
TSaulsbury@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:     415.268.7000
Facsimile:      415.268.7522

ADITYA V. KAMDAR
AKamdar@mofo.com
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
Telephone:     202.887.1500
Facsimile:      202.887.0763

CHRISTOPHER R. ADLER
CAdler@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone:     213.892.5200
Facsimile:      213.892.5454

*Attorneys for Defendants*
STABILITY AI LTD., STABILITY AI,
INC., AND STABILITY AI US
SERVICES CORPORATION