DAVID R. SINGH (Bar No. 300840)
david.singh@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 4th Floor
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

BENJAMIN E. MARKS (*pro hac vice*)
benjamin.marks@weil.com
JARED R. FRIEDMANN (*pro hac vice*)
jared.friedmann@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212)310-8007

BRIAN G. LIEGEL (*pro hac vice*)
brian.liegel@weil.com
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Ave, Ste. 1200
Miami, FL  33131
Telephone: (305) 577-3180

Attorneys for Plaintiff GETTY IMAGES (US), INC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| GETTY IMAGES (US), INC., | Case No. 3:25-CV-06891-TLT |
| Plaintiff, | |
| v. | **GETTY IMAGES' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| STABILITY AI, LTD., STABILITY AI, INC., and STABILITY AI US SERVICES CORPORATION, | |
| Defendants. | Judge:      Hon. Trina L. Thompson<br>Date:       February 10, 2026<br>Time:       2:00 pm<br>Courtroom:  9 |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF ISSUES TO BE DECIDED .................................................. 2

III.    FACTUAL BACKGROUND ............................................................................. 3

IV.     LEGAL STANDARD ........................................................................................ 4

V.      ARGUMENT ..................................................................................................... 5

        A.      Getty Images has adequately pled a violation of the DMCA ..................... 5

        B.      Getty Images has adequately pled trademark infringement and false
                designation in violation of the Lanham Act........................................... 8

                1.      Getty Images has sufficiently pled a likelihood of confusion......................... 8

                2.      Getty Images has sufficiently pled that Stability AI has made a
                        commercial use of its marks ............................................................. 11

        C.      Getty Images' false designation claims are not barred by *Dastar* ............................ 14

        D.      Getty Images has adequately pled trademark dilution in violation of the
                Lanham Act and California state law........................................................... 15

        E.      Getty Images has adequately pled violations of California's Unfair
                Competition Law ......................................................................................... 18

                1.      Getty Images has pled economic injury sufficient to confer
                        standing ........................................................................................... 18

                2.      Getty Images has sufficiently pled legal remedies are inadequate
                        ...................................................................................................... 20

                3.      Getty Images has sufficiently pled UCL's "unlawful" prong........................ 21

                4.      Getty Images has sufficiently pled UCL's "fraudulent" prong .................... 22

        F.      Should the Court find any claim inadequately pled, it should grant leave
                to amend...................................................................................................... 24

VI.     CONCLUSION.................................................................................................. 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Aardwolf Indus., LLC v. Abaco Machs. USA, Inc.*,
5     No. CV 16-1968-GW(JEMX), 2017 WL 10350547 (C.D. Cal. Nov. 13, 2017)......................6

6 *Adobe Sys. v. Pierce*,
    No. CV13-6806GAF(Ex), 2014 WL 12570931 (C.D. Cal. May 13, 2014) ...........................16
7

*Am. Ass'n of Motorcycle Inj. Laws., Inc. v. HP3 L., LLC*,
8     No. 20 C 4866, 2021 WL 3054799 (N.D. Ill. July 20, 2021) ...................................17

9 *AMF Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979) ........................................................................8, 9, 13
10

11 *Andy Ryan Photographer, LLC v. Dagny's Real Est. LLC*,
    No. 24-CV-7787 (KMK), 2025 WL 2733858 (S.D.N.Y. Sept. 25, 2025) .............................6
12

*AngioScore, Inc. v. TriReme Med., LLC*,
13     70 F. Supp. 3d 951 (N.D. Cal. 2014) .........................................................................19

14 *Arcsoft, Inc. v. Cyberlink Corp.*,
    153 F. Supp. 3d 1057 (N.D. Cal. 2015) ...................................................................17
15

16 *Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................4
17

18 *Batra v. PopSugar, Inc.*,
    No. 18-CV-03752-HSG, 2019 WL 482492 (N.D. Cal. Feb. 7, 2019)......................................6

19 *Beaver v. Tarsadia Hotels*,
    29 F. Supp. 3d 1294 (S.D. Cal. 2014), *aff'd*, 816 F.3d 1170 (9th Cir. 2016)..........................21
20

21 *Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................4
22

*Bd. of Regents ex rel. Univ. of Tx. at Austin v. KST Elec., Ltd.*,
23     550 F. Supp. 2d 657 (W.D. Tex. 2008)......................................................................17

24 *Bosley Med. Inst., Inc. v. Kremer*,
    403 F.3d 672 (9th Cir. 2005) ..................................................................................12
25

26 *Brown v. Food for Life Baking Co.*,
    658 F. Supp. 3d 732 (N.D. Cal. 2023) (Thompson, J.)...........................................21
27

*Bryant v. City of Pomona*,
28     No. 21-55502, 2022 WL 4363430 (9th Cir. Sept. 21, 2022) ...................................25

*Cal. Med. Ass'n v. Aetna Health of Cal. Inc.*,
   14 Cal. 5th 1075 (2023) ........................................................................18

*Celebrity Chefs Tour, LLC v. Macy's, Inc.*,
   16 F. Supp. 3d 1141 (S.D. Cal. 2014)......................................................22

*City & County. of San Francisco v. City of Oakland*,
   No. 24-CV-02311-TSH, 2024 WL 4775737 (N.D. Cal. Nov. 12, 2024) ................20

*City of Carlsbad v. Shah*,
   850 F. Supp. 2d 1087 (S.D. Cal. 2012).....................................................20

*Colucci v. ZonePerfect Nutrition Co.*,
   No. 12–2907–SC, 2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) ....................21

*Craigslist Inc. v. 3Taps Inc.*,
   942 F. Supp. 2d 962 (N.D. Cal. 2013) ......................................................15

*Daar v. Oakley, Inc.*,
   No. CV 18-6007 PA (KSX), 2018 WL 9596129 (C.D. Cal. Sept. 27, 2018)............5

*Dahon N. Am. v. Hon*,
   No. 2:11cv05835ODW(JCGx), 2012 WL 1413681 (C.D. Cal. Apr. 24, 2012) .........17

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003)........................................................................14, 15

*Doe v. United States*,
   58 F.3d 494 (9th Cir. 1995) ................................................................24

*Entrepreneur Media, Inc. v. Smith*,
   279 F.3d 1135 (9th Cir. 2002) ...............................................................9

*Evox Prods., LLC v. Verizon Media Inc.*,
   No. CV202852CBMJEMX, 2020 WL 5894564 (C.D. Cal. Aug. 19, 2020).............14

*Friedman v. Live Nation Merch., Inc.*,
   833 F.3d 1180 (9th Cir. 2016) ...............................................................6

*Fruit of the Loom, Inc. v. Girouard*,
   994 F.2d 1359 (9th Cir. 1993) ..............................................................17

*Getty Images (US), Inc. v. Stability AI, Ltd.*,
   No. 23-cv-00135 (D. Del. May 2, 2023).....................................................2

*Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*,
   No. C0305340JF, 2005 WL 832398 (N.D. Cal. Mar. 30, 2005) ......................13

*Hasbro, Inc. v. Sweetpea Ent., Inc.*,
   No. CV133406DMGJCGX, 2014 WL 12586021 (C.D. Cal. Feb. 25, 2014)............12

*Himelsein v. LSI LLC*,
  No. CV 18-3940-GW(JCX), 2019 WL 13037049 (C.D. Cal. Feb. 21, 2019) .........................7

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) ...............................................................................20

*HomeGoods, Inc. v. Papanicolaou*,
  No. CV19-06912-CJC(PLAx), 2019 WL 7171541, at *5 (C.D. Cal. Dec. 4, 2019) .............16

*ICONICS, Inc. v. Massaro*,
  192 F. Supp. 3d 254 (D. Mass. 2016) ........................................................................6

*Iglesia Ni Cristo v. Cayabyab*,
  No. 18-CV-00561-BLF, 2019 WL 3997474 (N.D. Cal. Aug. 23, 2019).........................11, 12

*Izmo, Inc. v. Roadster, Inc.*,
  No. 18-CV-06092-NC, 2019 WL 13210561 (N.D. Cal. Mar. 26, 2019)................................5

*Jada Toys, Inc. v. Mattel, Inc.*,
  518 F.3d 628 (9th Cir. 2008) ...............................................................................17

*JL Beverage Co. v. Jim Beam Brands Co.*,
  828 F.3d 1098 (9th Cir. 2016) ..................................................................................9

*Johnson v. Napa Valley Wine Train, Inc.*,
  No. 15-CV-04515-TEH, 2016 WL 493229 (N.D. Cal. Feb. 9, 2016) ...................................12

*Julian Bakery, Inc. v. Healthsource Int'l, Inc.*,
  No. 16CV2594-JAH (KSC), 2018 WL 1524499 (S.D. Cal. Mar. 28, 2018).........................23

*Kabehie v. Zoland*,
  102 Cal. App. 4th 513 (2002) ................................................................................22

*Kadrey v. Meta Platforms, Inc.*,
  No. 23-CV-03417-VC, 2025 WL 744032 (N.D. Cal. Mar. 7, 2025)........................................7

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ...............................................................................24

*Klein v. Chevron U.S.A., Inc.*,
  202 Cal. App. 4th 1342 (2012) ...............................................................................23

*Kor. Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) .........................................................................................20

*Krechmer v. Tantaros*,
  747 F. App'x 6 (2d Cir. 2018) ..................................................................................8

*Krystofiak v. BellRing Brands, Inc.*,
  737 F. Supp. 3d 782 (N.D. Cal. 2024) ......................................................................21

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ...................................................................................18, 19

*LIVN Worldwide Ltd. v. Vubiquity Inc.*,
   No. 2:21-CV-09589-AB-KS, 2022 WL 18278580 (C.D. Cal. July 22, 2022) .......................14

*Lozano v. AT & T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007) .....................................................................................18

*Luv N'Care, Ltd. v. Regent Baby Prods. Corp.*,
   841 F. Supp. 2d 753 (S.D.N.Y. 2012) ........................................................................17

*Mango v. BuzzFeed, Inc.*,
   970 F.3d 167 (2d Cir. 2020) .......................................................................................7

*Marketquest Grp., Inc. v. BIC Corp.*,
   862 F.3d 927 (9th Cir. 2017) .....................................................................................13

