JOSEPH C. GRATZ (CA SBN 240676)
JGratz@mofo.com
TIMOTHY CHEN SAULSBURY (CA SBN 281434)
TSaulsbury@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:   415.268.7000
Facsimile:   415.268.7522

ADITYA V. KAMDAR (CA SBN 324567)
AKamdar@mofo.com
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, D.C. 20037
Telephone:   202.887.1500
Facsimile:   202.887.0763

[CAPTION CONTINUED ON NEXT PAGE]

Attorneys for Defendants
STABILITY AI LTD., STABILITY AI, INC.,
AND STABILITY AI US SERVICES
CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GETTY IMAGES (US), INC.,<br><br>Plaintiff,<br><br>v.<br><br>STABILITY AI LTD., STABILITY AI, INC., and STABILITY AI US SERVICES CORPORATION,<br><br>Defendants. | Case No. 3:25-cv-06891-TLT<br><br>**DEFENDANTS STABILITY AI LTD., STABILITY AI, INC., AND STABILITY AI US SERVICES CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Judge:     Hon. Trina L. Thompson<br>Date:      February 10, 2026<br>Time:      2:00 p.m.<br>Courtroom: 9 |

1  CHRISTOPHER R. ADLER (CA SBN 346588)
2  CAdler@mofo.com
   MORRISON & FOERSTER LLP
3  707 Wilshire Boulevard, Suite 6000
   Los Angeles, California 90017-3543
4  Telephone:     213.892.5200
   Facsimile:     213.892.5454
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1
II. ARGUMENT ......................................................................................................................... 1
    A. Getty's DMCA Claim (Claim II) Fails the "Double Scienter" Requirement ......... 1
        1. Getty Fails to Plausibly Allege Stability AI Acted "Knowingly." ............. 2
        2. Getty Fails to Allege the Requisite Specific Intent .................................... 2
        3. Getty Fails to Distinguish Zuma Press, Where It Prevailed on the Exact Argument Stability AI Makes .......................................................... 4
    B. Getty's Lanham Act Claims (Claims III & IV) Are Legally Implausible .............. 4
        1. An Unintentional, "Grotesque" Output Is Not a "Use in Commerce" Under Trademark Law ................................................................................ 5
        2. Getty's Own Allegations Negate Any Plausible Likelihood of Confusion ................................................................................................... 6
        3. Getty's False Designation Claim (Claim IV) Is Barred by Dastar ............. 6
    C. Getty's Dilution Claims (Claims V & VII) Fail to Plead the Requisite "General Consuming Public" Fame .......................................................................... 7
    D. Getty's UCL Claim (Claim VI) Fails for Multiple, Independent Reasons ............. 8
        1. Getty Lacks Standing Because It Fails to Allege an Injury Caused by the Challenged Conduct ........................................................................ 8
        2. The Entire UCL Claim Is Barred for Failure to Plead Inadequate Legal Remedies ........................................................................................... 9
        3. Getty's "Unlawful" Prong Claim Fails ........................................................ 9
        4. Getty's "Fraudulent" Prong Claim Fails ................................................... 10
III. CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Andy Ryan Photographer, LLC v. Dagny's Real Est. LLC*,
  No. 24-CV-7787 (KMK), 2025 WL 2733858 (S.D.N.Y. Sep. 25, 2025) ................................. 3

*Batra v. PopSugar, Inc.*,
  No. 18-CV-03752-HSG, 2019 WL 482492 (N.D. Cal. Feb. 7, 2019) ..................................... 3

*Bosley Med. Inst., Inc. v. Kremer*,
  403 F.3d 672 (9th Cir. 2005) .................................................................................................. 5

*Bragg Live Food Prods., LLC v. Nat'l Fruit Prod. Co., Inc.*,
  No. 2:22-CV-00584-SB-SK, 2022 WL 3574423 (C.D. Cal. July 22, 2022) .......................... 9

*Brown v. Food for Life Baking Co.*,
  658 F. Supp. 3d 732 (N.D. Cal. 2023) .................................................................................... 9

