UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GETTY IMAGES (US), INC.,

Plaintiff,

v.

STABILITY AI, LTD., et al.,

Defendants.

Case No.  25-cv-06891-TLT

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

Re: Dkt. No. 24

United States District Court
Northern District of California

## I.    INTRODUCTION

Before the Court is Defendants Stability AI Ltd., Stability AI, Inc., and Stability AI US Services Corporation' (collectively, "Stability AI") motion to dismiss Counts II through VII of Plaintiff Getty Images (US), Inc.'s ("Getty") Complaint.  ECF 24.

This case arises from Stability AI's alleged infringement of Getty's intellectual property. The Complaint alleges seven causes of action including (1) copyright infringement; (2) false copyright management information in violation of 17 U.S.C. § 1202(a); (3) trademark infringement in violation of 15 U.S.C. § 1114(1); (4) unfair competition in violation of 15 U.S.C. § 1125(a); (5) trademark dilution in violation of 15 U.S.C. § 1125(c); and California state law claims for (6) unfair competition; and (7) trademark dilution.  ECF 1.

After reviewing the parties' briefs, hearings, and the relevant legal authority, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss for the reasons below.

## II.    PROCEDURAL HISTORY

On February 3, 2023, Getty initially filed a suit against Stability AI in the District of Delaware.  *Getty Images (US), Inc. v. Stability AI, Ltd., et al.*, No. 23-cv-135-JLH (D. Del.).  On August 14, 2025, Getty filed a notice of voluntary dismissal without prejudice, intending to file a

complaint in the Northern District of California, where Stability AI admitted it was subject to personal jurisdiction. *Id*; ECF 1 ¶ 24; ECF 49.

On August 14, 2025, Getty filed a complaint against Stability AI in this district. ECF 1. On October 14, 2025, Stability AI filed the present Motion to Dismiss. ECF 24. The Motion to Dismiss was fully briefed on November 4, 2025. ECF 31, 32. The Court heard oral argument for the Motion to Dismiss on April 7, 2026. ECF 49.

## III.    BACKGROUND

Getty is a stock photography company that has curated a collection of premium quality visual assets and licenses them to a commercial customer base of media outlets, advertising agencies, and corporations. ECF 1 ¶¶ 3, 53. Stability AI created the image-generating models, including Stable Diffusion, which use artificial intelligence to generate computer-synthesized images in response to user-supplied text prompts. *Id*. ¶¶ 8–9.

Getty alleges that Stability AI's models were trained on data from a non-party, LAION, which created an open dataset of more than five billion hyperlink-text pairs scraped from the public internet. *Id*. ¶¶ 62–63. Getty claims that the resulting images generated by the models contain a distorted version of its watermark, creating confusion as to the source of the images and falsely implying an association with Getty. *Id*. ¶¶ 14, 84–87, 98–102. Stability AI has commercialized their models through various user licenses, including paid subscription services. *Id*. ¶¶ 10–11, 90–91. Getty claims this commercialization directly competes with Getty's own visual assets. *Id*. ¶ 94.

## IV.    LEGAL STANDARD

Pursuant to Rule 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To overcome a motion to dismiss, a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc*., 765 F.3d 1123, 1135 (9th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co*.,

United States District Court
Northern District of California

2

519 F.3d 1025, 1031 (9th Cir. 2008).  However, "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal."  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  Generally, when assessing the sufficiency of a complaint under Rule 12(b)(6), the Court may not consider materials outside of the pleadings.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

## V.  DISCUSSION

### A.  Getty fails to state a claim under Section 1202(a) of the DMCA (Claim II)

Section 1202(a) prohibits knowingly and intentionally inducing, enabling, facilitating or concealing copyright infringement by (1) providing false copyright management information ("CMI") and (2) distributing or importing for distribution false CMI.  17 U.S.C. § 1202(a)(1)–(2).

The Court finds that because Section 1202(a) contains a double scienter requirement (i.e. knowledge and intent), the Complaint adequately pleads that Stability AI knowingly provided false CMI of Getty but fails to plead that Stability AI acted with the specific intent to induce, enable, facilitate, or conceal the infringement.  *See McGucken v. Shutterstock, Inc.*, 166 F.4th 361, 369 (2d Cir. 2026) ("§ 1202(a) contains a pair of scienter elements: to be liable, a party must both have actual knowledge that the CMI at issue is false and have acted with the intent to induce, enable, facilitate, or conceal infringement.").

