BENJAMIN E. MARKS (admitted *pro hac vice*)
benjamin.marks@weil.com
JARED R. FRIEDMANN (admitted *pro hac vice*)
jared.friedmann@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

DAVID R. SINGH (Bar No. 300840)
david.singh@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 4th Floor
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

BRIAN G. LIEGEL (admitted *pro hac vice*)
brian.liegel@weil.com
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Ave, Ste. 1200
Miami, FL 33131
Telephone: (305) 577-3180

Attorneys for Plaintiff GETTY IMAGES (US), INC.

[CAPTION CONTINUED ON NEXT PAGE]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| GETTY IMAGES (US), INC.,<br><br>Plaintiff,<br><br>v.<br><br>STABILITY AI, LTD., STABILITY AI, INC., and STABILITY AI US SERVICES CORPORATION,<br><br>Defendants. | Case No. 3:25-CV-06891-TLT<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge:  Hon. Trina L. Thompson |

JOSEPH C. GRATZ (CA SBN 240676)
JGratz@mofo.com
TIMOTHY CHEN SAULSBURY (CA SBN 281434)
TSaulsbury@mofo.com
JACKSON LANE (CA SBN 351633)
JLane@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:    415.268.7000
Facsimile:    415.268.7522

ADITYA V. KAMDAR (CA SBN 324567)
AKamdar@mofo.com
BRITTANY A. WARREN (*pro hac vice*)
bwarren@mofo.com
MORRISON & FOERSTER LLP
2100 L. Street, NW, Suite 900
Washington, DC 20037
Telephone:  202.887.1500
Facsimile:   202.887.0763

EVAN GOURVITZ (*pro hac vice*)
EGourvitz@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019-9601
Telephone: 212.468.8000
Facsimile: 212.468.7900

CHRISTOPHER R. ADLER (CA SBN 346588)
CAdler@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-5343
Telephone:  213.892.5200
Facsimile:   213.892.5454

*Attorneys for Defendants*
STABILITY AI LTD., STABILITY AI,
INC., AND STABILITY AI US
SERVICES CORPORATION

Pursuant to this Court's Orders (Dkt. No. 38), Plaintiff Getty Images (US), Inc. ("Getty Images" or "Plaintiff") and Defendants Stability AI, Ltd. ("Stability Ltd."), Stability AI, Inc. ("Stability Inc."), and Stability AI US Services Corporation ("Stability Services Corp.," and collectively with Stability Ltd. and Stability Inc., "Stability AI" or "Defendants") hereby submit this Joint Case Management Statement in advance of the Case Management Conference now scheduled for May 7, 2026.

## 1.    Jurisdiction and Service

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action alleges violations of the U.S. Copyright Act (17 U.S.C. § 101, *et seq.*) and Lanham Act (15 U.S.C. § 1051 *et seq.*). All Defendants have been served.

## 2.    Facts

**Plaintiff's Statement:** Getty Images is one of the world's leading creators and distributors of digital visual content. At great expense, over the course of more than three decades, Getty Images has curated a collection of hundreds of millions of premium quality visual assets, most of which are still, photographic images. Many of these images were created by Getty Images staff photographers as works made-for-hire. Others have been acquired by Getty Images from third parties with an assignment of the associated copyrights. The remainder have been licensed to Getty Images by its hundreds of content partners or hundreds of thousands of contributing photographers, who rely on the licensing income Getty Images generates for them. Customers in over 200 countries, including the most prominent media companies around the world, turn to this library in search of compelling, eye-catching, narratively rich imagery with which to fill their newspapers, magazines, books, and websites. That imagery is viewed by many millions worldwide, who associate Getty Images with high-quality, genuine photography. In partnership with Bria, Getty Images also offers Generative AI by Getty Images, a model that utilizes artificial intelligence to generate visual assets in response to text prompts. This content generator is trained exclusively on licensed content, including Getty Images' commercially safe, high-quality creative library and data. Getty Images compensates content creators for the use of their work in connection with the model.

Stability AI is a developer of artificial intelligence models, including a model known as Stable Diffusion that was designed to generate images in response to text prompts and now also has the capability to generate images in response to image prompts or combinations of text and image prompts.

To train models that are capable of generating images in response to user prompts, Stability AI copied more than 12 million copyrighted images, along with the rich text and metadata associated with those images, from Getty Images' websites without permission, and in flagrant violation of the websites' terms of use. It also copied massive troves of additional photographs owned or exclusively licensed by Getty Images from websites operated by Getty Images' licensees, again without permission. Some of the images distributed by Stability AI bear Getty Images' world-famous trademarks, creating confusion as to an affiliation with Getty Images and diluting the strength of those marks.