*In re Mattel, Inc.*,
   588 F. Supp. 2d 1111 (C.D. Cal. 2008) ......................................................................23

*McGucken v. Chive Media Grp., LLC*,
   No. CV 18-01612-RSWL-KS, 2018 WL 3410095 (C.D. Cal. July 11, 2018) ....................5

*Michael Grecco Prods., Inc. v. Function(X) Inc.*,
   No. 18 CIV. 386 (NRB), 2019 WL 1368731 (S.D.N.Y. Mar. 11, 2019) .................................8

*Morgan v. Associated Press*,
   No. 15-03341-CBM-JEM, 2016 WL 6953433 (C.D. Cal. Mar. 16, 2016)..............................7

*Morgan v. AT&T Wireless Servs., Inc.*,
   177 Cal. App. 4th 1235 (2009) ...................................................................................23

*Mort v. United States.*,
   86 F.3d 890 (9th Cir. 1996) ......................................................................................20

*Naranjo v. Sandoval*,
   No. CV 16-8476 PSG, 2018 WL 11350617 (C.D. Cal. Feb. 28, 2018) .......................17, 18

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
   638 F.3d 1137 (9th Cir. 2011) ................................................................................9, 10

*NNG, Kft. v. AVA Enters., Inc.*,
   No. 2:14cv00220ODW(AJW), 2015 WL 5442725 (C.D. Cal. July 8, 2015)........................13

*Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*,
   165 F. Supp. 3d 937 (S.D. Cal. 2016).........................................................................19

*Official Airline Guides, Inc. v. Goss*,
   6 F.3d 1385 (9th Cir. 1993) .......................................................................................9

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
   151 Cal. App. 4th 688 (2007) ..........................................................................20

*Parts.com, LLC v. Yahoo! Inc.*,
   996 F. Supp. 2d 933 (S.D. Cal. 2013) ..............................................................16

*Parts.com, LLC v. Yahoo! Inc.*,
   No. 13–CV–1078JLS(JMA), 2014 WL 2573321 (S.D. Cal. June 9, 2014) ..........16

*Patagonia, Inc. v. McHugh*
   No. LACV19-07666JAK(AFMx), 2020 WL 4258818, at *4 (C.D. Cal. Apr. 21,
   2020) ...............................................................................................................16

*Peter T. Erdelyi & Assocs. v. Optimum Seismic, Inc.*,
   No. 220CV11066JVSGJSX, 2021 WL 4775635 (C.D. Cal. July 1, 2021) .............7

*Pinterest Inc. v. Pintrips Inc.*,
   15 F. Supp. 3d 992 (N.D. Cal. 2014) ................................................................17

*Pinterest, Inc. v. Pintrips, Inc.*,
   140 F. Supp. 3d 997 (N.D. Cal. 2015) ..............................................................17

*Powers v. Caroline's Treasures Inc.*,
   382 F. Supp. 3d 898 (D. Ariz. 2019) ..................................................................6

*Qualitex Co. v. Jacobson Prods. Co.*,
   514 U.S. 159 (1995) ........................................................................................13

*Rescuecom Corp. v. Comput. Troubleshooters, USA, Inc.*,
   464 F. Supp. 2d 1263 (N.D. Ga. 2005) ............................................................13

*Roblox Corp. v. WowWee Grp. Ltd.*,
   660 F. Supp. 3d 880 (N.D. Cal. 2023) ................................................................8

*Rolex Watch U.S.A., Inc. v. Agarwal*,
   No. CV-12-06400 MMM, 2012 WL 12886444 (C.D. Cal. Dec. 17, 2012) ..........23

*Santander Consumer USA Inc. v. Drive.Car LLC*,
   No. 3:23-CV-00288-SLG, 2024 WL 4880668 (D. Alaska Nov. 25, 2024)......23, 24

*Saunders v. Superior Court*,
   27 Cal. App. 4th 832 (1994) ............................................................................21

*Schneider v. Youtube, LLC*,
   No. 20-CV-04423-JD, 2022 WL 3031212 (N.D. Cal. Aug. 1, 2022)......................6

*SEC v. Prakash*,
   718 F. Supp. 3d 1098 (N.D. Cal. 2024) ..............................................................4

*Serova v. Sony Music Ent.*,
   13 Cal. 5th 859 (2022) ....................................................................................22

*Slep-Tone Ent. Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*,
845 F.3d 1246 (9th Cir. 2017) ...................................................................................14

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) .....................................................................................21

*Splunk Inc. v. Cribl, Inc.*,
662 F. Supp. 3d 1029 (N.D. Cal. 2023) ........................................................................6

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*,
240 F.3d 832 (9th Cir. 2001) .....................................................................................20

*Suarez v. Bank of Am. Corp.*,
No. 18-cv-01202-MEJ, 2018 WL 2431473 (N.D. Cal. May 30, 2018)..................25

*Thane Int'l, Inc. v. Trek Bicycle Corp.*,
305 F.3d 894 (9th Cir. 2002) ...............................................................................16, 17

*Third Est. LLC v. Cornerman Prods. LLC*,
No. 2:13-CV-3074-SVW-VBK, 2013 WL 12144110 (C.D. Cal. Aug. 5, 2013) ............17, 18

*Trader Joes's Co. v. Trader Joe's United*,
150 F.4th 1040 (9th Cir. 2025) ............................................................................8, 9, 10

*Valente-Kritzer Video v. Pinckney*,
881 F.2d 772 (9th Cir. 1989) .....................................................................................22

*Valley Forge Mil. Acad. Found. v. Valley Forge Old Guard, Inc.*,
24 F. Supp. 3d 451 (E.D. Pa. 2014) ...........................................................................17

*Vulcan Golf, LLC v. Google Inc.*,
552 F. Supp. 2d 752 (N.D. Ill. 2008) .........................................................................13

*Wyndham Hotels & Resorts, LLC v. Merco Grp. at GB Hotel, LC*,
No. 06-22920-CIV, 2007 WL 9702144 (S.D. Fla. July 16, 2007) ...........................17

*Yuga Labs, Inc. v. Ripps*,
144 F.4th 1137 (9th Cir. 2025) ....................................................................................9

**Statutes**

15 U.S.C. § 1125(c)(2)(A) ...........................................................................................15

17 U.S.C. § 1202(a).................................................................................................5, 7

17 U.S.C. § 1202(c).......................................................................................................5

Cal. Bus. & Prof. Code § 14247 .................................................................................15

Cal. Bus. & Prof. Code § 14247(a) .............................................................................15

Cal. Bus. & Prof. Code § 17200 ...................................................................................18

Cal. Bus. & Prof. Code § 17204 ...................................................................................18

Digital Millennium Copyright Act of 1998 ("DMCA") ....................................... *passim*

Lanham Act, 15 U.S.C. §§ 1501 *et seq.* ........................................................... *passim*

UCL, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ............................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 8 ...................................................................................7

Federal Rule of Civil Procedure 9(b) ..............................................................5, 23, 24

Federal Rule of Civil Procedure 12(b)(6) ......................................................................4

1    Plaintiff Getty Images (US), Inc. ("Getty Images") respectfully submits this opposition to the partial

2    motion to dismiss (the "Motion," Dkt. 24) submitted by Defendants Stability AI, Inc., Stability AI, Ltd.,

3    and Stability AI US Services Corporation (collectively "Stability AI" or "Defendants").

4    **I.    INTRODUCTION**

5        To train artificial intelligence models that are capable of generating images in response to user

6    prompts, Stability AI copied more than 12 million copyrighted images from Getty Images' websites,

7    along with the rich text and metadata associated with those images, all without permission and in

8    flagrant violation of the websites' terms of use and Getty Images' intellectual property rights. It also

9    copied massive troves of additional photographs owned or exclusively licensed by Getty Images from

10   websites operated by Getty Images' licensees, again without permission. On the back of this brazen

11   infringement of Getty Images' intellectual property, Stability AI has profited handsomely from the

12   commercial exploitation of its models and the output they generate, in direct competition with Getty

13   Images' own licensing business and its own fully licensed generative AI model.

14       As detailed in the Complaint, Stability AI's conduct violates intellectual property law in a

15   variety of ways. *First*, Stability AI has committed copyright infringement by unlawfully (and

16   repeatedly) copying Getty Images' copyrighted content and creating derivative works therefrom

17   without authorization. *Second*, Stability AI has violated the Digital Millennium Copyright Act

18   ("DMCA") by providing false copyright management information in the form of Getty Images'

19   watermarks on Stability AI outputs that are not copies of Getty Images' copyrighted works. *Third*,

20   Stability AI has violated federal and California trademark and unfair competition law by using Getty

21   Images' trademarks on a variety of its own images in misleading and confusing ways. *Fourth*, Stability

22   AI has diluted Getty Images' trademarks in violation of the Lanham Act and California law by

23   displaying them prominently on low quality, bizarre, and other offensive images created and distributed

24   by Stability AI.

25       Defendants' Motion does not challenge the sufficiency of Getty Images' Complaint as it relates

26   to the first issue: copyright infringement. But—based on a misapprehension of Getty Images'

27   Complaint and misguided reading of its allegations and applicable law—the Motion denigrates Getty

28   Images' distinct claims relating to providing false copyright management information, misuse of Getty

Images' world-famous trademarks, and unfair competition as mere "underbrush." Mot. at 1. Defendants are wrong. The Complaint adequately pleads the Defendants intentionally developed a tool which is known to create images (some high quality and others poor quality) and placed Getty Images' watermark on them. Defendants seek dismissal on factual allegations of their own—outside the well-pleaded Complaint—that Stability AI's repeated misuses of Getty Images' famous trademarks and watermark is "an unintentional byproduct of its complex training process," occurs only in "one-off instances," and that Stability AI's commercial exploitation of its models is somehow not a commercial use of Getty Images' Marks, Mot. at 1, but the Complaint alleges the opposite. At bottom, each of Defendants' arguments requires this Court to impermissibly reject Getty Images' well-pleaded factual allegations and not only draw inferences in favor of Defendants, but accept as true their own factual contentions.