*Craigslist Inc. v. 3Taps Inc.*,
  942 F. Supp. 2d 962 (N.D. Cal. 2013) .................................................................................... 7

*Daar v. Oakley, Inc.*,
  No. CV 18-6007 PA (KSX), 2018 WL 9596129 (C.D. Cal. Sep. 27, 2018) .......................... 3

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003) ........................................................................................................ 1, 5, 7

*Emerson v. Northern Trust Corp.*,
  No. 23-CV-00241-TLT, 2023 WL 11884593 (N.D. Cal. Nov. 15, 2023) .............................. 9

*Hasbro, Inc. v. Sweetpea Ent., Inc.*,
  No. CV 13-3406 DMG, 2014 WL 12586021 (C.D. Cal. Feb. 25, 2014) ................................ 5

*HomeGoods, Inc. v. Papanicolaou*,
  No. CV19-06912-CJC(PLAx), 2019 WL 7171541 (C.D. Cal. Dec. 4, 2019) ........................ 8

*ICONICS, Inc. v. Massaro*,
  192 F. Supp. 3d 254 (D. Mass. 2016) .................................................................................... 3

*Iglesia Ni Cristo v. Cayabyab*,
  No. 18-CV-00561-BLF, 2019 WL 3997474 (N.D. Cal. Aug. 23, 2019) ................................ 5

*Izmo, Inc. v. Roadster, Inc.*,
  No. 18-CV-06092-NC, 2019 WL 13210561 (N.D. Cal. Mar. 26, 2019) ................................. 3

*Kadrey v. Meta Platforms, Inc.*,
  No. 23-CV-03417-VC, 2025 WL 744032 (N.D. Cal. Mar. 7, 2025) ...................................... 3

*Kearns v. Ford Motor Co.*
    567 F.3d 1120 (9th Cir. 2009) .................................................................................. 10

*Mango v. BuzzFeed, Inc.*,
    970 F.3d 167 (2d Cir. 2020) ...................................................................................... 3

*Murray v. Cable Nat'l Broad. Co.*,
    86 F.3d 858 (9th Cir. 1996) ....................................................................................... 6

*Patagonia, Inc. v. McHugh*,
    No. LA CV19-07666 JAK(AFMx), 2020 WL 4258818 (C.D. Cal. Apr. 21,
    2020) ......................................................................................................................... 8

*Powers v. Caroline's Treasures Inc.*,
    382 F. Supp. 3d 898 (D. Ariz. 2019) ......................................................................... 3

*Santander Consumer USA Inc. v. Drive.Car LLC*,
    No. 3:23-CV-00288-SLG, 2024 WL 4880668 (D. Alaska Nov. 25, 2024) ............. 10

*Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*,
    845 F.3d 1246 (9th Cir. 2017) ................................................................................... 7

*Sonner v. Premium Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ..................................................................................... 9

*Splunk Inc. v. Cribl, Inc.*,
    662 F. Supp. 3d 1029 (N.D. Cal. 2023) ..................................................................... 3

*Stokes v. CitiMortgage, Inc.*,
    No. CV 14-00278 BRO, 2014 WL 4359193 (C.D. Cal. Sep. 3, 2014) ...................... 9

*Victor Elias Photography, LLC v. Ice Portal, Inc.*,
    No. 19-62173-CIV-SMITH, 2021 WL 2384618 (S.D. Fla. May 3, 2021), *aff'd*,
    43 F.4th 1313 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 736 (2023) ........................ 4

*Zuma Press, Inc. v. Getty Images (US), Inc.*,
    349 F. Supp. 3d 369 (S.D.N.Y. 2018) ....................................................................... 4

**Statutes**

17 U.S.C. § 1202(a) ............................................................................................... *passim*

17 U.S.C. § 1202(b) ...................................................................................................... 3, 4

Cal. Bus. & Prof. Code § 17204 ....................................................................................... 8

I.   INTRODUCTION

Getty's Opposition does not rescue its six ancillary claims from the fundamental defects identified in Stability AI's motion to dismiss. It merely confirms those defects. Getty suggests Stability AI is relying on its own facts and asking the Court to draw improper inferences. Not so. Stability AI is merely reading the Complaint. Getty's own core allegation of "overfitting" (Compl. ¶ 83) remains the single biggest obstacle to its tacked-on theories, as the most plausible inference from that fact—that the watermark-like elements it objects to are an unintentional byproduct of a complex process—negates the very inference of wrongdoing its claims depend on.