Taking the allegations in the Complaint as true, Stability AI is aware that its models generate distorted Getty's watermarks (i.e., false CMI).  ECF 1 ¶ 102.  However, the four corners of the Complaint lack allegations to suggest a specific intent to induce, enable, facilitate, or conceal the infringement.  Rather, the Complaint appears to concede that Stability AI's models create distorted watermarks as incidental byproducts of their inherent overfitting or memorization during training processes.  *See id*. ¶ 83.  While Getty relies on several cases to support its proposition, those cases rely on Section 1202(b), which requires a different intent analysis.  *See Mango v. BuzzFeed, Inc.*, 970 F.3d 167 (2d Cir. 2020); *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417-VC, 2025 WL 744032 (N.D. Cal. Mar. 7, 2025).

Further, while Getty contends that the requisite intent can be plausibly inferred at this stage, the Court finds that the intent element in Section 1202(a) requires more.  In *Splunk Inc. v.*

United States District Court
Northern District of California

3

*Cribl, Inc.*, the plaintiff adequately pleaded a Section 1202(a) claim when the infringer specifically added a CMI to the website to obscure his unlawful copying of the copyrighted source code and to identify himself as the owner of the copyrighted code.  662 F. Supp. 3d 1029 at 1054 (N.D. Cal. 2023) (Judge William H. Alsup).  In contrast, Getty has not adequately alleged anything with respect to Stability AI's intent to take specific acts to induce, enable, facilitate, or conceal infringement through the use of the CMI.

Accordingly, the Court GRANTS Stability AI's motion to dismiss Getty's claim under Section 1202(a) of the DMCA.

### B. Getty's trademark claim under 15 U.S.C. § 1114(1) (Claim III) is sufficiently alleged.

Stability AI argues Getty failed to allege "use in commerce" or a plausible likelihood of confusion.  ECF 24 at 19–23.  However, Getty counters that Stability AI displays Getty's marks on outputs of their model, made available to potential purchasers of competing generative AI services and that the Complaint sufficiently pleads a likelihood of confusion.  ECF 31 at 17–23.

"To maintain an action for trademark infringement under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125 (a) and unfair competition under California law, a plaintiff must prove the defendant's use of the same or similar mark would create a likelihood of consumer confusion."  *Murray v. Cable NBC*, 86 F.3d 858, 860 (9th Cir. 1996); *Mintz v. Subaru of Am., Inc.*, 716 F. App'x 618, 622 (9th Cir. 2017) ("the elements needed to establish federal unfair competition under 15 U.S.C. § 1125(a) are identical to the elements needed to establish trademark infringement under 15 U.S.C. § 1114").  In determining whether a defendant's use of a plaintiff's mark is likely to cause confusion, the Court considers eight non-exhaustive factors.  *Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040, 1048 (9th Cir. 2025).

"Because a careful assessment of the pertinent factors that go into determining likelihood of confusion usually requires a full record, dismissal of trademark disputes at the pleading stage is generally disfavored."  *Id.* at 1049 (citation omitted and quotation altered); *Yuga Labs, Inc. v. Ripps*, 144 F.4th 1137, 1167 (9th Cir. 2025) ("While this is an inherently fact-specific inquiry, in the appropriate case the likelihood of confusion may be decided at summary judgment."); *Au-*

4

*Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1075 (9th Cir. 2006) ("Because the likelihood of confusion is often a fact-intensive inquiry, courts are generally reluctant to decide this issue at the summary judgment stage.").

Here, Getty claims that its mark has been in use in the United States since 1995, establishing widespread recognition as a premium visual content source through substantial investments in its website and associated marks.  ECF 1 ¶¶ 54, 124.  Getty also claims that images generated by Stability AI's models directly compete with Getty's images, explicitly citing sources over user counts for Stable Diffusion models, the number of AI-generated images, and the market's transition to AI-generated images rather than purchasing stock photography.  *Id.* ¶¶ 92, 94.  Getty also identified several instances in which users of Stable Diffusion reported that image output created a distorted version of Getty's mark.  *Id.* ¶¶ 84–87.  Based on the four corners of the Complaint, it would be reasonable to assume that when consumers view images generated by Stable AI with the distorted Getty's mark, they might be confused to some extent, which is sufficient to pass muster at this stage before a full review of the record.

Accordingly, the Court DENIES Stability AI's motion to dismiss Getty's claim under 15 U.S.C. § 1114(1).