Stability AI competes directly with Getty Images by marketing Stable Diffusion models and its DreamStudio and Stable Assistant interfaces to those seeking creative imagery, and its infringement of Getty Images' content on a massive scale has been instrumental to its success to date. Stability AI competes directly with Getty Images' own generative AI product and directly harms Getty Images' potential licensing markets, including by producing vast quantities of marketplace substitutes for Getty Images' visual assets and by undermining Getty Images' ability to license content for use in AI development. Even though Stability AI has earned millions of dollars from the commercial exploitation of its models and the output they generate and has raised hundreds of millions of dollars from investors, it has not paid anything to Getty Images or the thousands of photographers whose creative works Stability AI has repeatedly but unlawfully copied in their entirety without permission.

**Defendants' Statement:** Stability AI is a research and technology company that builds generative artificial intelligence tools intended to expand human creativity and capability. More particularly, Stability AI offers various models and solutions that allow artists, developers, and lay people to more easily make art and realize their creative goals.

One of these models—called Stable Diffusion—is offered to users in both proprietary and open-source versions. Stable Diffusion allows creators, brands, and businesses to generate professional-grade images in response to user prompts. By training on billions of images that were publicly available on the Internet, filtered in various ways to minimize unwanted content, Stable Diffusion learned statistical patterns and relationships between words, concepts, and visual features. The result is a transformative tool for human creativity, not a database of copies.

Stability AI's offerings are not devices for copying, generating, or offering for sale existing works authored or owned by Getty Images, or any third party, but transformative tools that enable users

to create all-new, high-quality visual artworks regardless of their personal technical skills. Stability AI has no intent or desire for relevant consumers to confuse its offerings with those of Getty Images, or to suggest that it or its products or services are in any way associated with Getty Images or its own products or services, or endorsed by Getty Images.

Stability AI denies all of Getty Images' allegations of infringement and harm.

**3.    Legal Issues**

**Plaintiff's Statement:** Plaintiff provides the following list of principal legal issues currently in dispute, noting that this list is non-exhaustive, preliminary, and subject to revision:

1.    Whether Defendants violated the Copyright Act by downloading, reproducing, and distributing original works of authorship of which Plaintiff is the owner or exclusive licensee ("Getty Images Works") for the purpose of training a generative AI model to compete with Getty Images in the market for commercial imagery and generative AI content;

2.    Whether Defendants violated the Copyright Act by commercializing a generative AI model that produces outputs that are substantially similar to, or derivatives of, original works of authorship of which Plaintiff is the owner or exclusive licensee;

3.    Whether Defendants provided false copyright management information under the meaning of 17 U.S.C. § 1202 by applying ersatz versions of Getty Images watermarks to output generated through use of Stable Diffusion, DreamStudio, and Stable Assistant;[1]

4.    Whether Defendants violated the Lanham Act and California law by using Plaintiff's trademarks in commerce, including in connection with bizarre, grotesque, or obscene images that are damaging to Plaintiff's reputation; and

5.    Whether Defendants violated California law by engaging in acts constituting unfair competition because of their fraudulent, unlawful, or unfair character.

**Defendants' Statement:** Leaving aside Plaintiff's burden of proof on all of its claims, with respect to Plaintiff's copyright infringement claim, Defendants intend to address, *inter alia*, (i) the extent to which Plaintiff owns or otherwise has exclusive rights in the works purportedly at issue, (ii) the extent to which any purported use of those works in connection with the training of a generative AI

---

[1] This claim was dismissed by Dkt. 53, however Plaintiff has leave to amend by May 7, 2026.

model could be considered infringement, and (iii) the extent to which any third-party generated outputs from such a model could be considered to infringe Plaintiff's rights, and Stability AI could be deemed liable for such outputs, and (iv) to present various defenses, including fair use.

Defendants also intend to dispute the merits of Plaintiff's Lanham Act and claims under California law on various grounds, including as set forth in its recent motion to dismiss.[2]

**4.    Motions**

There are no currently pending motions.

**5.    Amendment of Pleadings**

The Court's order granting in part and denying in part Defendants' motion to dismiss [Dkt. 53] permitted Plaintiff the opportunity to amend by May 7, 2026. Plaintiff is currently evaluating whether to file an amended complaint.