Defendants' disingenuous description of this case as "Getty's second attempt to pursue non-copyright claims in federal court" over "years of litigating these issues," (Mot. at 2) is a blatant mischaracterization. Although Getty Images first filed suit in federal court in Delaware in 2023, Defendants *never* answered that complaint or moved to dismiss the DMCA, Lanham Act, or the then-existing Delaware state law claims on merits grounds. *None* of the merits arguments now made in the Motion were made in Delaware. Rather, in that action, Defendants challenged only jurisdiction over UK-headquartered Stability AI, Ltd., sought transfer to California as a more convenient forum, and raised a two paragraph "group pleading" argument it does not attempt to resurrect here.[1] Defendants' jurisdictional arguments—which were never ruled upon by the Delaware court—were the actual cause of the delay in this case. It is now time that Defendants answer—in the Court they preferred—for their misconduct. The Motion should be denied in its entirety.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Has Getty Images plausibly pleaded provision of false copyright management information in violation of the DMCA (Claim II)?

2.    Has Getty Images plausibly pleaded trademark infringement, unfair competition, and trademark dilution in violation of the Lanham Act (Claims III, IV, and V)?

---

[1] Dkt 17, *Getty Images (US), Inc. v. Stability AI, Ltd.*, No. 23-cv-00135 (D. Del. May 2, 2023); Dkt, 45, *Getty Images*, No. 23-cv-00135 (D. Del. July 29, 2024).

3.     Has Getty Images plausibly pleaded unfair competition and trademark dilution in violation of California law (Claim VI and VII)?

## III.     FACTUAL BACKGROUND

As stated in the Complaint, Getty Images has long been one of the world's leading creators and distributors of digital content and, at great expense, has curated a collection of hundreds of millions of premium quality visual assets. Compl. ¶ 3. Getty Images makes these visual assets available to customers throughout the world via websites, such as www.gettyimages.com and www.istock.com. *Id*. ¶ 4. Getty Images' customers, who together perform approximately *2.8 billion searches* annually on Getty Images' websites, include creative, corporate and media customers who embed Getty Images' content in the world's most influential newspapers, magazines, advertising campaigns, films, television programs, books, and websites. *Id*. ¶¶ 5, 53. This widespread distribution of Getty Images' content to a broad audience of viewers has established Getty Images' trademarks themselves as famous. *Id*. ¶ 1.

This case is about Stability AI's unlawful exploitation of Getty Images' intellectual property. Among other uses, Getty Images' rich trove of content is highly desirable for use in connection with artificial intelligence and machine learning, making Getty Images both a desirable commercial partner for AI companies that respect intellectual property rights and a target for unlawful actors like Stability AI. *Id*. ¶ 6. Through the training process described in the Complaint, using the intellectual property owned by Getty Images and other copyright holders, Stability AI created image-generating models that use artificial intelligence to deliver computer-synthesized images in response to text prompts. *Id*. ¶¶ 9, 12, 60–73, 76–80. As a result of Stability AI's training on Getty Images' content, its models can produce images that are highly similar to and derivative of Getty Images' proprietary content. *Id*. ¶ 83.

Stability AI has commercialized its models by allowing users to obtain different types of licenses. *Id*. ¶¶ 10–11, 90. It also offers additional services called DreamStudio and Stable Assistant, available for monthly subscriptions with higher priced subscriptions allowing the user to spend more monthly "credits" on content generation. *Id*. ¶ 91. Stability AI also has benefitted from its unlawful conduct by obtaining hundreds of millions in funding from investors. *Id*. ¶ 75. Since its creation, millions of Stability AI users have created billions of images. *Id*. ¶ 92. The paid and free content created by Stability AI directly competes with Getty Images' visual assets, and customers have publicly stated

that they no longer purchase stock photography and instead use tools like Stable Diffusion. *Id.* ¶ 94.

As a result of Stability AI's unauthorized copying, output generated by its models has often contained an ersatz Getty Images watermark, creating confusion as to the source of the images and falsely implying an association with Getty Images. *Id.* ¶¶ 14, 84–87, 98–102. Sometimes, Stability AI places Getty Images' watermark on appealing, high-quality images (*e.g., id.* ¶¶ 87, 99), but other times it places Getty Images' watermark on bizarre and distorted imagery (*e.g., id.* ¶¶ 100, 101). Stability AI's knowing creation of a tool that causes the Getty Images watermark to appear on images not created or owned by Getty Images also provides false copyright management information in violation of the DMCA. *Id.* ¶ 118. Contrary to Stability AI's repeated contention that these are "one-off" instances (Mot. at 1–3)—a factual contention of its own not properly considered on a motion to dismiss—the Complaint includes samples of this phenomenon that a journalist described as one "very easily" accomplished with Stable Diffusion (Compl. ¶ 14). Stability AI knows that its models have this capability, and that its training data included watermarks—indeed, that is why it has taken steps to remove some. *Id.* ¶¶ 98, 100, 102, 103.

To redress Stability AI's flagrant misuse of Getty Images' intellectual property, Getty Images seeks relief in this Court for violations of the Copyright Act, DMCA, Lanham Act, and California law. The exact scope of Stability AI's knowledge of and actions to circumvent Getty Images' copyrights, CMI, and trademarks, and the full extent of its violations of Getty Images' intellectual rights, are properly subjects of discovery.

## IV.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), "the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff." *SEC v. Prakash*, 718 F. Supp. 3d 1098, 1104 (N.D. Cal. 2024). A complaint "does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

1  than a sheer possibility that a defendant has acted unlawfully." *Id.*

2  **V.   ARGUMENT**

3  **A.   Getty Images has adequately pled a violation of the DMCA**

4  Under the DMCA, "[n]o person shall knowingly and with the intent to induce, enable, facilitate,

5  or conceal infringement—provide copyright management information that is false." 17 U.S.C.

6  § 1202(a). The statute broadly defines copyright management information ("CMI") to include "[t]he

7  name of, and other identifying information about," the author or copyright owner of a work, "conveyed

8  in connection with copies" of a work. 17 U.S.C. § 1202(c). "District courts have found information to

9  constitute CMI in a wide variety of formats," *Izmo, Inc. v. Roadster, Inc.*, No. 18-CV-06092-NC, 2019

10  WL 13210561, at *2 (N.D. Cal. Mar. 26, 2019), including watermarks applied to photographs to

11  identify their owners, *McGucken v. Chive Media Grp., LLC*, No. CV 18-01612-RSWL-KS, 2018 WL

12  3410095, at *4 (C.D. Cal. July 11, 2018). Stability AI does not dispute that Getty Images' watermarks

13  qualify as CMI, or that Getty Images sufficiently alleged that Stability AI falsely provided such CMI

14  on photos generated by the Stable Diffusion models. Rather, it argues that Getty Images failed to

15  sufficiently allege facts establishing Defendants' knowledge and intent. Not so.

16  The pleading standard for demonstrating scienter is purposefully not onerous. Indeed, "[m]ental

17  conditions generally do not need to be alleged with specificity." *Izmo*, 2019 WL 13210561, at *4

18  (denying motion to dismiss DMCA claim); *see also* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge,

19  and other conditions of a person's mind may be alleged generally."). Numerous courts have applied

20  this standard in denying motions to dismiss CMI claims and have considered the question of scienter

21  more apt for discussion at summary judgment. *See, e.g., Izmo*, 2019 WL 13210561, at *4 ("Whether

22  Roadster knew or should have known that its activities would induce or enable an infringement of

23  Izmo's rights is more suited to summary judgment.").[2]

24  Rather, at the pleading stage, a plaintiff simply must allege facts to support a plausible inference

25  of the requisite knowledge and intent, which is often inferred from provision, removal, or alteration of

26

27  _____
[2] *See also Daar v. Oakley, Inc.*, No. CV 18-6007 PA (KSX), 2018 WL 9596173, at *3 (C.D. Cal. Sept.
27, 2018) (denying motion to dismiss CMI claim, even though plaintiff merely alleged that defendant

28  removed CMI intentionally and knowingly, because "[a] plaintiff's burden at the pleading stage is not
so exacting.").

CMI. *See, e.g., Schneider v. Youtube, LLC*, No. 20-CV-04423-JD, 2022 WL 3031212, at *2 (N.D. Cal. Aug. 1, 2022) ("The plausible inference from these and similar allegations is that YouTube removed the CMI from plaintiffs' works with knowledge that doing so carried a 'substantial risk' of inducing infringement."); *Batra v. PopSugar, Inc.*, No. 18-CV-03752-HSG, 2019 WL 482492, at *2 (N.D. Cal. Feb. 7, 2019) (drawing a "plausible inference" of knowing intent from mere allegations that defendant omitted CMI); *Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029, 1054 (N.D. Cal. 2023) (similar); *Andy Ryan Photographer, LLC v. Dagny's Real Est. LLC*, No. 24-CV-7787 (KMK), 2025 WL 2733858, at *4 (S.D.N.Y. Sept. 25, 2025) ("[D]rawing inferences in Plaintiff's favor and taking all well-pled allegations as true, the Court finds there is a plausible inference that Defendant acted with the intent to cause or conceal its own infringement. To hold otherwise would be contrary to the Second Circuit requirement that district courts 'be lenient in allowing scienter issues to survive motions to dismiss.'").[3]

Getty Images' allegations easily support a plausible inference that Stability AI knowingly applied Getty Images' watermarks to output generated through Stable Diffusion, with intent to induce or facilitate infringement of Getty Images' copyrights. Stability AI's application of Getty Images' watermarks to Stable Diffusion output was no isolated occurrence; rather it transpired "[i]n many cases" and was, according to one third-party investigation, "very easily" accomplished. Compl. ¶¶ 14, 84, 99. In fact, the practice was so commonplace that examples were widely and publicly reported by users, making it highly plausible Stability AI knew this was occurring. *Id*. ¶ 85–87 (collecting examples). Stability AI cannot dismiss the systematic result of its models as a mere accidental "one-off."