This contradiction is fatal to its DMCA claim, for one. Getty's technical explanation is the very opposite of the knowledge and specific intent to induce, enable, facilitate, or conceal infringement that the statute demands. It is just as fatal to its trademark claims. Getty asks the Court to accept an implausible premise: that a reasonable consumer would see a garbled watermark on a "bizarre" and "grotesque" image and mistake it for a deliberate act of sponsorship by a "premium quality" brand. The Complaint pleads facts that establish an error, not confusion. And Getty's attempt to escape *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), fails for the same reason: its entire claim is premised on the alleged copying of *content*.

Its dilution claims are equally deficient, pleading a classic case of "niche fame" within a commercial market rather than the "household name" status the law requires. And its UCL claim is a procedural tangle, failing for multiple independent reasons including a lack of standing and a failure to plausibly plead inadequate legal remedies.

The Opposition confirms that these extra claims are legal and factual fictions, unsupported by Getty's own allegations. This is a copyright case. The Court should dismiss these flawed claims and allow the case to proceed on its proper subject.

II.   ARGUMENT

  A. **Getty's DMCA Claim (Claim II) Fails the "Double Scienter" Requirement.**

Section 1202(a) of the DMCA is not a strict-liability statute for technical anomalies. It is an intent-based provision meant to punish deliberate acts. As such, it requires "double scienter." Mot. at 4. A plaintiff must plausibly allege *both* (1) that the defendant "knowingly" provided

false copyright management information ("CMI") *and* (2) did so with the specific "intent to induce, enable, facilitate, or conceal infringement." 17 U.S.C. § 1202(a). Getty's Opposition fails to salvage either prong.

### 1.   Getty Fails to Plausibly Allege Stability AI Acted "Knowingly."

Getty fails to plead facts supporting the first prong of scienter: knowledge. As explained in the motion to dismiss, Getty's Complaint offers only a threadbare and conclusory assertion made upon information and belief. Mot. at 5. Getty now attempts to backfill this deficiency by arguing that knowledge can be inferred from a few "widely and publicly reported" internet posts. Opp. at 6 (citing Compl. ¶¶ 85–87, 99). Not only does the Complaint fail to explain how these four posts were "widely and publicly reported," this argument is insufficient to establish that Stability AI itself was "well aware" of them. Moreover, it's directly contradictory: Getty argues the examples of ersatz watermarks were "so commonplace" (Opp. at 6) that Stability AI must have known, yet it later argues that the "frequency of these occurrences is not relevant to whether Getty Images' pleading is adequate" (Opp. at 7, n.5). Getty cannot have it both ways. These few, isolated examples are insufficient to build a plausible inference of corporate knowledge.

### 2.   Getty Fails to Allege the Requisite Specific Intent.

Getty has also not plausibly alleged the second, dispositive prong: the specific "intent to induce, enable, facilitate, or conceal infringement." 17 U.S.C. § 1202(a). Getty's own Complaint provides a non-intentional, technical explanation for why the watermark-like elements appear on the images: "overfitting," where a model, instead of learning "the relationship between text prompts and images" to generate new images that "look like" the data on which it has trained, allegedly "memorizes" training data and regenerates the training images as outputs. Compl. ¶¶ 81, 83. The Complaint does not allege Stability AI *intentionally* caused this "overfitting" to occur. In fact, its allegations point in the other direction. As Getty's Complaint repeatedly states, the purpose of the model is to create "computer-synthesized images" (Compl. ¶ 9) for "those seeking creative imagery" (*id.* ¶ 12) in the form of "new images" (*id.* ¶ 81) that are in fact entirely "synthetic" works (*id.* ¶ 129). Getty does not explain why it would make any sense for the developer of such a model to intend for it to regurgitate garbled watermarks.