### C. Getty's false designation of origin under 15 U.S.C. § 1125(a) (Claim IV) is not barred by *Dastar*.

Stability AI contends that Getty's "false designation of origin" claim rests on copying expressive content and is a "repackage[d] copyright infringement claim in trademark clothing", which is barred under *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).  ECF 24 at 23.  Specifically, Stability AI claims that Getty's "watermark is part of the communicative content that *Dastar* holds the Lanham Act does not protect."  ECF 32 at 12.  Getty counters that its claim addresses a phenomenon distinct from copyright infringement because the watermarks on Stability AI's images distort Getty's mark in a way that confuses the public about the parties' relationship and endorsement.  ECF 31 at 23–24.

Section 43(a) of the Lanham Act created a federal remedy against a person who uses in commerce 'a false designation of origin' . . . in connection with any goods or services.  15

United States District Court
Northern District of California

U.S.C.A. § 1125(a); *Dastar*, 539 U.S. at 29.  The Supreme Court held that 'origin of goods' in the Lanham Act "refers [] to the producer of the tangible goods that are offered for sale, not to the author of any idea, concept, or communication embodied in those goods" in the copyright realm. *Id.* at 32.

The Court finds that Stability AI's images, generated by users' text prompts who paid various subscription tiers, are 'origin of good' under the Lanham Act, and *Dastar* does not bar Getty's false designation of origin claim.  *Dastar* applies to bar "reverse passing off" claims where the defendant distributes a plaintiff's work without attributing it to the plaintiff, as opposed to "passing off" claims where the defendant distributes its own work without attributing that work to the plaintiff.  *See id* at 27 n.1; 32–33; 36–38; *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 978 (N.D. Cal. 2013); *see also Advance Loc. Media LLC v. Cohere Inc.*, No. 25-cv-1305 (CM), 2025 WL 3171892, at *10 (S.D.N.Y. Nov. 13, 2025).  Because Stability AI distributed images generated by their model that affixed distorted Getty watermarks without attribution to Getty, the Court finds that Getty's claim in this instance constitutes a "passing off" claim.

Moreover, Getty alleges several incidents showing that the distorted watermark on Stability AI's images would confuse customers about Getty's relationship with Stability AI and diminish the value of the mark, as well as Stability AI's unauthorized use of Getty's expressive content under copyright law.  *See* ECF 1 ¶¶ 14; 85–87; 99; *Craigslist Inc.*, 942 F. Supp. 2d at 980 (finding that *Dastar* does not preclude plaintiff's claim because plaintiff alleges that defendant's use of plaintiff's mark confused consumers about the parties' relationship in a way separate and distinct from the copyright infringement claim.); *cf. Slep-Tone Ent. Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1249–50 (9th Cir. 2017) (finding that *Dastar* precludes plaintiff's claim because plaintiff did not allege consumer confusion about the 'origin of goods' under Lanham Act and defendant's unauthorized duplication of the plaintiff's karaoke tracks is "not a relevant good under the Lanham Act" and merely "species of mutant copyright law.").

Accordingly, the Court DENIES Stability AI's motion to dismiss Getty's claim under 15 U.S.C. § 1125(a).

United States District Court
Northern District of California

**D. Getty's trademark dilution claims (Claims V and VII) survive.**

To establish trademark dilution claims, a plaintiff must plead facts to prove its marks are "famous". *Ketab Corp. v. Mesriani & Assocs., P.C.*, 734 F. App'x 401, 412 (9th Cir. 2018). The Lanham Act defines "famous" as "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). "In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following: (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties. (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark. (iii) The extent of actual recognition of the mark. (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register." *Id.* "A trademark holder enjoys trademark dilution protection only if its mark is a "household name."" *Vice Spirits Inc. v. Vice Wines, LLC*, No. 25-cv-02080-JST, 2025 WL 3013971, at *3 (N.D. Cal. Oct. 28, 2025) (citing *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 911 (9th Cir. 2002), *superseded on other grounds as recognized in Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 870 (9th Cir. 2020)).

The Court finds that Getty has met the burden of pleading that its mark attained "household" status under 15 U.S.C. § 1125(c)(2)(A) at this stage. Getty alleges that its "name and trademarks are renowned in the U.S. and around the world" with "2.8 billion searches annually" on its website in "23 languages" and that it "served more than 708,000 customers last year [in more than 200 countries], ranging from media outlets, advertising agencies, and corporations of all sizes to individual creators[, appear every day in the world's most influential newspapers, magazines, advertising campaigns, films, television programs, books and websites]" and spent significant amounts of "time, money, and resources, collecting, [maintaining], distributing, promoting, marketing, and advertising the millions of images." ECF 1 ¶¶ 5, 51, 53, 124. Based on these specific allegations, the Court finds the first two factors weigh in favor of Getty. *See Parts.com, LLC v. Yahoo! Inc.*, No. 13-CV-1078 JLS JMA, 2014 WL 2573321, at *4 (S.D. Cal. June 9, 2014) (finding that the company and its mark featured in prominent trade publications and