**6.    Evidence Preservation**

The parties have reviewed this Court's Guidelines Relating to the Discovery of Electronically Stored Information. The parties are aware of their obligations and have taken reasonable steps to preserve potentially relevant evidence. The parties will continue to meet and confer concerning ESI.

**7.    Disclosures**

The parties served their Rule 26(a) initial disclosures on November 24, 2025.

**8.    Discovery**

**a.    Scope of Discovery**

**Plaintiff's Statement:** The following is a non-exhaustive list of subjects of discovery Plaintiff seeks from Defendants. Plaintiff reserves all rights to expand upon these subject areas as the case progresses:

- Stability AI's training and development of its generative AI models;
- Stability AI's practices and policies regarding the use of copyrighted content as training data without the consent of the copyright owner (and any changes thereto);

---

[2] To the extent that Defendants may attempt to revive their false copyright management information claim pursuant to 17 U.S.C. § 1202(a), Defendants intend to dispute that claim as well.

- Stability AI's copying, processing, and storage of Getty Images Works and their associated text and metadata from Getty Images' and its licensees' websites;
- Stability AI's use of Getty Images Works and their associated text and metadata in the training and development of generative AI models;
- Stability AI's need for high-quality images paired with captions as training data;
- Stability AI's use of Getty Images' trademarks on output generated by its generative AI models;
- Stability AI's efforts to prevent third-party watermarks from appearing in outputs generated by its generative AI models;
- Agreements between Stability AI and third parties concerning access to or use of copyrighted content in connection with training and development of generative AI models;
- Stability AI's efforts to filter unlicensed copyrighted content from datasets used to train and develop its generative AI models;
- Stability AI's commercialization of its generative AI models and related offerings;
- Stability AI's marketing of its generative AI models and related offerings; and
- Stability AI's income, profits and losses, and other financial results derived from the sale, marketing, and distribution of its generative AI models and related offerings.

Plaintiff wishes to advise the Court that, depending on the availability of evidence through Defendants, it may be necessary to seek discovery from foreign parties located abroad. For example, Plaintiff understands that individuals involved in the development of the Stable Diffusion models are located in the United Kingdom and Germany, and many others (whether in the United States or in a foreign country) are not currently employed by Stability AI. As no documents have yet been produced by Defendants, Plaintiff is unable to ascertain whether third party subpoenas (for documents or depositions) will be necessary. Plaintiff will promptly raise the issue of any areas in which foreign discovery is necessary pending further discussion with Defendants.

**Defendants' Statement:** Defendants provide this non-exhaustive list of potential topics for discovery from Plaintiff:

- Plaintiff's corporate structure;

- Plaintiff's copyright rights in and ownership of the works at issue;

- Plaintiff's allegations concerning Defendants' copying of those works;

- Specific outputs from Defendants' tools that Plaintiff claims are infringing;

- Documents supporting or contradicting the factual allegations in the Complaint;

- The value of, licensing of, market for, and revenue from Plaintiff'works at issue;

- Plaintiff's alleged monetary and non-monetary injury;

- Plaintiff's investigation into Defendants' generative AI tools; and

- Plaintiff's own development, training, marketing, and use of generative AI tools.

Defendants reserve their rights to expand upon these topics of discovery as the case progresses.

### b.    Limitations of Discovery

The parties have met and conferred regarding the discovery limits set forth in the Federal Rules of Civil Procedure, and do not currently propose any alterations to the discovery limits.

### c.    Preservation and Production of Electronically Stored Information

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information. The parties have been negotiating a draft ESI Protocol for more than two months. Although we have agreed on most items, we have reached an impasse on two items that require the Court's intervention so that finalizing the ESI protocol does not further delay discovery.[3]

A draft ESI Protocol with disputed language in brackets is attached to this Joint Case Management Statement as **Exhibit A**. The provisions still in dispute are Defendants' proposals in section II.G-H.

The positions of the parties regarding the disputed provisions are detailed below.

**Plaintiff's Statement:** Defendants propose to limit the number of document custodians to five per side and the number of search terms to five per custodian. Although Plaintiff is committed to conducting discovery in an efficient and cost-effective manner, Plaintiff respectfully submits that these limitations are inappropriate, arbitrary, and highly prejudicial, and will deprive Plaintiff of discovery to which it is entitled under Rule 26.

---

[3] The parties have agreed to jointly submit the disputes through this Case Management Statement but are amenable to presenting them in another format if the Court prefers.