That "Stability AI is well aware that Stable Diffusion generates images that include distorted versions of Getty Images' watermark . . . but [] has not taken adequate steps to prevent that from happening" (*id*. ¶ 102) is particularly apparent given that two of the aforementioned examples occurred

---

[3] Indeed, precisely because of the challenge inherent in demonstrating scienter, courts hesitate to rule out intent even at the summary judgment stage. *See, e.g., Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1189 (9th Cir. 2016) ("It would be unfair to burden Friedman at the summary judgment stage with proving that knowledge with greater specificity than he did."); *Powers v. Caroline's Treasures Inc.*, 382 F. Supp. 3d 898, 906 (D. Ariz. 2019) (denying summary judgment notwithstanding the "Court['s] doubt that Defendants had the intent required by § 1202(a)"); *ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254, 273 (D. Mass. 2016) (explaining that "questions of intent" are "best left for a jury"). Furthermore, even at summary judgement, a court may infer scienter based on circumstantial evidence of access and publication of altered CMI. *Aardwolf Indus., LLC v. Abaco Machs. USA, Inc.*, No. CV 16-1968-GW(JEMX), 2017 WL 10350547, at *11 (C.D. Cal. Nov. 13, 2017) ("Plaintiff need only show that Defendants had access to Plaintiff's Logo and accompanying CMI, and that altered or modified versions of the Logo appeared on Defendants' websites or materials.").

1  in March 2023 and December 2024, well *after* Getty Images first sued Stability AI in the District of

2  Delaware (*id.* ¶ 24) in February 2023, alleging Stability AI's very same conduct violated 17 U.S.C.

3  § 1202(a).[4] Stability AI could not (indeed, did not) feign ignorance then, and it certainly cannot now.

4        Moreover, Getty Images' allegations support a plausible inference that Stability AI intended to

5  induce, enable, or facilitate infringement—both at the training and output stages. As alleged at great

6  length, Stability AI infringed Getty Images' copyrights on a massive scale, downloading many millions

7  of Getty Images' copyrighted images and associated text, in order to train Stable Diffusion to generate

8  new images derived from the images and text it copied. Compl. ¶¶ 59–81. And as a result of the training,

9  Stable Diffusion produces images bearing the Getty Images watermark; sometimes these images are

10  highly similar to and derivative of the Getty Images proprietary content that was copied and other times

11  they are not. Compl. ¶¶ 14, 84–87, 98–102. Rather than remove Getty Images' content (inclusive of

12  watermarks) from its training data, Stability AI developed (and continued to refine) a model that

13  knowingly, inevitably, and routinely provides false CMI, (1) enabling and facilitating its own

14  infringement at the training stage, *see Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 172 (2d Cir. 2020)

15  (explaining that Section 1202 "encompasses an infringement committed by the defendant himself");

16  *Kadrey v. Meta Platforms, Inc.*, No. 23-CV-03417-VC, 2025 WL 744032, at *2 (N.D. Cal. Mar. 7,

17  2025) (drawing a connection between CMI removal and infringement occurring during training an AI

18  model), and (2) delivering to users of Stable Diffusion infringing outputs that are similar to, or

19  derivative of, Getty Images' copyrighted works, Compl. ¶¶ 84, 109.[5] The cases Defendants rely upon

20  (Mot. at 5–6) do not move the needle, as they largely comprise instances where plaintiff's allegations

21  were entirely conclusory and formulaic without *any* facts plausibly supporting their inference, or worse,

22  where plaintiff alleged facts negating scienter.[6]

---

[4] This awareness and attempts to remove some (but not all) of the watermarks as pled in the Complaint distinguishes this situation from *Zuma Press* (cited in Mot. at 7). Additionally, *Zuma Press* was decided on summary judgment after a full factual record.

[5] That a user commented "I didn't ask for that" upon generating a Getty Images watermark is hardly the absolution Stability AI thinks it is (Mot. at 3, 7). This comment simply establishes that the user did not need to include the prompt "Getty" or "Getty watermark" when generating the image. Stability AI's characterization of this as a "technical anomaly" (*id.* at 3), is inconsistent with the well-pleaded allegations that this has been a recurring feature of Defendants' products (Compl. ¶¶ 14, 99). Moreover, the frequency of these occurrences is not relevant to whether Getty Images' pleading is adequate.

[6] *See Morgan v. Associated Press*, No. 15-03341-CBM-JEM, 2016 WL 6953433, at *3 (C.D. Cal. Mar. 16, 2016) (granting motion to dismiss "because a formulaic recitation of the elements of a cause of action, including allegations regarding a defendant's state of mind, are not sufficient to satisfy Rule 8");

In sum, Getty Images' factual allegations of Defendants' knowledge and intent to facilitate their infringement by providing false copyright management information are more than sufficient at the pleading stage. Defendants' motion to dismiss Claim II of the Complaint should be denied.

## B.    Getty Images has adequately pled trademark infringement and false designation in violation of the Lanham Act

To make out a claim of trademark infringement under the Lanham Act, a plaintiff must sufficiently allege: "(1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Trader Joes's Co. v. Trader Joe's United*, 150 F.4th 1040, 1048 (9th Cir. 2025). The elements of a false designation claim are substantially "the same, except that the plaintiff's trademark need not be registered." *Roblox Corp. v. WowWee Grp. Ltd.*, 660 F. Supp. 3d 880, 893 (N.D. Cal. 2023).

Stability AI argues that Getty Images has not made out either a trademark infringement claim or a false designation claim because Getty Images has not adequately pled either: (1) that the use of Getty Images' marks was likely to cause confusion; or (2) that Stability AI has used the marks in commerce. Mot. at 8–11. Stability AI is wrong. *See, e.g.*, Compl. ¶¶ 10-11, 14, 84-88, 90-94, 98-99, 128-29, 137. In any event, these arguments require factual determinations, which are not appropriate on a motion to dismiss.

### 1.    Getty Images has sufficiently pled a likelihood of confusion

In determining whether a defendant's use of a plaintiff's mark is likely to cause confusion, courts commonly consider the eight non-exclusive *Sleekcraft* factors: "[1] strength of the mark; [2] proximity of the goods; [3] similarity of the marks; [4] evidence of actual confusion; [5] marketing channels used; [6] type of goods and the degree of care likely to be exercised by the purchaser; [7]

*Himelsein v. LS1 LLC*, No. CV 18-3940-GW(JCX), 2019 WL 13037049, at *5 (C.D. Cal. Feb. 21, 2019) ("Plaintiff has simply offered the conclusion that Backgrid's CMI communications 'were knowingly false.'"); *Peter T. Erdelyi & Assocs. v. Optimum Seismic, Inc.*, No. 220CV11066JVSGJSX, 2021 WL 4775635, at *5–6 (C.D. Cal. July 1, 2021) (intent negated by plaintiff's own exhibits, as well as fact that defendant had a consulting agreement with a third-party who provided the infringing work at issue); *Krechmer v. Tantaros*, 747 F. App'x 6, 10 (2d Cir. 2018) (allegations of scienter negated because CMI was applied pursuant to the parties' written agreement); *Michael Grecco Prods., Inc. v. Function(X) Inc.*, No. 18 CIV. 386 (NRB), 2019 WL 1368731, at *2 (S.D.N.Y. Mar. 11, 2019) (allegations insufficient because it was plausible that defendant obtained the photos in question from the very sources he attributed them to).

1    defendant's intent in selecting the mark; and [8] likelihood of expansion of the product lines." *Trader*

2    *Joe's*, 150 F.4th at 1048–48 (quoting, *inter alia*, *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49

3    (9th Cir. 1979)). Critically, the Ninth Circuit has held that "[b]ecause a 'careful assessment of the

4    pertinent factors that go into determining likelihood of confusion usually requires a full record,'

5    dismissal of trademark disputes at the pleading stage is generally disfavored." *Id*. (quoting *Yuga Labs,*

6    *Inc. v. Ripps*, 144 F.4th 1137, 1167 (9th Cir. 2025)).

7        Stability AI's myopic focus on instances of actual confusion ignores seven of the eight factors

8    for determining whether confusion is likely, and its arguments are textbook examples of why the Ninth

9    Circuit disfavors resolving likelihood of confusion on the pleadings. Stability AI ignores *Sleekcraft* and

10   *Trader Joe's* and instead relies upon two *summary judgment* decisions to complain that Getty Images

11   failed to detail specific instances in which Stability AI's use of Getty Images' Marks caused actual

12   confusion among an "appreciable number" of people. Mot. at 10.[7] This argument bears, at most, on a

13   single factor ("evidence of actual confusion"), which courts have explained bears little or "no weight"

14   in early phases of litigation. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.,* 638 F.3d 1137,

15   1151 (9th Cir. 2011); *see also Trader Joe's*, 150 F.4th at 1053–54 (noting that Ninth Circuit has

16   "repeatedly" held that evidence of actual confusion is "not necessary to find[ing] a likelihood of

17   confusion"). Stability AI is completely silent about the other seven *Sleekcraft* factors. Under a proper

18   analysis, Getty Images has more-than-sufficiently pled likelihood of confusion at this stage.

19       Consider first the "strength of the mark." *See Trader Joes*, 150 F.4th at 1049. Getty Images'

20   marks are both conceptually and commercially strong. *See Network Automation*, 638 F.3d at 1149.

21   "GETTY" is not a "descriptive [or] generic mark," but instead a term with no inherent or commonly

22   understood connection to images, outside of Getty Images' use of the mark, thereby entitling it to a

23   high degree of trademark protection. *See JL Beverage Co. v. Jim Beam Brands Co.*, 828 F.3d 1098,

24   1107 (9th Cir. 2016)*.* Getty Images' allegations also make it plausible to infer that the mark is

---

25   [7] *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1150 (9th Cir. 2002) (cited in Mot. at 10) illustrates

26   the impropriety of dismissal here. There, the Ninth Circuit reversed a grant of summary judgment and
     noted that evidence of actual confusion was but one of many *Sleekcraft* factors to consider, that "the

27   ultimate question of likelihood of confusion is predominantly factual in nature," and "it is the totality
     of facts in a given case that is dispositive." *See id*. at 1140-41 (cleaned up). *Official Airline Guides, Inc.*

28   *v. Goss*, 6 F.3d 1385, 1395 (9th Cir. 1993) (cited in Mot. at 10) involved a ruling after a "factual finding"
     by the district court, which is likewise inappropriate at this stage.