Getty confuses the issue of intent under Section 1202(a) by relying on allegations (Compl. ¶¶ 98, 100, 102–103) and case law about *removal* of CMI—an act governed by a different cause of action, Section 1202(b), that has a completely different scienter requirement. Section 1202(b) prohibits "intentionally remov[ing] or alter[ing]" CMI "knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title." 17 U.S.C. § 1202(b). In other words, Section 1202(b) does not require *intent* to induce, enable, facilitate, or conceal, but rather just *reason to know* that removal would induce, enable, facilitate, or conceal. This distinction, as the Section 1202(b) cases Getty relies on make clear, allows courts to more easily infer scienter. For example, *Mango v. BuzzFeed, Inc.*, 970 F.3d 167 (2d Cir. 2020), involved a deliberate, affirmative act of cropping a photograph to remove CMI in such a way as to remove the photographer's credit. *Id.* at 169–70.[1]

The few Section 1202(a) cases that Getty does cite showcase the higher bar needed to satisfy this provision's specific intent requirement: each one involved defendants deliberately placing their own false CMI on someone else's material—an affirmative, intentional act missing from Getty's Complaint. *See Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029, 1054 (N.D. Cal. 2023) (inferring intent because defendant falsely identified himself as author/owner and added false license to "obscure his own unlawful copying"); *Powers v. Caroline's Treasures Inc.*, 382 F. Supp. 3d 898, 906 (D. Ariz. 2019) (defendant added "Caroline's Treasures" notation to items for sale); *ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254, 272–73 (D. Mass. 2016) (defendant replaced existing copyright header in source code files with name of company he worked for); *Andy Ryan Photographer, LLC v. Dagny's Real Est. LLC*, No. 24-CV-7787 (KMK), 2025 WL 2733858, at *3 (S.D.N.Y. Sep. 25, 2025) (defendant "added their own logos and author names,

---

[1] *See also Izmo, Inc. v. Roadster, Inc.*, No. 18-CV-06092-NC, 2019 WL 13210561, at *1 (N.D. Cal. Mar. 26, 2019) (affirmative removal of file names); *Daar v. Oakley, Inc.*, No. CV 18-6007 PA (KSX), 2018 WL 9596129, at *1 (C.D. Cal. Sep. 27, 2018) (affirmative removal of mural signature); *Batra v. PopSugar, Inc.*, No. 18-CV-03752-HSG, 2019 WL 482492, at *2 (N.D. Cal. Feb. 7, 2019) (making inference where deliberate removal of author information would help conceal infringement); *Kadrey v. Meta Platforms, Inc.*, No. 23-CV-03417-VC, 2025 WL 744032, at *2 (N.D. Cal. Mar. 7, 2025) (making inference from allegations of removal of CMI from training data to prevent AI model "from outputting CMI and thus revealing that it was trained on copyrighted material").

REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S COMPLAINT                                    3
CASE NO. 3:25-CV-06891-TLT

bylines, and attribution[s]" to photographs).

Nor does the fact of Getty's original Delaware lawsuit against Stability AI establish the requisite specific intent here. Getty's allegations about its Delaware suit were pled to support personal jurisdiction, not to satisfy Section 1202(a)'s demanding "double scienter" standard. Compl. ¶ 24. Indeed, courts have found that prior DMCA lawsuits do not even satisfy the lower Section 1202(b) "reason to know" standard. *See Victor Elias Photography, LLC v. Ice Portal, Inc.*, No. 19-62173-CIV-SMITH, 2021 WL 2384618, at *5 (S.D. Fla. May 3, 2021) ("mere familiarity with the DMCA" or reliance on "earlier dispute" does not establish that defendant "knew or should have known that its actions would induce, enable, facilitate, or conceal an infringement"), *aff'd*, 43 F.4th 1313 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 736 (2023).