United States District Court
Northern District of California

its nationwide advertisements to millions of television viewers coupled with revenue amount, number of customers and the number of sales were sufficient to be in favor of the first and second factors); *cf. Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1066 (N.D. Cal. 2015) (Judge William H. Orrick) (holding that merely alleging a significant amount of expenditures in developing goodwill and brand recognition for its mark, without specific allegations of online promotions, advertising campaigns, or presence in trade publications as well as the numbers of downloads occurred after the infringement, weighs against the plaintiff).

While Getty did not allege the extent to which consumers actually recognize its mark, it has been using its name and associated trademarks in commerce since "its founding in 1995". ECF 1 ¶ 54. When all alleged facts are weighed together, the Court nevertheless finds that Getty at least creates a "facial plausibility that the general public actually recognizes its mark." *See Parts.com, LLC*, 2014 WL 2573321 at *4. Finally, Getty clearly prevails on the fourth factor, as it owns eight trademarks registered on the Principal Register of the United States Patent & Trademark Office as early as 2002. *See* ECF 1 at 16.

Accordingly, the Court DENIES Stability AI's motion to dismiss Getty's claims under 15 U.S.C. § 1125(c)(2)(A). *See Pinterest Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997, 1034 (N.D. Cal. 2015) (Judge Haywood S. Gilliam, Jr.) (dismissing trademark dilution claims after a bench trial because news articles featuring the rapid growth, 25 million monthly website users, and trademarks registered six months before the mark became famous did not support the "household" status).

### E.  Getty's California UCL claim (Claim VI) survives.

California's Unfair Competition Law broadly prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "The UCL operates as a three-pronged statute: "Each of these three adjectives [unlawful, unfair, or fraudulent] captures a 'separate and distinct theory of liability.'" *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016) (quoting *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010). Section 17200 "borrows" violations of other laws and treats them as unlawful practices that the UCL makes independently actionable. *De La Torre v. CashCall, Inc.*, 5 Cal. 5th 966, 980 (2018) (citation

omitted and quotation altered).  To meet the unfair prong, plaintiff "need[s] merely to show that the effects of [defendant's] conduct "are comparable to or the same as a violation of the law, or otherwise significantly threaten or harm competition."  *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1227 (N.D. Cal. 2014) (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999)).  As to the fraudulent prong, "a plaintiff must demonstrate actual reliance," but "actual reliance . . . is inferred from the misrepresentation of a material fact." *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1055 (9th Cir. 2017) (citation omitted).

As stated above, the Court finds that Getty's trademark claim under 15 U.S.C. § 1114(1) (Claim III) is sufficiently alleged.  *Supra* Section V.B.  Getty alleges that Stability AI's conduct results in an unfair advantage by using Getty's marks in "competitive proximity" and misappropriating its reputation to compete with its visual assets.  ECF 1 ¶¶ 127–28, 155. Moreover, the Complaint presents an extra element beyond the classic trademark or copyright law claim by alleging misrepresentation, where a substantial portion of Getty's current and potential clients are likely to mistakenly believe that Stability AI is affiliated with Getty, which makes Getty's claim qualitatively different from the federal law at issue.  ECF 1 ¶ 154; *see Reddit, Inc. v. Anthropic PBC*, No. 25-cv-05643-TLT (N.D. Cal. Mar. 28, 2026).  Given these allegations, three prongs are met.

Accordingly, the Court DENIES Stability AI's motion to dismiss Getty's claim under California's unfair competition law.

## VI.   CONCLUSION

For the foregoing reasons, the Court **GRANTS-IN-PART AND DENIES-IN-PART** Defendants' Motion to Dismiss Plaintiff's Complaint.  Count II in the Complaint is **DISMISSED WITHOUT PREJUDICE**.

The Court gives Plaintiff leave to file a first amended complaint as to Count II, fourteen days from this order, and no later than <u>May 7, 2026</u>.

Initial Disclosures commenced on 11/24/2025.  ECF 38.

//

//

United States District Court
Northern District of California

The Further Case Management Conference set for 5/7/2026 at 2:00 PM in San Francisco - Videoconference Only is maintained. Joint Case Management Statement is due by 4/30/2026.

This Order resolves ECF 24.

IT IS SO ORDERED.

Dated: April 23, 2026

TRINA L. THOMPSON
United States District Judge

United States District Court
Northern District of California

10