This case involves both millions of infringed works and over a dozen Stable Diffusion models— as well as individualized questions about how *each* model was trained, filtered, marketed, and commercialized. Discovery therefore necessarily spans multiple time periods, teams, and functions. Defendants' proposal would convert the ESI protocol into a rigid mechanism that at the outset of discovery imposes arbitrary numerical limits on custodians and search terms before Defendants have even attempted to collect discovery or run hit reports to understand the volume and distribution of potentially relevant evidence. The rigid constraints on the number of custodians and search terms that Defendants have proposed in Section II.G-H of Defendants' draft ESI protocol would necessarily result in the exclusion of plainly relevant sources at the outset of discovery. Defendants have no basis at this point to claim that the custodians and search terms Plaintiff has proposed would result in a disproportionately burdensome volume of documents to review. Any purported concerns are pure conjecture raised to mask the true intention, which is to deprive Plaintiff of discovery warranted by the nature of this dispute.

The proposed caps are not imposed by this District's model order for standard litigation, which is applicable here. Rather, they are lifted from this District's patent litigation model. But this is not a patent case. It is a copyright, Lanham Act, and UCL case encompassing claims for mass infringement of copyrighted works, false copyright management information, trademark infringement, trademark dilution, and unfair competition under California law. Each of those theories implicates distinct categories of evidence—training pipeline and model output documents for the copyright claims; watermark generation and remediation records for the CMI and trademark claims; and marketing, customer-facing, and revenue materials for the Lanham Act and unfair competition claims. The breadth of those claims demands a broader approach to custodians and search design than the patent model contemplates. To the extent disputes relating to any of the custodians or search terms arise during the course of discovery, they can be handled more efficiently through the exchange of search term hit count reports and meet and confers.

Stability AI's proposed five-custodian cap is particularly unreasonable given the prior litigation history between these parties. The UK Proceeding (*Getty Images (US), Inc. v. Stability AI, Ltd.*, [2025] EWHC 2863 (Ch), Case No. IL-2023-000007), while it did not involve any claims under US law, clearly illustrates the broad scope of relevant Stability AI personnel and functions related to their unauthorized

use of Getty Images' proprietary materials and trademarks in connection with Stability AI's generative AI models. Justice Smith's Approved Judgment, attached as **Exhibit B**, shows that Stability AI's *nineteen* witnesses and affiants spanned applied research, data strategy, engineering, product development, and training functions. Ex. B, ¶¶ 81–85.[4] Accordingly, a reasonable custodian set must include each of these functions, and must cover, at a minimum: (i) training data acquisition and curation, (ii) Stable Diffusion model training and fine-tuning, (iii) watermark detection and filtering efforts, (iv) DreamStudio and Stable Assistant product development, (v) commercialization and licensing strategy, (vi) marketing, and (vii) public and investor communications regarding model capabilities. Given the sheer number of models and time periods at issue in this litigation, no group of five custodians could plausibly provide adequate coverage for all of these functions. Defendants' proposed five-custodian limit would exclude custodian categories that Defendants themselves relied upon in the UK Proceeding and that Plaintiff needs to prove its claims. Although Defendants have indicated that their productions will also include non-custodial documents, such documents are no substitute for the contemporaneous communications and technical records that show what Defendants actually did in obtaining and repeatedly reproducing many millions of Plaintiff's works and in using and displaying Getty Images trademarks on what we anticipate discovery will show to be many millions of output images distributed to users of Stability AI's models.

The impropriety of Stability AI's proposed five-custodian limit is further illustrated by the significant gaps in Stability AI's proposed list of custodians.[5] Notably, the five-person list includes only one person (Mr. Rombach) who was involved in the training and development of the four earliest Stable Diffusion models (versions 1.1-1.4). These models are of special interest to this litigation, since all were held to have violated Getty Images' intellectual property rights under UK law in the UK Proceeding. It is highly unlikely that Mr. Rombach, a single individual, would possess the vast majority of responsive documents concerning: (1) the use of Getty Images' copyrighted content in the training of these models;

---

[4] The judgment further documents internal Slack discussions about watermark generation, efforts to remove Getty Images watermarks from SD-XL training data, and DreamStudio's handling of user complaints—topics that necessarily implicate more than five individuals. *Id.* ¶ 220.