1    commercially strong, given its use for decades, its widespread market recognition, and the significant

2    expenditures Getty Images has made on catalog and brand development. *See Network Automation,* 638

3    F.3d at 1149; Compl. ¶¶ 54, 78, 124.

4    Second, consider proximity of the goods. *See Trader Joes*, 150 F.4th at 1049. "The proximity

5    of goods is measured by whether the products are: (1) complementary; (2) sold to the same class of

6    purchasers; and (3) similar in use and function." *Id.* at 1049-50. Here, Getty Images pled that Stability

7    AI is placing the Getty Images watermark on the very type of good (a visual asset) that Getty Images

8    licenses. Compl. ¶ 94. And Stability AI and Getty Images also compete directly in the provision of

9    images created through generative AI. *Id.* at ¶¶ 7, 93. Consumer confusion therefore is highly likely

10   when the goods bear the same mark. Moreover, Getty Images pled explicitly that Stability AI's products

11   are in direct competition with Getty Images, offered to the same purchasers, and similar in use and

12   function. Compl. ¶¶ 94-95 (describing, for example, a social media discussion thread entitled

13   "Obsolescence of stock images due to AI image generation").[8]

14   Third, consider similarity of the marks. *See Trader Joe's*, 150 F.4th at 1051. Getty Images pled

15   that Stability AI is imprinting images with marks that are highly similar in appearance and meaning to

16   Getty Images' own marks and provided specific illustrations. *See* Compl. ¶¶ 14, 84–87, 98–102. Several

17   of these samples are quite clear and, indeed, Getty Images has further pled that users recognize it as "a

18   Getty images watermark." *See, e.g., id.* ¶¶ 86-87. This factor, too, supports Getty Images.

19   Next, consider the types of good and degree of care. *See Trader Joe's*, 150 F.4th at 1053. Where

20   a product is particularly expensive or its consumers are especially sophisticated, the risk of confusion

21   is lessened. *Network Automation*, 638 F.3d at 1152. Here, on the other hand, Stability AI presents its

22   commercial offerings (1) to the general public (2) at price points as low as $9/month or $12/month.

23   Compl. ¶¶ 11, 91. The pleading is more than sufficient at this point.

24   The Ninth Circuit has "repeatedly held that the remaining three factors—'evidence of actual

25   confusion,' 'defendant's intent in selecting the mark,' and 'likelihood of expansion of the product lines'

26   —are not necessary to find a likelihood of confusion." *Trader Joe's*, 150 F.4th at 1053−54. And they

27   are certainly not necessary for Getty Images to *plead* likelihood of confusion. But, even though not

28   _____

[8] These facts are likewise relevant to the "marketing channels used" factor. *Trader Joes*, 150 F.4th at
1052. As both advertise and are made available through the internet, this likewise favors Getty Images.

required, Getty Images has alleged facts that show Stability AI's models have a long history of repeatedly reproducing Getty Images' watermark (Compl. ¶¶ 84-87), belying any assertion that this was an "accidental" or "one-off" phenomenon. To the contrary, Stability AI has been imprinting Getty Images' watermarks on its images for at least several years and continued to do so after being sued. *Id.*

Considering both Getty Images' extensive factual allegations supporting likelihood of confusion and the Ninth Circuit's disfavor for resolving such claims on the pleadings, it is unsurprising that Stability AI focuses only on distorting Getty Images' allegations to make confusion seem less likely. Stability AI argues, for example, that no reasonable consumer would likely confuse "bizarre" and "grotesque" outputs of Stable Diffusion as "a deliberate act of sponsorship by" Getty Images, given its quality standards. Mot. at 10. But nowhere does the Complaint assert that Stable Diffusion *only* produces "bizarre" or "grotesque" images; to the contrary, it explicitly states that some of Stable Diffusion's outputs are "amusing" or "aesthetically pleasing" and that others are substantially similar to Getty Images' own works. Compl. ¶¶ 15, 60, 83, 84. If a consumer were to view images such as these, bearing the Getty Images watermark, it would be more than reasonable for them to be confused about whether there was a relationship between Stability AI and Getty Images. *Id*. ¶¶ 129, 137.

### 2.    Getty Images has sufficiently pled that Stability AI has made a commercial use of its marks

In determining whether a defendant has engaged in commercial use of a trademark, "a court should inquire whether the defendant's use of the 'mark was in connection with a sale of goods or services.'" *Iglesia Ni Cristo v. Cayabyab*, No. 18-CV-00561-BLF, 2019 WL 3997474, at *9 (N.D. Cal. Aug. 23, 2019) (denying motion to dismiss infringement claim). "'[T]he use in connection with the sale of goods and services requirement' of the Lanham Act does not require any actual sale of goods and services. [T]he appropriate inquiry is whether [the defendant] offers *competing* services to the public." *Id.* Here, Getty Images pled that Stability AI displayed Getty Images' marks on outputs of Stability AI's models, made available to a variety of potential purchasers of subscriptions, and that Stability AI's products are in direct competition with Getty Images. Compl. ¶ 85, 94–95. This is plainly a commercial use of the Getty Images trademarks.

Attempting to avoid this conclusion, Stability AI argues that "'trademark infringement law

1   prevents only unauthorized uses of a trademark in connection with a commercial transaction in which

2   the trademark is being used to confuse potential consumers.'" Mot. at 8 (quoting *Bosley Med. Inst., Inc.*

3   *v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005). It further argues that its use of the Getty Images Marks

4   "could not possibly influence a consumer," since a "commercial user has no idea what an output will

5   look like … *before* they spend any money." Mot. at 9. This is based on the (mistaken) claim that Stable

6   Diffusion, and its other commercial interfaces, will *only* display Getty Images watermarks to users who

7   have already purchased a subscription. *Id.* These arguments fail for several reasons.

8        *First*, Stability AI mischaracterizes *Bosley*. The differences between this case and *Bosley* (again,

9   a summary judgment decision), are striking. *Bosley* concerned a disgruntled customer who created a

10  website bearing the Bosley marks to criticize its services. 403 F.3d at 675, 679–80. Unlike here, there

11  were *no* competing goods or services offered at all. Because the defendant had no business, let alone a

12  competing one, the court held that "[t]he dangers that the Lanham Act was designed to address are

13  simply not at issue in this case." *Id*. at 679. Importantly, *Bosley* "does not require any actual sale of

14  goods and services." *Hasbro, Inc. v. Sweetpea Ent., Inc.*, No. CV133406DMGJCGX, 2014 WL

15  12586021, at *9, *10 (C.D. Cal. Feb. 25, 2014) (statements about a movie that did not even exist yet

16  qualified as commercial use where defendant sought to "capitaliz[e] on the good will associated with

17  [plaintiff's] mark); *see also Iglesia Ni Cristo*, 2019 WL 3997474, at *9 (competing nonprofit made

18  commercial use even in absence of allegations defendants charged for services).

19       *Second*, this motion to dismiss must be decided based on Getty Images' allegations, not Stability

20  AI's responses made up to support this motion. *Johnson v. Napa Valley Wine Train, Inc.*, No. 15-CV-

21  04515-TEH, 2016 WL 493229, at *6 (N.D. Cal. Feb. 9, 2016). Getty Images does not allege that

22  Stability AI's products *only* display Getty Images' marks to current subscribers—as opposed to, *e.g.*,

23  trial users who are still undecided about whether to purchase a subscription. *E.g.,* Compl. ¶¶ 90, 91

24  (describing a free license as well as paid options which "provide the subscriber with more 'credits' to

25  spend on content generation").

26       *Third*, there is no "existing customer" exception to trademark protection or the concept of

27  commercial use. Even if Getty Images' allegations *were limited* to claim that Stability AI only displays

28  Getty Images' marks to paid subscribers (they are not), there is no reason that a current subscriber could

1    not qualify as a "potential consumer." Current subscribers, too, make decisions about whether to

2    purchase (or renew) subscriptions or additional credits in the future, or to potentially subscribe to a

3    higher tier, and can be influenced by source-identifying marks. *See, e.g.*, *Qualitex Co. v. Jacobson*

4    *Prods. Co.*, 514 U.S. 159, 163–64 (1995) (explaining that "trademark law" exists to "assure[] a

5    potential customer" that the item "is made by the same producer as other similarly marked items *that*

6    *he or she liked* (or disliked) *in the past*") (emphasis added). Relatedly, Stability AI offers *no* support

7    for its assertion that a mark must be displayed *before a sale* in order to be used in commerce. Courts

8    that have considered this question have held otherwise. *See NNG, Kft. v. AVA Enters., Inc.*, No.

9    2:14cv00220ODW(AJW), 2015 WL 5442725, at *6–7 (C.D. Cal. July 8, 2015) (denying motion to

10   dismiss and holding that mark may be used in commerce even if first displayed "long after the point of

11   sale"). This well-settled principle arises out of the recognition that use of a mark can involve the

12   misappropriation of another company's goodwill, even if the mark is not displayed at sale.

13       *Fourth*, courts routinely decline to hold that the use of trademarks is *not* a "use in commerce"

14   without the benefit of an evidentiary record in factually complex cases, particularly those dealing with

15   technology. *See, e.g.*, *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 768 (N.D. Ill. 2008)

16   (collecting cases); *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. C0305340JF, 2005 WL

17   832398, at *6–7 (N.D. Cal. Mar. 30, 2005) (denying motion to dismiss and allowing claim to proceed

18   to permit "Court to consider both the relevant facts and the applicable law in the context of a fuller

19   record"). Defendants' infringement scheme arises in the context of new technology—AI image

20   generation—which presents complicated factual issues and requires discovery. The Court should

21   decline to issue a broad ruling that Stability AI is not using Getty Images Marks "in commerce" without

22   the benefit of factual development. *See Vulcan Golf*, 552 F. Supp. 2d at 769 ("[G]iven the complex

23   nature of the allegations in the FAC, the court simply cannot make a definitive ruling on the 'use' issue

24   without engaging in fact-finding, which is inappropriate at this stage of the litigation."); *Rescuecom*

25   *Corp. v. Comput. Troubleshooters, USA, Inc.*, 464 F. Supp. 2d 1263, 1266–67 (N.D. Ga. 2005) (denying

26   motion to dismiss on "use" issue in similar context).[9]

---

[9] Stability AI separately argues that, to allege a use in commerce, Getty Images must allege that Stability AI used its mark on "goods or services *in order to pass them off* as emanating from or authorized by" Getty Images. Mot. at 9 (emphasis added). To the extent Stability AI suggests that a trademark infringement claim requires a showing of *intent* or *purpose* to confuse, this argument is inconsistent

1     For these reasons, Defendants' motion to dismiss Claims III and IV should be denied.

2     **C.     Getty Images' false designation claims are not barred by *Dastar***

3        Stability AI also argues that Getty Images' § 43(a) claim is barred by *Dastar* because "[t]he

4     very foundation of [the] Section 43(a) claim is its allegation that Stability AI's models copied

5     expressive content." Mot. at 11. This badly mischaracterizes Getty Images' § 43(a) claim. The basis for

6     the claim is that Stability AI's use of Getty Images' watermarks on its own outputs is likely to cause

7     confusion about a relationship between the parties, even in cases where the image generated by Stability

8     AI is *not* substantially similar to an image copyrighted by Getty Images. Compl. ¶¶ 14, 129, 137.

9        *Dastar* stands for the proposition that a plaintiff cannot shoehorn a copyright claim into § 43(a)

10    by arguing that the defendant's actions are apt to cause confusion about the "author of any idea, concept,

11    or communication embodied" in the defendant's goods. *Dastar Corp. v. Twentieth Century Fox Film*

12    *Corp.*, 539 U.S. 23, 37 (2003). A plaintiff cannot argue that, because of the substantial overlap in

13    expressive content between the defendant's goods and the plaintiff's, the public is apt to be confused

14    about whether the defendant is the true author of that expressive content. *Id.* at 36. It cannot, in other

15    words, bring a § 43(a) action for "plagiarism." *Id.* But that is not the basis of the § 43(a) claim here.