Because the Complaint fails to allege the specific intent required by Section 1202(a) or any deliberate, affirmative act of falsification from which that specific intent could be readily inferred, Getty's DMCA claim fails.

### 3. Getty Fails to Distinguish *Zuma Press*, Where It Prevailed on the Exact Argument Stability AI Makes.

Getty and its current counsel successfully argued in *Zuma Press, Inc. v. Getty Images (US), Inc.*, 349 F. Supp. 3d 369 (S.D.N.Y. 2018), that an *automated process* negates the requisite scienter for a § 1202(a) claim. Getty cannot run away from its correct argument in *Zuma Press* by burying its response in a footnote, claiming that the case is inapposite because it was decided on summary judgment and because Stability AI knew about the watermarks at issue. Opp. at 7 n.4. First, the legal principle Getty advocated in *Zuma Press*—that automated processes cannot form the basis for DMCA scienter—is what matters. Getty's Complaint, which alleges an automated "overfitting" process, pleads facts directly supporting this legal standard. Second, pleading *knowledge* of distorted watermarks does not satisfy the *specific intent* prong. Getty cannot now argue the opposite of a legal principle it successfully relied on—and that applies to the facts here—simply because it is now a plaintiff.

### B. Getty's Lanham Act Claims (Claims III & IV) Are Legally Implausible.

Getty's Lanham Act claims fail for three independent and dispositive reasons. First, an

unintentional, automated "overfitting" artifact is not a commercial use.  Second, Getty's own allegations—that its "premium" mark appears only on "bizarre" and "grotesque" outputs—make consumer confusion implausible as a matter of law.  Finally, Getty's false designation of origin claim is a textbook example of a repackaged copyright claim that is explicitly barred by *Dastar*.

### 1. An Unintentional, "Grotesque" Output Is Not a "Use in Commerce" Under Trademark Law.

A "use in commerce" is not just any appearance of a mark.  It must be "in connection with a commercial transaction in which the trademark is being used to confuse potential consumers." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005).  Getty's attempt to cabin *Bosley* to its facts is a distraction from the legal principle articulated in the case:  the purpose of trademark infringement law is to protect consumers from making commercial decisions because of confusion caused by the use of a trademark "in connection with the sale of goods or services." 403 F.3d at 677.  Indeed, both cases Getty cites embrace this principle.  *Hasbro, Inc. v. Sweetpea Ent., Inc.*, No. CV 13-3406 DMG (JCGx), 2014 WL 12586021 (C.D. Cal. Feb. 25, 2014), involved a defendant "capitalizing on the good will" associated with a mark (as Getty mentions) by seeking to "advertise or promote" an upcoming film, a use "in connection with the sale of goods" (as Getty leaves out).  *Id.* at *10 (citing *Bosley*, 403 F.3d at 677).  And *Iglesia Ni Cristo v. Cayabyab*, No. 18-CV-00561-BLF, 2019 WL 3997474 (N.D. Cal. Aug. 23, 2019), involved allegations of the deliberate use of a mark on websites, social media posts, and pamphlets to "inten[tionally] . . . trick people" into attending a competing worship service.  *Id.* at *9.

Getty does not allege that Stability AI places the ersatz watermarks on its website, advertisements, or subscription pages.  Nor does it allege that Stability AI is deliberately inserting the marks to trick users into using Stability AI's services.  Instead, Getty alleges the mark appears, distorted, within "bizarre" and "grotesque" outputs of the Stable Diffusion models themselves.  Compl. ¶¶ 100, 147.  This is an allegation of an irregular product output, not a use to confuse potential consumers in connection with the sale of goods or services.

Getty's own example proves this:  a user who received a watermarked image stated, "I didn't ask for that."  Compl. ¶ 86.  This is not the reaction of a consumer being influenced by a

REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S COMPLAINT                                5
CASE NO. 3:25-CV-06891-TLT

source identifier. This automated artifact of "overfitting" is not a commercial use under the Lanham Act and Ninth Circuit law. Moreover, Getty's argument that a "trial user" or an "existing customer" might be swayed to purchase or continue a subscription because of the ersatz watermarks is pure speculation. Opp. at 12. The Complaint pleads no facts that *any* user was ever led to purchase anything as a result of seeing a "grotesque" output.