[5] Stability AI's proposed list of custodians is limited to: (1) Cedric Wagrez (Current Head of Data Strategy and Operations); (2) Dennis Niedworok (Former Head of Applied Research); (3) Peter O'Donoghue (Chief Financial Officer); (4) Robin Rombach (a former research scientist); and (5) Emad Mostaque (Former CEO).

(2) the presence of Getty Images watermarks in their training data; (3) the capacity of these models to generate Getty Images watermarks, or images that are substantially similar to Getty Images' copyrighted content; or (4) the capacity of these models to generate CSAM content that could tarnish Getty Images' reputation. Getty Images will be hamstrung in its efforts to obtain relevant information concerning the numerous models and technologies that are at issue in this litigation if custodial searches are arbitrarily confined to five people. Getty Images has accordingly requested that Stability AI include sixteen additional custodians that publicly available information shows are likely to possess relevant documents.

Stability AI's proposed cap of five search terms per custodian is even more arbitrary and would have the perverse effect of significantly increasing the volume of documents to review and the costs and burdens on all parties. A five-term cap would require the use of *broader* search terms in an effort to prevent the exclusion of plainly responsive information at the outset. This will result in more false positives and widen the scope of discoverable documents. Unlike a typical patent case, this case involves dozens of models and several distinct types of intellectual property violations. Each of Getty Images' claims involves its own vocabulary of relevant terms. Search terms relating to training data acquisition (e.g., 'LAION,' 'Common Crawl,' 'scrape') are distinct from terms relevant to watermark generation and remediation (e.g., 'watermark,' 'iStock'), which in turn differ from terms relevant to commercialization and licensing (e.g., 'DreamStudio,' 'Developer Platform,' 'API,' 'subscription'). Best practice with regards to search terms is to use narrowly tailored search terms that have connectors to focus in on specific document sets, refined through hit reports and negotiating revisions to the terms in order to end up with a manageable set of documents to review for responsiveness. The key is how well-crafted the terms are, not the number of terms. Accordingly, Plaintiff proposes no hard cap— allowing for more specific search terms—and an exchange of hit reports and subsequent negotiations to address disproportionate hit volumes (if any) on a search-term-by-search-term basis in a manner proportionate to the needs of the case.

For the reasons discussed above, Plaintiff respectfully requests that the Court adopt Plaintiff's proposed ESI Protocol and reject Defendants' proposed limitations.

**Defendants' Statement:** Defendants' proposed ESI Protocol is guided by the Northern District of California's Model Stipulated Order re: Discovery of Electronically Stored Information for Patent

Litigation ("Model ESI Protocol"), as well as this Court's guidance in its Standing Order (¶ 13) that "discourages deviation from the ESI guidelines absent good cause."  Given the extremely technical discovery and highly sensitive information in this case, Defendants find the Model ESI Protocol to most closely align with the issues the parties expect to encounter.  Defendants propose to include the custodian and search term limits from the Model ESI Protocol into the ESI Protocol for this case.

Defendants' proposed paragraph II.G would implement the Model ESI Protocol's limit of five custodians per side, while Defendants' proposed paragraph II.H would implement the five search terms per custodian limit.  Both limitations are appropriate.  *First*, Defendants consider the five-custodian and five-search-term limits both relevant and proportionate to the issues raised by this action, as per the Federal Rules of Civil Procedure.  *Second*, Defendants are small companies, making the model limits particularly proportional to the size of the parties in this case.  *Third*, the technical nature of the generative artificial intelligence at issue in this case, and the particular burdens involved in source code review, as contemplated by the Model ESI Protocol, supports reasonable limits to the scope of discovery to avoid undue burden on the parties.  *Finally*, Defendants' proposed ESI Protocol would not prohibit additional custodians and search terms, but rather would permit them to the extent that Plaintiff may offer good cause in the future.

Plaintiff has not identified good cause to increase—much less remove entirely—the Model ESI Protocol's suggested limits.  Plaintiff instead proposes to resolve all future custodian and search-term disputes through the meet and confer process.  While Defendants agree that the parties should meet and confer to the extent that discovery disputes may arise in the future, Plaintiff's proposal of unbounded custodian and search-term requests would contravene the proportionality requirements of the Federal Rules and the Model ESI Protocol.

Defendants therefore request this Court adopt its proposed limits.  *See, e.g.*, *Doe v. GitHub, Inc.*, No. 4:22-cv-06823-JST, Dkt. 168 (N.D. Cal. 2023) (entering an ESI protocol with five-custodian and five-search-term limits).

d.    **Protection of Confidential, Proprietary, or Private Information**

The parties have also been negotiating a proposed Protective Order, but have not yet been able to agree to final terms. A proposed Protective Order with disputed language in brackets is attached as

**Exhibit C**. The provisions still in dispute are Defendants' proposal in section 7.4 and the parties' respective proposals in section 8 of the draft Protective Order.