16       Every case Stability AI cites (Mot. at 12) in support of its motion to dismiss the § 43(a) claim

17    involves allegations of confusion predicated on expressive similarity.[10] By contrast, Getty Images'

18    43(a) claim is not a prohibited "plagiarism" claim predicated on expressive overlap between Stability

19    AI's outputs and its own works. *Dastar,* 539 U.S. at 36. The instances in which there is substantial

20    similarity between Stability AI's outputs and Getty Images' own works are addressed by Getty Images'

21    copyright infringement claims. Getty Images' false designation of origin claims address a different—

22    but also prevalent—phenomenon: Stability AI's use of Getty Images' marks on images that are not

23    substantially similar to any Getty Images' work. Those uses of Getty Images' watermark are apt to

24

25    with settled law. *Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 934 (9th Cir. 2017) (noting that
      "an intent to confuse consumers is not required for a finding of trademark infringement."). What matters

26    is the *likelihood* of confusion, which, as discussed above, is established by the *Sleekcraft* factors.

27    [10] *See Slep-Tone Ent. Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1248 (9th
      Cir. 2017) (identical audio files); *LIVN Worldwide Ltd. v. Vubiquity Inc.*, No. 2:21-CV-09589-AB-KS,
      2022 WL 18278580, at *2–3 (C.D. Cal. July 22, 2022) (television episodes with similar expressive

28    content); *Evox Prods., LLC v. Verizon Media Inc.*, No. CV202852CBMJEMX, 2020 WL 5894564, at
      *2 (C.D. Cal. Aug. 19, 2020) (identical photographs).

1    confuse the public about the relationship between Stability and Getty Images, and about whether Getty

2    Images "somehow endorsed" Stability AI. They are properly the subject of Getty Images' Section 43(a)

3    claim, which is in no way foreclosed by *Dastar*. *See* Compl. ¶¶ 14, 129, 137; *see also Craigslist Inc. v.*

4    *3Taps Inc.*, 942 F. Supp. 2d 962, 980 (N.D. Cal. 2013) (claim was not barred by *Dastar* where plaintiff

5    alleged defendant's use of mark "confused customers about [Plaintiff's] relationship to Defendants and

6    their products and diminished the value of the mark."). The motion to dismiss Claim IV of the

7    Complaint should be denied.

8    ## D.    Getty Images has adequately pled trademark dilution in violation of the Lanham Act and California state law

9

10    The Complaint includes multiple examples of Stability AI generating and distributing bizarre

11    and/or low-quality output bearing a Getty Images watermark. Compl. ¶¶ 100–101. In response to Getty

12    Images' trademark dilution claim under the Lanham Act and California law, Stability AI argues—

13    incorrectly—only that Getty Images fails to allege the Getty Images Marks are famous. This misguided

14    argument ignores Getty Images' allegations and seeks to establish an unsupported heightened

15    requirement at the pleading stage.

16    To sufficiently allege fame, a plaintiff must plead facts that make it plausible to infer that its

17    marks are "widely recognized by the general consuming public" of the United States (in the case of the

18    Lanham Act) or California (in the case of Cal. Bus. & Prof. Code § 14247). *See* 15 U.S.C.

19    § 1125(c)(2)(A); Cal. Bus. & Prof. Code § 14247(a). Here, Getty Images pled that "its name and

20    trademarks are *renowned in the U.S. and around the world*," Compl. ¶ 53. Getty Images also pled that:

21    (i) it is "one of the world's leading creators and distributors of digital content"; (ii) its images, which

22    bear its marks, appear "every day… in the world's most influential newspapers, magazines, advertising

23    campaigns, films, television programs, books, and websites"; (iii) it has hundreds of thousands of yearly

24    customers—including many of the most influential media companies in the world—who perform over

25    2.8 billion searches annually on its websites; (iv) it has used its marks extensively in the United States

26    and in California, where its marks are "widely recognized as representing premium quality visual

27    content"; and (v) it has spent millions of dollars maintaining its database and substantial time, money,

28    and resources collecting, promoting, marketing, and advertising its images. *Id*. ¶¶ 3, 5, 53, 54, 124. If

1  this does not adequately plead that a mark is famous, it is hard to fathom what would meet this standard.

2      Numerous decisions show that these allegations more than suffice to establish fame at the

3  pleading stage. In *Patagonia, Inc. v. McHugh*, for example, the court held that Patagonia adequately

4  alleged fame because it alleged it "ha[d] sold its products throughout the world [and] acquired enormous

5  goodwill in its trademarks, which enjoy strong consumer recognition and are recognized by consumers

6  as showing high quality products." No. LACV19-07666JAK(AFMx), 2020 WL 4258818, at *4 (C.D.

7  Cal. Apr. 21, 2020). In *HomeGoods, Inc. v. Papanicolaou*, the court held that HomeGoods had

8  sufficiently alleged fame by pleading that it had "been using its mark since 1992, ha[d] 700 stores

9  spread across 40 states, and ha[d] invested extensively in national advertising campaigns." No. CV19-

10 06912-CJC(PLAx), 2019 WL 7171541, at *5 (C.D. Cal. Dec. 4, 2019); *see also Adobe Sys. v. Pierce*,

11 No. CV13-6806GAF(Ex), 2014 WL 12570931, at *5–6 (C.D. Cal. May 13, 2014) (fame supported by

12 allegations of extensive advertising and promotion).

13     Indeed, even the cases Stability AI relies on show that Getty Images has more than sufficiently

14 alleged fame. Stability AI cites, for example, *Parts.com, LLC v. Yahoo! Inc.*, 996 F. Supp. 2d 933, 940

15 (S.D. Cal. 2013), in which the court held that Parts had not yet satisfied its pleading burden. Mot. at 14.

16 Stability AI neglects to mention, however, that Parts then amended its claim and, in a subsequent motion

17 to dismiss decision, was held to have sufficiently pled fame by alleging that: (1) it had been featured in

18 a "*prominent trade publication*"; (2) it "generate[d] *$5 million* in annual revenue and ha[d] *tens of*

19 *thousands* of customers"; and (3) "*millions* of people ha[d] viewed [its] mark in connection with its

20 various advertising efforts." *Parts.com, LLC v. Yahoo! Inc.*, No. 13–CV–1078JLS(JMA), 2014 WL

21 2573321, at *4 (S.D. Cal. June 9, 2014) (emphasis added). If these allegations suffice to establish fame,

22 then *a fortiori* so do Getty Images' allegations that: (1) its watermarked images are featured on a *daily*

23 *basis* in the world's *most influential publications*; (2) it has *hundreds of thousands* of media,

24 advertising, corporate, and other customers on an annual basis; and (3) its websites, which prominently

25 display its marks, are searched *billions* of times per year. Compl. ¶¶ 4, 5, 53, 54, 124.

26     *Parts.com* is not the only case Defendants misrepresent in support of their Motion. Stability AI

27 also purports to quote a Ninth Circuit decision, *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894

28 (9th Cir. 2002), as stating that a brand must join the ranks of "Budweiser beer, Camel cigarettes, and

Barbie dolls" to be eligible to bring a dilution claim. Mot. at 16. But the quoted language does not appear in the opinion. *See generally id*. Nor does Stability AI correctly describe the applicable standard at the pleading stage, as courts have routinely denied motions to dismiss claiming a variety of marks—including DOPE and LAW TIGERS—were not sufficiently famous.[11]  Stability AI also cites *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1066 (N.D. Cal. 2015) in arguing (Mot. at 15) that having one's marks regularly featured in famous, widely-circulated publications is insufficient to establish fame. But *Arcsoft* merely held that the plaintiff had not sufficiently alleged its marks were famous at the relevant time. *Id*.[12]

Other decisions that Stability AI relies on are also easily distinguished. For example, Stability AI cites *Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997, 1034 (N.D. Cal. 2015) for the proposition that 25 million monthly active users of a site is insufficient to establish fame of a mark. Mot. at 15. First, that ruling came *after a bench trial* (*id.*)*,* and, notably, defendants' motion to dismiss in that case was *denied* and the court accepted at the pleading stage that "Pinterest had already achieved nationwide recognition and fame" for the use of its "pin" mark. *Pinterest Inc. v. Pintrips Inc.*, 15 F. Supp. 3d 992, 999 (N.D. Cal. 2014).[13] Second, Stability AI does not grapple with Getty Images' allegation that its websites are searched 2.8 billion times annually—or equivalently, 233 million times per month—or that its content is distributed in the world's largest publications and media to a wide audience. Stability AI also cites *Luv N' Care* and *Naranjo* for the proposition that fame in niche markets, such as the market for regional Mexican music, is insufficient to ground a dilution claim, but that would not be sufficient to defeat the claims here. Mot. at 16 (citing *Luv N'Care, Ltd. v. Regent Baby Prods. Corp.*,

---

[11] *See, e.g.*, *Third Est. LLC v. Cornerman Prods. LLC*, No. 2:13-CV-3074-SVW-VBK, 2013 WL 12144110, at *3 (C.D. Cal. Aug. 5, 2013) ("DOPE"); *Wyndham Hotels & Resorts, LLC v. Merco Grp. at GB Hotel, LC*, No. 06-22920-CIV, 2007 WL 9702144, at *2 (S.D. Fla. July 16, 2007) (the "Grand Bay marks"); *Am. Ass'n of Motorcycle Inj. Laws., Inc. v. HP3 L., LLC*, No. 20 C 4866, 2021 WL 3054799, at *6 (N.D. Ill. July 20, 2021) ("LAW TIGERS"); *Valley Forge Mil. Acad. Found. v. Valley Forge Old Guard, Inc.*, 24 F. Supp. 3d 451, 458–59 (E.D. Pa. 2014) ("Founder's"); *cf. Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 635-36 (9th Cir. 2008) (genuine dispute of fact over whether "HOT WHEELS" was sufficiently famous at summary judgment).