### 2. Getty's Own Allegations Negate Any Plausible Likelihood of Confusion.

Getty's argument that confusion is a fact-intensive issue not ripe for dismissal is a procedural dodge. Opp. at 8. Dismissal is necessary when, as here, a plaintiff's own allegations make its claim implausible. *See Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 860–61 (9th Cir. 1996) (upholding dismissal and determination of no confusion as a matter of law).

Getty's Complaint pleads a fatal contradiction. On one hand, it alleges its marks represent and are "associated in the minds of the public" with "premium" and "high-quality visual content." Compl. ¶¶ 54, 126. On the other, it alleges that the only instances where its mark appears are on outputs that are "bizarre," "grotesque," and "severely distorted." *Id.* ¶¶ 15, 98, 100–101. Taking Getty's own allegations as true, the most plausible inference—indeed, the only one a reasonable consumer would make—is that a garbled watermark on a grotesque image is a technical anomaly, not a deliberate act of sponsorship by a "premium" brand.

Getty's attempt to rebut this by pointing to its own allegation that *some* Stable Diffusion outputs are "'amusing' or 'aesthetically pleasing'" is a misdirection. Opp. at 11 (citing Compl. ¶ 15). The likelihood of confusion analysis is not based on a defendant's entire product line, but rather on the actual, accused use of the mark. Getty only describes the generated watermarks themselves as "modified," "ersatz," or "distorted" (Compl. ¶¶ 14, 98, 100–102).

Finally, Getty's argument that actual confusion is not required at the pleading stage misses the point. Getty's claim does not fail for lack of actual confusion. It fails because Getty has affirmatively pled facts demonstrating that confusion is implausible.

### 3. Getty's False Designation Claim (Claim IV) Is Barred by *Dastar*.

Getty's false designation of origin claim is a repackaged copyright claim explicitly barred

by *Dastar*. *Dastar* and subsequent cases warn against confusing the meaning of the "origin of goods" under the Lanham Act, which "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." 539 U.S. at 37; *see also Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1250 (9th Cir. 2017) (Lanham Act claim that is "more accurately conceived of as attacking unauthorized copying" fails under *Dastar*).

Getty advances a clever but self-defeating carve-out in an attempt to avoid *Dastar*'s prohibition, arguing its false-designation claim is only for images that are not substantially similar to a Getty work. This argument, however, collapses under the weight of Getty's own Complaint. To allege the marks appear at all, Getty's *only* explanation is that Stability AI's model "memorizes" and "overfit[s]" its copyrighted training data. Compl. ¶ 83. But to avoid *Dastar*, Getty must argue that its marks' appearance is unrelated to that same copyrighted data. This is a fatal contradiction. By Getty's own logic, any output with the watermark is a product of the communicative content of its copyrighted works. The watermark is part of the "communicative content" that *Dastar* holds the Lanham Act does not protect. Because of this, Getty's reliance on *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962 (N.D. Cal. 2013), is misplaced. There, the defendants affirmatively affixed the Craigslist mark on their own competing websites—a deliberate act of false association. *Id.* at 966, 978. Here, the watermark is alleged to have emerged from Getty's copyrighted content itself as a result of "overfitting" during the training process. This is precisely the kind of "mutant copyright law" *Dastar* forbids. 539 U.S. at 34.