The parties' positions on each of these disputed provisions are detailed below.

**Plaintiff's Statement:**

**Section 7.4 (Expert Access).** Defendants' proposed expert disclosure provision is inconsistent with this Court's Scheduling Order as well as this District's model order (and the overwhelming majority of protective orders in existence across the country). Defendants' proposal would require Plaintiff to pre-disclose the identity of all experts—both testifying and consulting—who need access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" materials, along with the expert's CV, current employer, and a five-year list of engagements and litigations, all subject to a 14-day objection window. But that would upend the expert disclosure obligations already set forth in this Court's Scheduling Order. This type of pre-expert disclosure is also not required by this District's standard model protective order and is unnecessary to protect legitimate confidentiality interests where a Protective Order entered by this Court is in place. It is easy to imagine how such a provision might unnecessarily restrict the parties' ability to retain appropriate experts by creating tactical opportunities to delay or chill expert engagement despite the absence of any concrete risk of competitive misuse.

Defendants justify their restrictive language by pointing to Magistrate Judge Cisneros' order in *Andersen v. Stability AI*, No. 23-cv-00201-WHO (LJC), Dkt. No. 316 (N.D. Cal. July 14, 2025), which barred the plaintiffs from disclosing highly confidential information to an expert deemed to be in competition with the defendants. This order reflected a highly fact-specific application of the well-established balancing test between (i) risk of competitive harm and (ii) the need for a particular expert. Judge Cisneros applied the test to a unique circumstance where the proposed expert was actively developing tools designed to undermine the defendants' technology and was not uniquely necessary, given the availability of other qualified experts. *Andersen* does not support the adoption of broad disclosure or prosecution bar provisions as a default matter. Nor are its unique facts present here. Notably, Stability AI faced an expert retained by Getty Images in the UK Proceeding without any such pre-disclosure requirement and has offered *no evidence* of any misconduct or competitive harm.

To address Stability AI's concerns about exposure of its sensitive information to persons with interests adverse to its own, the Protective Order already incorporates, in its definition of "Expert," limitations that exclude experts with past, current, or expected future affiliations with competitors of either of the parties. Further restrictions on Getty Images' ability to select an appropriate expert are unwarranted under the circumstances.

Plaintiff accordingly proposes to adopt the standard protective order's framework for expert access, which contains no pre-clearance of experts by the other side, and to rely on the Protective Order itself to protect the parties' confidential information. Plaintiff respectfully requests that the Court reject Defendants' proposed revisions.

**Section 8 (Prosecution Bar).** The parties also disagree about the prosecution bar provision in section 8 of the draft Protective Order. Defendants' provision would bar any individual who reviews Highly Confidential – Attorneys' Eyes Only or Highly Confidential – Source Code information from involvement in "the prosecution of patents or patent applications relating to the subject matter" for two years after final termination. This provision does not appear in this District's model protective order for general litigation, and it is marked "[OPTIONAL]" in the model protective order for "Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets." This case does not present the unique risks of a patent or trade secrets case. Indeed, Stability AI has voluntarily disclosed to the public information related to its training data and the source code for at least some of the models at issue. No party has, for example, identified a risk that outside counsel or experts will misuse Defendants' confidential materials to draft or amend patent claims. Where such a risk does not exist, a blanket prosecution bar unduly restricts the parties' ability to retain appropriate experts in a niche and evolving field. This is particularly the case because Defendants' broad application to anything "related to" generative AI is plainly overbroad.

While Plaintiff would prefer eliminating the clause entirely, as a compromise, Plaintiff proposes narrowing the provision to apply to individuals who receive access to Highly Confidential – Source Code material only and including a limited carveout for patents relating to the detection of generative AI. These revisions are reasonable. First, limiting the applicability of the Bar to only those individuals accessing source code makes sense because Defendants have no justification that other Highly Confidential materials could be used for patent prosecution. Second, Plaintiff wishes to include a carve

out which would ensure it will not be precluded from continuing to work with an expert it previously used in the UK Proceeding (and may also use in this matter). Plaintiff's retained technical expert in the UK Proceeding, Professor Hany Farid of UC Berkeley, testified on Getty Images' behalf without any allegations of impropriety, underscoring that ordinary confidentiality protections suffice for outside experts in this subject matter. There would be no basis to deny Professor Farid access here to information he has already seen in the context of a different recent proceeding. Defendants' proposed restriction could effectively preclude Plaintiff from retaining experts with directly relevant experience, including, in at least Professor Farid's case, experts who have already testified on the same technology.