[12] *Dahon N. Am. v. Hon*, No. 2:11cv05835ODW(JCGx), 2012 WL 1413681, at *9 (C.D. Cal. Apr. 24, 2012) (cited in Mot. at 13–14, 16) dismissed a TDRA dilution claim, but the court explained that the "BIOLOGIC" and "ECOLOGIC" marks were "obscure" and "doubt[ed]" that the "general public" was familiar with "DAHON." The court there did not grapple with the type of factual allegations present here regarding worldwide distribution in prominent media.

[13] *Fruit of the Loom, Inc. v. Girouard*, 994 F.2d 1359, 1362-63 (9th Cir. 1993) (cited in Mot. at 16) was likewise decided on a bench trial, and *Bd. of Regents ex rel. Univ. of Tx. at Austin v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008) (cited in Mot. at 16) was decided on summary judgment.

1   841 F. Supp. 2d 753, 757-58 (S.D.N.Y. 2012) and *Naranjo v. Sandoval*, No. CV 16-8476 PSG (AGRx),

2   2018 WL 11350617, at *6 (C.D. Cal. Feb. 28, 2018)). Getty Images has alleged fame in a much broader

3   market, which at a minimum includes the readers of the world's most influential publications and media

4   providers which are distributed to readers and viewers of all sorts. Compl. ¶¶ 4, 5.

5          At bottom, Stability AI improperly seeks to impose a proof requirement and resolve facts against

6   Getty Images at the motion to dismiss stage. Whether Stability AI's "arguments may ultimately win the

7   day on a complete record" is irrelevant at this stage because "they cannot prevail as a matter of law on

8   the pleadings." *HP3 L.*, 2021 WL 3054799, at *6; *see also Third Est. LLC*, 2013 WL 12144110, at *3

9   (noting this argument is "better suited for summary judgment"). The motion to dismiss Claims V and

10  VII of the Complaint should be denied.

11  **E.   Getty Images has adequately pled violations of California's Unfair Competition**
12  **Law**

13         California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent

14  business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code

15  § 17200. Because the statute is written in the disjunctive, it is violated where a defendant's act *or*

16  practice violates any of the foregoing prongs. *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718,

17  731 (9th Cir. 2007). Here, Getty Images alleges Stability AI has engaged in "unlawful" and "fraudulent"

18  acts under the UCL. Compl. ¶ 154.

19         **1.   Getty Images has pled economic injury sufficient to confer standing**

20         To meet the UCL's standing requirement, a private plaintiff must show economic injury caused

21  by unfair competition. Cal. Bus. & Prof. Code § 17204; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th

22  310, 321–322 (2011). "A showing of economic injury requires only that the plaintiff allege or prove 'a

23  personal, individualized loss of money or property in any nontrivial amount . . . a specific measure of

24  the amount of this loss [would be unnecessary].'" *Cal. Med. Ass'n v. Aetna Health of Cal. Inc.*, 14 Cal.

25  5th 1075, 1088 (2023) (cleaned up). Getty Images makes numerous allegations that Stability AI's

26  unlawful acts caused Getty Images "lost money or property," each of which is sufficient to confer

27  standing. Cal. Bus. & Prof. Code § 17204.

28         Getty Images alleges that Stability AI caused harm through its pattern of unauthorized and

unlawful use of Getty Images' trademarks in connection with synthetic images generated by Stable Diffusion and DreamStudio, as demonstrated by numerous examples where a version of Getty Images' watermark appeared on Stability AI's outputs. *See* Compl. ¶¶ 13–14; 84–87; 97–103. Getty Images alleges Stability AI's use of Getty Images Marks "on lower quality, and in some cases bizarre, grotesque, offensive, 'deepfake,' or violent images." *Id*. ¶ 147. As a result, Getty Images alleges the public has been mistaken into believing Getty Images is affiliated with Stability AI's synthetic and lower-quality images. *Id*. ¶ 129. Getty Images' "reputation for high-quality visual content" is "of great and significant value" as "[c]ontributors choose to work with Getty Images to benefit from its reputation and goodwill as a preeminent content licensor." *Id*. ¶¶ 45; 124–129.

Getty Images alleges it has suffered a variety of economic injuries as a direct result of Stability AI's unlawful conduct. *First*, Getty Images alleges that it was and will be "deprived of, among other things, the profits and benefits of business relationships, agreements and transactions with customers" "[by] reason of [Stability's] wrongful acts." Compl. ¶ 156. Moreover, Stability AI unfairly benefits because its infringing uses of Getty Images Marks are "in competitive proximity" to Getty Images Marks, as both are used in the marketplace for visual content. Compl. ¶ 128. California courts recognize that an alleged "injury to market share suffered as a result of a competitor's unfair business practice" is a cognizable injury under the UCL separate and apart from federal and state intellectual property claims. *AngioScore, Inc. v. TriReme Med., LLC*, 70 F. Supp. 3d 951, 962 (N.D. Cal. 2014). *Second*, Getty Images alleges Stability AI's conduct caused economic injury through harm to the "value of its intellectual property rights." Compl. ¶ 155. *See Kwikset Corp.*, 51 Cal. 4th at 323 (having "a present or future property interest diminished" is sufficient to show economic injury from unfair competition). *Third*, Getty Images alleges economic injury through Stability AI's harm to "its reputation and good will." Compl. ¶ 155. Getty Images has standing under the UCL where it has alleged lost goodwill due to a competitor "unfairly passing off its sub-standard…product as the same or substantially the same." *Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 165 F. Supp. 3d 937, 948 (S.D. Cal. 2016).

Stability AI's arguments that Getty Images has not demonstrated economic injury are unavailing. Stability AI suggests Getty Images must allege a showing of specific lost customers and that the appearance of a distorted watermark in "private, single-user image generation" cannot be the

basis of a diminution in Getty's property interests. Mot at 17. But a showing of specific lost customers is not required at the pleadings stage, as "[t]here are innumerable ways that a consumer can show economic injury from unfair competition," and at the pleading stage, "allegations of economic injury suffice." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 & n.4 (9th Cir. 2013) (cleaned up). Getty Images has also alleged a widespread pattern of its distorted watermark appearing in different users' image generation, including in public social media posts. *See* Compl. ¶¶ 13–14; 84–87; 97–103. These allegations of lost business, market share, intellectual property value, and goodwill in connection with Stability AI's misuse of Getty Images Marks are more than sufficient to confer standing. *See Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 716 (2007) (finding allegations of "diminution in value of [] assets and decline in [] market capitalization and other vested interests" sufficient to satisfy the UCL injury requirement).

### 2.    Getty Images has sufficiently pled legal remedies are inadequate

"A UCL action is equitable in nature," and in a private action "[p]revailing plaintiffs are generally limited to injunctive relief and restitution." *See Kor. Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). In order to obtain equitable relief, Plaintiffs must lack an "adequate remedy at law." *Mort v. United States.*, 86 F.3d 890, 892 (9th Cir. 1996).

Here, Getty Images alleges it "has suffered substantial and irreparable harm, including to its reputation and good will and to the value of its intellectual property rights, in an amount not readily capable of determination" and that, "unless permanently enjoined from further unlawful business practices," Stability AI will continue to cause irreparable harm by infringing upon Getty Images' copyrights and trademarks in the United States. Compl. ¶ 155. It is well-settled that Getty Images' alleged injuries are irreparable in nature. *See City & County. of San Francisco v. City of Oakland*, No. 24-CV-02311-TSH, 2024 WL 4775737, at *17 (N.D. Cal. Nov. 12, 2024) ("The loss of control over one's trademarks, reputation, and goodwill is a quintessentially irreparable injury."); *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001) (threatened loss of goodwill constitutes irreparable harm supporting injunctive relief); *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1113 (S.D. Cal. 2012) (trademark confusion constitutes irreparable injury, including where ongoing conduct means that "injury cannot be remedied by monetary compensation alone").

1  Stability AI's argument that Getty Images cannot request both injunctive relief under its UCL

2  claim and monetary damages under its DMCA and Lanham Act claims is unavailing at the motion to

3  dismiss stage. *See* Mot. at 18. As explained by this Court, "[a]t this stage, where it is not apparent

4  whether the remedies at law are sufficient, equitable restitution may be pled in the alternative." *Brown*

5  *v. Food for Life Baking Co.*, 658 F. Supp. 3d 732, 743 (N.D. Cal. 2023) (Thompson, J.). Stability AI's

6  reliance on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 944 (9th Cir. 2020), to support its

7  argument is therefore misplaced: "*Sonner* does not stand for the proposition that pleading in the

8  alternative is disallowed." *Brown*, 658 F. Supp. 3d 743.

9  *Sonner* is inapposite for additional reasons. Getty Images' Complaint is clearly distinguishable

10  from that in *Sonner*, where plaintiff failed to plead at all that she lacked an adequate legal remedy and

11  requested the same sum in equitable restitution that she did in monetary damages. *Sonner*, 971 F.3d at

12  844. Here, Getty Images is not merely pleading alternative forms of relief, but also that equitable relief

13  may apply to conduct for which damages are not available. *See Krystofiak v. BellRing Brands, Inc.*, 737

14  F. Supp. 3d 782, 807 (N.D. Cal. 2024); *Colucci v. ZonePerfect Nutrition Co.*, No. 12–2907–SC, 2012

15  WL 6737800, at \*10 (N.D. Cal. Dec. 28, 2012). Moreover, the *Sonner* decision addressed "past harm,"

16  while Getty Images alleges ongoing harm for which injunctive relief is appropriate. Compl. ¶ 155.