    **C.**    **Getty's Dilution Claims (Claims V & VII) Fail to Plead the Requisite "General Consuming Public" Fame.**

Getty's dilution claims fail because its allegations do not meet the rigorous and demanding standard for fame. Getty concedes that, under both federal and California law, to sufficiently allege fame it must be plausible to infer that a plaintiff's marks are "widely recognized by the general consuming public." Opp. at 15 (citing 15 U.S.C. § 1125(c)(2)(A); Cal. Bus. & Prof. Code § 14247(a)). But its own Complaint pleads a classic case of "niche fame." Based on Getty's own pleaded facts—"708,000 customers" worldwide (i.e., not limited to the

United States or California), a customer base of "media outlets, advertising agencies, and corporations of all sizes to individual creators," and "2.8 billion searches annually" (Compl. ¶ 53)—the most plausible inference is not that Getty is a "household name," but that it is a global business-to-business "industry name" that supplies commercial buyers, not the "general consuming public."

Getty's claims of general public exposure are tenuous at best. The Complaint does not allege that the Getty Images *marks* appear "in the world's most influential" publications. Compl. ¶ 5. It does not even allege that its *images* appear. Rather, it pleads the further-removed and ambiguous claim that "its imagery *helps* its customers *produce work* which appears every day in the world's most influential" publications. *Id.* (emphases added). This attenuated link—that its product helps someone else produce something that the public might see, without any allegation that they would ever even see the Getty Images brand—is the very opposite of the widespread recognition these causes of action require.

Getty's reliance on *Patagonia, Inc. v. McHugh*, No. LA CV19-07666 JAK(AFMx), 2020 WL 4258818 (C.D. Cal. Apr. 21, 2020), and *HomeGoods, Inc. v. Papanicolaou*, No. CV19-06912-CJC(PLAx), 2019 WL 7171541 (C.D. Cal. Dec. 4, 2019), only highlights its weakness. Patagonia and HomeGoods are quintessential consumer-facing brands. The "general consuming public" are their customers. Getty, by contrast, is a business-facing supplier whose mark is almost exclusively seen by its commercial licensees. The comparison fails.

Getty has failed to plausibly allege its marks are "widely recognized by the general consuming public." It has only alleged fame within its commercial niche, which the law does not protect. The dilution claims (Claims V and VII) must be dismissed.

### D.   Getty's UCL Claim (Claim VI) Fails for Multiple, Independent Reasons.

#### 1.   Getty Lacks Standing Because It Fails to Allege an Injury Caused by the Challenged Conduct.

To establish standing under the UCL, Getty must show it has "lost money or property *as a result of* the unfair competition." Cal. Bus. & Prof. Code § 17204 (emphasis added). Getty appears to concede that the only causal chain, however attenuated, that might appear in its

Complaint results in—at most—alleged harm to its reputation and goodwill. Opp. at 18–19. But "alleged damage to [a plaintiff's] reputation and goodwill is insufficient to confer standing" under the UCL. *See Bragg Live Food Prods., LLC v. Nat'l Fruit Prod. Co., Inc.*, No. 2:22-CV-00584-SB-SK, 2022 WL 3574423, at *2 (C.D. Cal. July 22, 2022) (dismissing UCL claim). Any other supposed injury not only is conclusorily alleged but also fails the causation test. The "unfair competition" pled as the predicate for this claim is the appearance of a distorted watermark. Compl. ¶ 154. Yet Getty fails to allege with any concreteness that a single customer or business opportunity was lost or the value of its intellectual property was diminished *because* someone saw one of the "bizarre" and "grotesque" images bearing an ersatz mark.

### 2. The Entire UCL Claim Is Barred for Failure to Plead Inadequate Legal Remedies.

Getty's UCL claim is also procedurally barred under *Sonner v. Premium Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), because Getty has adequate remedies at law. After all, Getty seeks substantial monetary damages, statutory damages, and treble damages under its predicate claims.

Getty rests on *Brown v. Food for Life Baking Co.*, 658 F. Supp. 3d 732 (N.D. Cal. 2023), to argue it can plead in the alternative. Opp. at 21. But *Brown* does not absolve a plaintiff from the *Sonner* requirement to plausibly allege inadequacy. As this Court held in *Emerson v. Northern Trust Corp.*, No. 23-CV-00241-TLT, 2023 WL 11884593 (N.D. Cal. Nov. 15, 2023), a plaintiff must plead facts explaining why it "could not be made whole with monetary damages," for past relief *or* injunctive relief. *Id.* at *6 (citing, e.g., *In re MacBook Keyboard Litig.*, No. 5:18-CV-02813, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) (collecting cases applying *Sonner* to injunctive relief claims under the UCL)). Getty's conclusory recitation of "irreparable harm" (Compl. ¶ 155)—for which it simultaneously seeks millions in damages under its federal claims—is precisely the formulaic recitation that fails this standard.