**Defendants' Statement:**

The parties agree that this case involves highly sensitive confidential information and have agreed to include a confidentiality designation to protect highly sensitive confidential information. Accordingly, and given the highly technical nature of much of the content at issue, Defendants propose to include the (i) expert disclosure provision and (ii) prosecution bar from the Northern District of California's Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets ("Model Protective Order"). There is not good cause to deviate from the Model Protective Order with respect to these provisions; thus, Defendants have included them *without modification* as paragraphs 7.4 and 8 in their proposed Protective Order.

Where technology like generative artificial intelligence is involved, the parties' confidential information is extremely valuable and highly competitively sensitive. That degree of sensitivity warrants extreme caution, especially in disclosing to experts in the field who may have interests adverse to the disclosing party. Indeed, Defendants already have found it necessary to enforce this provision in related litigation, further highlighting the importance of this provision to the current action. *See Andersen v. Stability AI Ltd.*, No. 3:23-cv-00201-WHO, Dkt. 316 (N.D. Cal. 2025) (excluding a proposed expert where the "risk of harm to Defendants outweighs Plaintiffs' need to disclose" highly sensitive information).

Plaintiff does not identify a compelling reason to remove the protections of the Model Protective Order. *First*, the Model Protective Order does not grant one party a "veto" over the other party's experts. Instead, it offers important protections where a party's highly sensitive information could be at risk of disclosure to someone in a position to misuse it, consciously or unconsciously. *Second*, although

Plaintiff seeks to avoid disclosing its experts ahead of the opening of expert discovery, it fails to demonstrate how this disclosure would be harmful to its litigation strategy. *Finally*, Plaintiff does not explain how any such potential harm would outweigh the importance of protecting the parties' highly sensitive information.

Plaintiff's proposed edits also stand apart from similar actions in this district; in fact, generative AI cases in this district have routinely entered provisions identical or nearly identical to those proposed by Defendants in their protective orders. *See, e.g.*, *Andersen v. Stability AI Ltd.*, No. 3:23-cv-00201-WHO, Dkt. 380 (N.D. Cal. 2025); *Kadrey v. Meta Platforms, Inc.*, No. 3:23-cv-03417-VC, Dkt. 90 (N.D. Cal.); *In re OpenAI ChatGPT Litig.*, No. 3:23-cv-03223-AMO, Dkt. 106 (N.D. Cal.); *Bartz v. Anthropic PBC*, No. 3:24-cv-05417-AMO, Dkt. 62 (N.D. Cal.); *Doe v. GitHub, Inc.,* No. 4:22-cv-06823-JST, Dkt. 63 (N.D. Cal. 2023); *In re Mosaic LLM Litig.*, No. 3:24-cv-01451-CRB, Dkt. 168 (N.D. Cal). And courts that implement a prosecution bar adhere to the model provision as well. Without a reasonable or meaningful basis to deviate here, Defendants respectfully request that this Court adopt Defendants' proposed provisions from the Model Protective Order.

### e.   Discovery Issues and Potential Disputes

On November 5, 2025, Plaintiff served Defendants with Plaintiff's initial requests for production of documents and interrogatories. Defendants served their own requests for production and interrogatories on November 7, 2025. Defendants responded to Plaintiff's initial requests on December 5, 2025. Plaintiff responded to Defendants' requests on December 8, 2025. Defendants served Plaintiff with a second set of interrogatories on January 16, 2026. Plaintiff served its response on February 17, 2026. Since serving their initial requests, the parties have regularly engaged in meet-and-confers and exchanged correspondence to resolve ongoing disputes regarding these requests.

**Plaintiff's Statement:** The parties have conferred in good faith and resolved outstanding issues with respect to Defendants' discovery of Plaintiff. By contrast, several material disputes remain regarding Plaintiff's requests to Defendants, including Defendants' current proposed limitation to only five custodians. Plaintiff will continue to meet and confer and wishes to resolve these with Defendants. However, if such efforts are unsuccessful, Plaintiff may need to seek this Court's intervention to resolve disputes for which the parties have reached an impasse.