### 3.  Getty Images has sufficiently pled UCL's "unlawful" prong

18  Under the "unlawful" prong, the UCL incorporates other laws and treats violations of those laws

19  as unlawful business practices independently actionable under state law. *Beaver v. Tarsadia Hotels*, 29

20  F. Supp. 3d 1294, 1303 (S.D. Cal. 2014), *aff'd*, 816 F.3d 1170 (9th Cir. 2016). Violation of almost any

21  federal, state, or local law may serve as the basis for an "unlawful" UCL claim. *Saunders v. Superior*

22  *Court*, 27 Cal. App. 4th 832, 838–39 (1994). "To state a cause of action based on an unlawful business

23  act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some

24  underlying law." *Beaver*, 29 F. Supp. 3d at 1303 (citation omitted). Here, Getty Images alleged Stability

25  AI engaged in "unlawful" acts under the UCL by pleading underlying violations of the DMCA and the

26  Lanham Act. Compl. ¶ 154; *see* Sections V.A-D, *supra*.

27  Stability AI argues that Getty Images' claim under UCL's "unlawful" prong is preempted due

28  to its underlying DMCA violation, but this is incorrect. *See* Mot. at 19. Getty Images' UCL claim

1    involves additional, distinct elements. "Copyright law protects copyright owners against unauthorized

2    reproduction, distribution, and other uses of their works but does not speak to false advertising and

3    consumer confusion as UCL do[es, which] prohibit[s] deceptive, untrue or misleading advertising."

4    *Serova v. Sony Music Ent.*, 13 Cal. 5th 859, 891 (2022) (cleaned up). California courts have explained

5    that misrepresentation is an extra element that a copyright claim does not have. *Kabehie v. Zoland*, 102

6    Cal. App. 4th 513, 530 (2002) (noting the "extra element of misrepresentation" distinguishes a fraud

7    claim from a copyright claim); *see also Valente-Kritzer Video v. Pinckney*, 881 F.2d 772, 776 (9th Cir.

8    1989) ("the element of misrepresentation . . . distinguishes fraud claim from one based on copyright.").

9    Here, Getty Images alleges an additional element of misrepresentation by alleging Stability AI caused

10   "a substantial portion of the public, including Getty Images' current and potential clients, [] to be misled

11   into believing that Stability AI was affiliated in some way with Getty Images." Compl. ¶ 154. This is

12   sufficient to distinguish Getty Images' UCL claim from a copyright claim.

13        But, even if Getty Images' DMCA-based UCL claim were preempted, it also pleads that

14   Stability AI violated the "unlawful" prong of the UCL based on its underlying Lanham Act claim.

15   Stability AI does not argue that those are preempted. *See* Mot. at 19. For the reasons discussed above,

16   Getty Images' Lanham Act claims should proceed and form an independent basis for a UCL claim.

17       **4.    Getty Images has sufficiently pled UCL's "fraudulent" prong**

18        "The fraud prong of the UCL is unlike common law fraud or deception. A violation can be

19   shown even if no one was actually deceived [or] relied upon the fraudulent practice. … Instead, it is

20   only necessary to show that members of the public are likely to be deceived." *Celebrity Chefs Tour,*

21   *LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1141, 1156 (S.D. Cal. 2014).

22        As explained with respect to its Lanham Act claims, Getty Images has alleged Stability AI's

23   misuse of Getty Image Marks on its outputs plausibly cause consumer "confusion as to the source of

24   the images" or as to an affiliation between the parties and that Stability AI "allows for the creation of

25   output that competes with and substitutes for Getty Images' visual assets." Compl. ¶¶ 14, 94. This is

26   sufficient to state a claim under UCL's "fraudulent" prong. *See Celebrity Chefs Tour*, 16 F. Supp. 3d

27   at 1155 (holding plaintiff adequately alleged public was likely to be deceived for purposes of UCL

28   claim where it alleged possible consumer confusion in its federal trademark infringement and false

1   designation of origin claims).

2          Stability AI contends that Getty Images' allegations undermine the likelihood that a reasonable

3   consumer would be deceived by Stability AI's infringing outputs. Mot at 21. But whether a practice is

4   deceptive or fraudulent under the UCL is a "question of fact, requiring consideration and weighing of

5   evidence from both sides before it can be resolved" and cannot be resolved on a motion to dismiss. *See*

6   *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1380–81 (2012). Unless the Court "can say as a

7   matter of law that contrary to the complaint's allegations, members of the public were not likely to be

8   deceived or misled," it "must hold that [Plaintiff] stated a cause of action." *Morgan v. AT&T Wireless*

9   *Servs., Inc.*, 177 Cal. App. 4th 1235, 1257 (2009).

10         Finally, Stability AI is incorrect to argue that Rule 9(b)'s heightened pleading standard applies.

11  *See* Mot at 20. Rule 9(b) requires that, when fraud is alleged, "a party must state with particularity the

12  circumstances constituting fraud." Fed. R. Civ. P. 9(b). But where fraud is not an essential element of

13  a claim, only those allegations of a complaint which aver fraud are subject to Rule 9(b)'s heightened

14  pleading standard. *See In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1118 (C.D. Cal. 2008).

15         Getty Images does not need to allege fraud in the underlying predicate violations behind its

16  UCL claims. Because Getty Images' trademark infringement and false designation of origin claims do

17  "not rely on allegations of fraud or misrepresentation, but rather allegations of unauthorized use of

18  [Plaintiff's] trademarks and a likelihood of customer confusion…Rule 9(b)'s heightened pleading

19  standard does not apply." *Rolex Watch U.S.A., Inc. v. Agarwal*, No. CV-12-06400 MMM (MRWx),

20  2012 WL 12886444, at *5 (C.D. Cal. Dec. 17, 2012). Moreover, "[t]he Ninth Circuit has never

21  established that 9(b) applies to trademark infringement claims." *Julian Bakery, Inc. v. Healthsource*

22  *Int'l, Inc.*, No. 16CV2594-JAH (KSC), 2018 WL 1524499, at *3 (S.D. Cal. Mar. 28, 2018). "Similarly,

23  the Ninth Circuit has not established that Rule 9(b) applies to false designation of origin claims arising

24  under the Lanham Act." *Santander Consumer USA Inc. v. Drive.Car LLC*, No. 3:23-CV-00288-SLG,

25  2024 WL 4880668, at *6 (D. Alaska Nov. 25, 2024).

26         Claims under the California UCL are analyzed the same way. *See Mattel*, 588 F. Supp. 2d at

27  1118 (allegations that the representations were likely to deceive, absent allegations of common law

28  fraud elements, did not need to be pleaded with particularity). Here, Getty Images alleges the public

"were likely to be misled into believing that Stability AI was affiliated in some way with Getty Images." Compl. ¶ 154. As such, Rule 9(b) does not apply because Getty Images "does not rely on allegations of fraud or misrepresentation, but rather allegations of unauthorized use of [the plaintiff's] mark and a likelihood of customer confusion." *Santander*, 2024 WL 4880668, at *6.

In any event, to the extent Getty Images is required to satisfy Rule 9(b)'s particularity requirement, it has done so by "articulat[ing] the who, what, when, where, and how of the misconduct alleged" as required to plead fraud with particularity. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). Specifically, Getty Images has identified Defendants as the entities responsible for the fraudulent conduct and has explained each Defendant's role in the enterprise. *See* Compl. ¶¶ 25–37 (describing each entity's involvement in employing individuals responsible for training Stability AI's models and developing software, financing operations, marketing, and targeting users of its websites, applications, models).[14] Getty Images has specified the nature of Stability AI's fraudulent acts as "unauthorized use of the Getty Images Marks in the United States in connection with synthetic images generated through the use of Stable Diffusion and DreamStudio." *Id*. ¶ 137. It has provided specific examples where Getty Images Marks appeared on Stability AI's outputs, including the dates and locations when and where infringing images were shared online. *See Id*. ¶¶ 13–14; 84–87; 97–103. Finally, Getty Images has explained that Stability AI's misuse of the Getty Images Marks is fraudulent and deceptive by causing "members of the consuming public to be confused, mistaken or deceived into believing that Getty Images has granted Stability AI the right to use the Getty Images Marks and/or that Getty Images sponsored, endorsed, or is otherwise associated, affiliated, or connected with Stability AI and its synthetic images." *Id*. ¶ 137.

Accordingly, the motion to dismiss Claims VI and VII should be denied.

### F.    Should the Court find any claim inadequately pled, it should grant leave to amend

Leave to amend is freely granted by courts in this district where the claim could be cured by additional factual allegations. *See, e.g., Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995). Indeed, "[i]t is black-letter law that a district court must give plaintiffs at least one chance to amend a deficient

---

[14] Where Getty Images has not distinguished between Defendants' fraudulent conduct, it is because Defendants "are alter egos of one another." Compl. ¶¶ 19–22. In any event, at the pleadings stage, Getty Images cannot be held to fully understand and therefore plead the specific acts of each Defendants.

complaint, absent a clear showing that amendment would be futile." *Bryant v. City of Pomona*, No. 21-55502, 2022 WL 4363430, at *1 (9th Cir. Sept. 21, 2022); *see also Suarez v. Bank of Am. Corp.*, No. 18-cv-01202-MEJ, 2018 WL 2431473, at *8 (N.D. Cal. May 30, 2018) (same). Should the Court determine that any claim is not adequately pled, Getty Images respectfully requests leave to amend those claims to provide additional factual allegations.

## VI.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied. If any claim is dismissed, Getty Images requests leave to amend.


Dated:  October 28, 2025

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP


By:    */s/ David R. Singh*
       DAVID R. SINGH

DAVID R. SINGH (Bar No. 300840)
david.singh@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 6th Floor
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

BENJAMIN E. MARKS (*pro hac vice*)
benjamin.marks@weil.com
JARED R. FRIEDMANN (*pro hac vice*)
jared.friedmann@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

BRIAN G. LIEGEL (*pro hac vice*)
brian.liegel@weil.com
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Ave, Ste. 1200
Miami, FL 33131
Telephone: (305) 577-3180

Attorneys for Plaintiff GETTY IMAGES (US), INC.