### 3. Getty's "Unlawful" Prong Claim Fails.

An "unlawful" prong claim is purely derivative. If a plaintiff "cannot state a claim under the predicate law," the UCL "claim also fails." *Stokes v. CitiMortgage, Inc.*, No. CV 14-00278 BRO (SHx), 2014 WL 4359193, at *11 (C.D. Cal. Sep. 3, 2014) (citation omitted). As argued

above, Getty's DMCA and Lanham Act claims are legally deficient. With no predicate violation, the "unlawful" claim must be dismissed.

Furthermore, Getty does not address—and thus concedes—the argument that its DMCA-based claim is preempted. Stability AI's motion argued that the DMCA's comprehensive statutory regime related to "copyright management information" demonstrated Congress's intent to occupy the field, thus preempting state-law claims on the subject. Mot. at 19. Getty fails to respond to this field preemption argument, instead offering an irrelevant rebuttal to Copyright Act conflict preemption (the "extra element" test), which Stability AI does not assert. Opp. at 21–22.

### 4. Getty's "Fraudulent" Prong Claim Fails.

Getty's contention that Rule 9(b) does not apply to its "fraudulent" prong claim because it is not alleging fraud or misrepresentation does not square with the nature of its predicate claims. The Section 1202(a) claim requires a showing of knowing and intentional provision of false information with the intent to foster or conceal infringement. And as Getty's own cases state, "there is an abundance of relevant and persuasive case law standing for the proposition that Rule 9(b) should be applied to [false designation of origin] claims when they are 'grounded in fraud.'" *Santander Consumer USA Inc. v. Drive.Car LLC*, No. 3:23-CV-00288-SLG, 2024 WL 4880668, at *6 (D. Alaska Nov. 25, 2024) (alteration in original) (quoting *Julian Bakery, Inc. v. Healthsource Int'l, Inc.*, Case No. 16-cv-2594-JAH (KSC), 2018 WL 1524499, at *4 (S.D. Cal. Mar. 28, 2018)). Here Getty alleges that Stability AI's actions constituting false designation that led to the supposed public deception were "willful, intentional, in bad faith, and designed specifically to permit Stability AI to profit from such misuse in violation of Getty Images' rights in the Getty Images Marks." Compl. ¶ 138. As the Ninth Circuit made clear in *Kearns v. Ford Motor Co.* 567 F.3d 1120 (9th Cir. 2009), when a UCL claim is "grounded in fraud" or "sound[s] in fraud," it must be pled with the particularity required by Rule 9(b). *Id.* at 1124–25. Getty's allegations fall short of this exacting standard.

### III. CONCLUSION

Stability AI respectfully moves the Court to let this copyright case be a copyright case and dismiss Getty's flawed, ancillary Claims II to VII with prejudice.

Dated: November 4, 2025

MORRISON & FOERSTER LLP

By: */s/ Joseph C. Gratz*
Joseph C. Gratz

JOSEPH C. GRATZ
JGratz@mofo.com
TIMOTHY CHEN SAULSBURY
TSaulsbury@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:    415.268.7000
Facsimile:    415.268.7522

ADITYA V. KAMDAR
AKamdar@mofo.com
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, D.C. 20037
Telephone:    202.887.1500
Facsimile:    202.887.0763

CHRISTOPHER R. ADLER
CAdler@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone:    213.892.5200
Facsimile:    213.892.5454

*Attorneys for Defendants*
STABILITY AI LTD., STABILITY AI, INC., AND STABILITY AI US SERVICES CORPORATION