**Defendants' Statement:** Defendants agree that the parties have conferred in good faith and attempted to resolve outstanding issues regarding both parties' discovery requests, and intend to continue to do so in the future. Defendants do not expect, and hope that the parties will not need to, seek this Court's intervention to resolve any outstanding discovery disputes.

9.     **Narrowing of Issues**

No issues have yet been narrowed by motion, and except as described above, no issues have been narrowed by agreement. The parties are prepared to meet and confer about narrowing potential issues should the circumstances of the case change.

10.    **Class Action**

This is not a class action.

11.    **Related Cases**

None.

12.    **Relief**

**Plaintiff's Statement:** For Defendants' infringement of Plaintiff's copyrights and provision of false copyright management information, Plaintiff seeks statutory and other damages under 17 U.S.C. §§ 504 and 1202,[6] reasonable attorney's fees under 17 U.S.C. § 505, destruction of all infringing copies under 17 U.S.C. § 503(b), and permanent injunctive relief against further acts of infringement. Plaintiff also seeks destruction of all versions of Stable Diffusion trained using Getty Images' content without permission. For Defendants' infringement, tarnishment, and dilution of its trademarks, and for Defendants' acts constituting unfair competition and deceptive trade practices, Plaintiff seeks statutory and other damages under 15 U.S.C. §§ 1117 and related California statutes, as well as permanent injunctive relief against future such acts. Plaintiff seeks pre- and post-judgment interest on its damages at the highest legal rate from and after August 14, 2025, the date the Complaint was served on Defendants.

**Defendants' Statement:** Defendants deny that Plaintiff is entitled to any injunctive or monetary relief of any sort.  Defendants do not seek any such relief from Plaintiff at this time.

---

[6] As stated above, Plaintiff's § 1202 claim was dismissed by Dkt. 53; however, Plaintiff has leave to amend by May 7, 2026.

**13.    Settlement and ADR**

Plaintiff and Defendants filed their respective ADR L.R. 3 Certifications on October 23, 2025. On December 19, 2025, the parties filed their Joint ADR Status Report, in which the parties agreed to appoint the Hon. Louis M. Meisinger (Ret.) of Signature Resolution to serve as their private mediator. The parties agreed to hold a mediation conference with Judge Meisinger within 30 days of the September 18, 2026 fact discovery deadline, subject to his availability.

**14.    Other References**

The parties agree that this case is not suitable for binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation at this time. The parties do not oppose having discovery disputes heard by a magistrate judge if the Court is inclined to appoint a discovery magistrate.

**15.    Scheduling**

The Court entered a Scheduling Order on November 13, 2025, at Dkt. No. 33.

**16.    Trial**

The case will be tried before a jury. Jury Selection and Trial are set to take place from January 18, 2028, to February 9, 2028. The estimated length of trial is 14 days.

**17.    Disclosure of Non-Party Interested Entities or Persons**

Plaintiff filed a Certificate of Interested Entities on August 14, 2025 (Dkt. 6).

**18.    Professional Conduct**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**19.    Other Matters**

The parties are not presently aware of other matters that may facilitate the resolution of this case.

Dated: April 30, 2026

WEIL, GOTSHAL & MANGES LLP

*/s/ Benjamin E. Marks*
Benjamin E. Marks

BENJAMIN E. MARKS (admitted *pro hac vice*)
benjamin.marks@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

*Attorneys for Plaintiff*
GETTY IMAGES (US), INC.

MORRISON & FOERSTER LLP

*/s/ Joseph C. Gratz*
Joseph C. Gratz

JOSEPH C. GRATZ
JGratz@mofo.com
TIMOTHY CHEN SAULSBURY
TSaulsbury@mofo.com
JACKSON LANE
JLane@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:    415.268.7000
Facsimile:    415.268.7522

ADITYA V. KAMDAR
AKamdar@mofo.com
BRITTANY A. WARREN
bwarren@mofo.com
MORRISON & FOERSTER LLP
2100 L. Street, NW, Suite 900
Washington, DC 20037
Telephone:  202.887.1500
Facsimile:  202.887.0763

EVAN GOURVITZ
EGourvitz@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019-9601
Telephone: 212.468.8000
Facsimile: 212.468.7900

CHRISTOPHER R. ADLER
CAdler@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-5343
Telephone: 213.892.5200
Facsimile: 213.892.5454

*Attorneys for Defendants*
STABILITY AI LTD., STABILITY AI,
INC., AND STABILITY AI US
SERVICES CORPORATION